**HANKS UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, *CHIEF JUDGE***

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 17-00256 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>JUDGMENT ORDER</u>

Having considered Plaintiff's motion for summary judgment, Defendant's response, and all other papers and proceedings in this action, and after due deliberation, it is hereby —

**ORDERED** that Plaintiff's motion for summary judgment be and hereby is granted; and it is further

**ORDERED** that the responsible United States Customs and Border Protection officials shall reliquidate the entries subject to this action, classifying Plaintiff's brake segments under Subheading 8803.20.00 of the *Harmonized Tariff Schedule of the United States*, and refunding the excess duties collected on the merchandise to the Plaintiff, with lawful interest.

_____

**CHIEF JUDGE**

DATED: _____
        New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. MARK A. BARNETT, *CHIEF JUDGE***

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 17-00256 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to U.S. Court of International Trade Rules 7(g) and 56(a), Plaintiff, through its undersigned attorneys, respectfully moves for summary judgment in its favor. A judicial decision on this motion would dispose of this case on its merits.

Plaintiff believes there is no genuine issue of material fact in this case and that summary judgment is appropriate. Plaintiff submits the attached Memorandum of Law along with a Statement of Material Facts Not in Issue in support of this motion.

Respectfully submitted:

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Honeywell International, Inc.
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

By:    /s/ Wm. Randolph Rucker
       Wm. Randolph Rucker

Dated: March 5, 2024

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, *CHIEF JUDGE*

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 17-00256 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN ISSUE

In accordance with Rule 56.3 of the Rules of the United States Court of International Trade, Plaintiff, Honeywell International, Inc. ("Honeywell"), identifies the following material facts for which it contends there are no genuine issues to be tried.

## STATEMENT OF FACTS

### A. General Background

1.      Honeywell was the importer of record of the entries at issue in this action (the "Subject Entries") and has standing to bring this action. (Second Amended Complaint ("Compl.") & Answer to Second Amended Complaint. ("Answer") ¶ 2, ECF Nos. 34 & 39.)

2.      The Subject Entries cover importations made at the ports of Minneapolis, Charlotte, and Atlanta during the period of 2015 through 2016. (Summons, ECF No. 1.)

3.      The products imported under the Subject Entries are chordal, radial, and web brake segments ("Brake Segments") used in aircraft wheel and brake assemblies. Deposition of Mark Brown, attached hereto as **Exhibit A** (hereinafter, "Brown Dep.") at pg. 6:17; Compl. ¶ 7; Pl.'s Answers and Supplemental Answers to Def.'s First Interrs., Answer to Interr. No. 3, attached hereto as **Exhibit B**.

4. At the time of entry, Honeywell declared the Brake Segments under subheading 6307.90.9889 of the Harmonized Tariff Schedule of the United States ("HTSUS"), 19 U.S.C § 1202. *See* ECF Nos. 5-6 (Protests and Entries Received).

5. U.S. Customs and Border Protection ("Customs") liquidated the Brake Segments under HTSUS subheading 6307.90.9889. (Compl. & Answer ¶ 13.)

6. On May 19, 2017, Customs issued Headquarters Ruling Letter ("HRL") H243798, holding certain radial and chordal brake segments imported by Honeywell are classified under HTSUS subheading 6307.90.98.

7. Honeywell timely filed administrative protests in relation to the Subject Entries, asserting that the Subject Entries were classifiable under HTSUS Heading 8803, which proves for "[*p*]*arts of goods of heading 8801 or 8802*";[1] and Customs subsequently denied the protests. (Compl. & Answer ¶ 4.)

8. Plaintiff has paid all liquidated duties and fees for the Subject Entries and timely filed this action. (*Id.* at ¶ 6.)

9. This Court has jurisdiction over this action under 28 U.S.C. § 1581(a). (*Id.* at ¶ 2.)

---

[1] On January 27, 2022, Heading 8806 was added to the HTSUS and Heading 8803 was transferred to Heading 8807. *See* Chapter 88, HTSUS (2024). Unless otherwise noted, reference to the HTSUS throughout this brief is to the version enacted at the time of entry of the Subject Entries.

**B. Product Information**

10.    The Brake Segments at issue in this litigation are listed in the table below:

| Part Number | Part Name | Brake Segment Type | Aircraft Program Use |
|---|---|---|---|
| 2703272 | Segment Rotor, Web | Web | Boeing 777 |
| 2703273 | Segment Stator, Web | Web | Boeing 777 |
| 2703275 | Segment, Rotor Chordal Duplex | Chordal Duplex | Boeing 777 |
| 2703276 | Segment, Rotor Radial Duplex | Radial Duplex | Boeing 777 |
| 2703277 | Segment, Stator, Chordal Duplex | Chordal Duplex | Boeing 777 |
| 2703278 | Segment, Stator, Radial Duplex | Radial Duplex | Boeing 777 |
| 2703329 | Segment, Web | Web | McDonnell Douglas F/A-18E/F Super Hornet |
| 2703331 | Segment, Chordal Duplex | Chordal Duplex | McDonnell Douglas F/A-18E/F Super Hornet |
| 2703332 | Segment, Radial Duplex | Radial Duplex | McDonnell Douglas F/A-18E/F Super Hornet |
| 2703337 | Segment, Rotor, Web | Web | Lockheed Martin F-22 Raptor |
| 2703338 | Segment, Rotor Chordal Duplex | Chordal Duplex | Lockheed Martin F-22 Raptor |
| 2703339 | Segment, Rotor, Radial Duplex | Radial Duplex | Lockheed Martin F-22 Raptor |
| 2703340 | Segment, Stator Web | Web | Lockheed Martin F-22 Raptor |
| 2703341 | Segment, Stator, Chordal Duplex | Chordal Duplex | Lockheed Martin F-22 Raptor |
| 2703342 | Segment, Stator, Radial Duplex | Radial Duplex | Lockheed Martin F-22 Raptor |
| 2703355 | Segment, Stator, Radial Duplex | Radial Duplex | Airbus A380-800 |
| 2703356 | Segment, Stator, Chordal Duplex | Chordal Duplex | Airbus A380-800 |
| 2703358 | Segment, Rotor, Radial Duplex | Radial Duplex | Airbus A380-800 |
| 2703359 | Segment, Rotor, Chordal Duplex | Chordal Duplex | Airbus A380-800 |
| 59000865-001 | Segment, Chordal Duplex | Chordal Duplex | Airbus A380-800 |
| 59000866-001 | Segment, Radial Duplex | Radial Duplex | Airbus A380-800 |
| 59000867-001 | Segment, Chordal Duplex | Chordal Duplex | Airbus A380-800 |
| 59000868-001 | Segment, Radial Duplex | Radial Duplex | Airbus A380-800 |

**Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 3; Pl.'s Answer to Def.'s First Interr. No. 10 (describing the aircraft designations included in the chart above).

3

11.    The Brake Segments are made from nonwoven polyacrylonitrile (PAN) fiber fabric material that is cut to a specific shape and size. Compl. ¶ 8.

12.    The PAN fiber fabric materials used to make the Brake Segments are described in one of three (3) Engineering Material Specifications (EMS-182, EMS-183, or EMS-270). *See* **Exhibit C**.

13.    The Radial and Chordal Brake Segments are "Duplex Segments" manufactured by needling web and unidirectional tow fabrics together to form a duplex fabric of a specific areal weight and width specified for the Brake Segment. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 5; Brake Segment patents, attached hereto as **Exhibit D**.

14.    Web Brake Segments are made of a single layer of PAN fabric material. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 5.

15.    The Radial and Chordal Brake Segments (Duplex Segments) are manufactured through the following steps:

- A unidirectional fiber layer is formed by needling a specific number of parallel, non-twisted, continuous tows of oxidized polyacrylonitrile (PAN) fiber in a manner that stabilizes the fibers in their parallel orientation for further handling. The number of tows and the width of the needled fibers are designed to achieve the required areal weight and width needed for the segment.

- A web fiber layer is formed by needling tows of a different size of oxidized PAN fiber in a manner that results in a web of fibers. The number of tows and the width of the web are designed to achieve the required areal weight and width needed for the segment.

- Next, the unidirectional fiber layer and the web layer are needled together to form a duplex assembly of a specific areal weight and width to meet segment needs and to be stable enough for further handling.

- Segments are then cut in arc shapes from the duplex assembly in a manner that results in either a radial or chordal orientation of the unidirectional fibers as required for the segment, all of which are designed for the final needled preform with the correct fiber orientation and density.

**Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 5.

16.    The width and final cut of the duplex fabric is defined such that a finished Radial Brake Segment has a radial orientation of the unidirectional fibers. Brown Dep. at pgs. 15:23-16:12, 17:2-8; *see* **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 11 (describing chordal and radial brake segments).

17.    The width and final cut of the duplex fabric is defined such that a finished Chordal Brake Segment has a chordal orientation of the unidirectional fibers for a chordal segment. *Id.*

18.    Web Brake Segments are manufactured through the following steps:

- A web fiber layer is formed by needling tows of oxidized PAN fiber in a manner that results in a web of fibers.

- The number of tows and the width of the web are designed to achieve the required areal weight and width needed for the Brake Segment.

- The Brake Segments are cut into arc shapes with a specific outer radius, a specific inner radius and an arc angle, all of which are designed for the final needled preform with the correct fiber orientation and density.

*Id.*

19.    Each Brake Segment is specifically designed and manufactured for exclusive use in aircraft braking systems. Compl. ¶ 10; **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 3.

20.    The Brake Segments are cut to a specific shape and size that is dedicated for use within aircraft braking systems. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 6; Engineer Drawings for each of the twenty-three (23) Brake Segments at issue, attached hereto as **Exhibit E**.

21.     Each Brake Segment has a unique inner radius and outer radius that is specific to the final brake disc configuration for a specific aircraft braking system to be used in a specific airplane. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 3; **Ex. A,** Brown Dep. at pg. 34:10-19; **Ex. E** (Engineering Drawings).

22.     The Brake Segments are generally not interchangeable between aircraft braking systems that require different disc sizes as each part numbered Brake Segment is designed and uniquely manufactured for use within a specific braking system. *Id.*

23.     The specific radius, angle, fiber composition, and layering for each imported Brake Segment is specifically engineered to provide the strength, friction, heat absorption, and heat transfer capabilities to meet the braking needs and tolerances for specific disc sizes and respective aircraft brake assemblies. Brown Dep. at pgs. 29:16-30:15; 30:16-32:4; *see also* **Ex. E** (Engineer Drawings).

24.     The Brake Segments are used solely for  the manufacture and production of carbon brake discs for commercial and military aircraft braking systems. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 6; Deposition of Chris Matheis (hereinafter "Matheis Dep.") at pg. 11:1-12; Brown Dep. at pgs. 21:3-7.

25.     Aircraft braking systems are parts of aircraft. Compl. and Answer ¶ 23, HRL H243798 at pg. 5; **Ex. A**, Brown Dep. at pg. 14:6-17.

26.     The brake discs made from the Brake Segments are parts of aircraft braking systems used in aircraft landing gear. Compl. and Answer ¶ 24; HRL H243798 at Pl.'s 5.; **Ex. A**, Brown Dep. at pgs. 29:13-32:4; **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 3.

27.     Brake Segments are parts of brake discs. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 3; HRL H243798.

28.    At the time of importation, the Brake Segments are ready for use in the manufacture of brake discs and do not require any further processing to be ready for use as part of a brake disc. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 6.

29.    Each Brake Segment is specifically designed to serve as an integral and constituent part of carbon composite rotor and stator brake discs. Compl. ¶ 9, **Ex. A**, Brown Dep. at pgs. 20:20-23; 86:25-87:5; 88:5-11.

30.    A rotor is a rotating disc used in an aircraft brake assembly that is keyed to the wheel assembly and provides friction and heat absorption during braking. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 11; *see also* **Ex. A**, Brown Dep. at pgs. 23:24-24:18 (further describing the function of rotors and stators within an aircraft braking system).

31.    A stator, including auxiliary stators that are more commonly referred to as the pressure plate and the backing plate, is a stationary disc used in an aircraft brake assembly that is keyed to the torque tube and provides friction and heat absorption during braking. **Ex. A**, Brown Dep. at pgs. 23:24-24:18.

32.    Brake discs are made of a specific number of Brake Segments that are layered together in a specific orientation and configuration and then subjected to further processing to create carbon brake discs. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 6.; **Ex. D**, Brake Segment Patents.

33.    The number and type of Brake Segments used to create a brake disc varies depending on each aircraft's unique specifications. Brown Dep. at pg. 34:2-9 ("For example, one disc might have 100 radial segments and 110 chordal segments.").

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Honeywell International, Inc.
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

By:    /s/ Wm. Randolph Rucker

Dated: March 5, 2024          Wm. Randolph Rucker

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. MARK A. BARNETT, *CHIEF JUDGE***

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 17-00256 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

By:    /s/ Wm. Randolph Rucker

Dated: March 5, 2024          Wm. Randolph Rucker

**FAEGRE DRINKER BIDDLE & REATH LLP**

Attorneys for Plaintiff
Honeywell International, Inc.
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................1

I.    ISSUE PRESENTED ..............................................................................2

II.   SUMMARY OF ARGUMENT ................................................................2

III.  VERBATIM PASSAGES FROM THE HTSUS .......................................2

      A.   Tariff Classification Applied by Customs at Liquidation............................2

      B.   Tariff Classification Claimed by Honeywell...................................3

      C.   General Rules of Interpretation Pertinent to this Case................................3

      D.   Relative Section or Chapter Notes ...............................................3

IV.   STATEMENT OF FACTS .......................................................................4

V.    APPLICABLE LEGAL STANDARDS OF REVIEW .........................16

      A.   Summary Judgment Is Appropriate in this Case ........................................16

      B.   Customs' Classification of the Brake Segments Under Subheading
           6307.90.98 Is Not Entitled to a Presumption of Correctness or
           Judicial Deference ..........................................................................17

VI.   ARGUMENT ..........................................................................................19

      A.   The Brake Segments Are Classifiable in Heading 8803 Pursuant to
           GRI 1 ..............................................................................................20

           1.   Heading 8803 Is a Parts Provision That Expressly Provides
                for Parts of Certain Aircraft, Not the Complete Aircraft .............22

           2.   Heading 8803 Covers All Parts of the Aircraft Classified in
                Headings 8801 or 8802...................................................................23

CONCLUSION..................................................................................................44

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABB, Inc. v. United States,*
    346 F. Supp. 2d 1357 (Ct. Int'l Trade 2004) ............................................................... 29

*Agatec Corp. v. United States,*
    31 CIT 847 (Ct. Int'l Trade 2007) .......................................................................... 21, 22

*Agfa Corp. v. United States,*
    520 F.3d 1326 (Fed. Cir. 2008) .................................................................................... 22

*Allstar Mktg. Grp., LLC v. United States,*
    211 F.Supp.3d 1319 (Ct. Int'l Trade 2017) ................................................... 20, 21, 42

*American Schack Co., Inc. v. United States,*
    1 CIT 1 (Ct. Int'l Trade 1980) ........................................................................ 24, 39, 41

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...................................................................................................... 16

*Bauerhin Technologies Ltd. v. U.S.,*
    110 F.3d 774 (Fed. Cir. 1997) .............................................................................. *passim*

*Bausch & Lomb, Inc. v. United States,*
    148 F.3d 1363 (Fed. Cir. 1998) ............................................................................. 16, 20

*Baxter Healthcare Corp. of Puerto Rico v. United States,*
    182 F.3d 1333 (Fed Cir 1999) .............................................................................. *passim*

*Baxter Healthcare Corp. of Puerto Rico v. United States,*
    998 F.Supp. 1133 (Ct. Int'l Trade 1998), *aff'd*, 182 F.3d 1333 (Fed. Cir. 1999) ............. 30, 32

*Beacon Cycle & Supply Co., Inc. v. United States,*
    458 F. Supp. 813 (Ct. Int'l Trade 1978) .................................................................... 41

*Benteler Indus., Inc. v. United States,*
    840 F.Supp. 912 (Ct. Int'l Trade 1993) .............................................................. *passim*

*Liebert v. United States,*
    287 F. Supp. 1008 (Customs Ct. 1968) ...................................................................... 38

*Calif. Indus. Prods., Inc. v. United States,*
    350 F.Supp.2d 1135 (Ct. Int'l Trade 2004) ............................................................... 18

*Carl Zeiss, Inc. v. United States*,
    195 F.3d 1375 (Fed. Cir. 1999) ................................................................. 20

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................. 16

*Chevron Chem. Co. v. United States*,
    59 F. Supp. 2d 1361 (Ct. Int'l Trade 1999) .................................... 17, 41

*Clipper Belt Lacer Co., Inc. v. United States*,
    738 F.Supp. 528 (Ct. Int'l Trade 1990) ........................................... 23, 39

*E.M. Chems. v. United States*,
    923 F. Supp. 202 (Ct. Int'l Trade 1996) ................................................ 21

*EM Indus., Inc. v. United States*,
    999 F. Supp 1473 (Ct. Int'l Trade 1998) ............................................... 40

*Flex Track Equip., Ltd. and Border Brokerage Co., Inc. v. United States*,
    65 Cust. Ct. 119 (Cust. Ct. 1970) ............................................ 23, 24, 39

*Former Emps. of Elec. Data Sys. Corp. v. U.S. Sec'y of Labor*,
    408 F.Supp.2d 1338 (Ct. Int'l Trade 2005) ........................................... 17

*Former Emps. of Murray Eng'g, Inc. v. Chao*,
    346 F.Supp.2d 1279 (Ct. Int'l Trade 2000) ........................................... 17

*G.G. Marck & Assocs., Inc. v. U.S.*,
    2015 WL 3757040 (Ct. Int'l Trade 2015) ......................................... 24, 32

*H.I.M./Fathom, Inc. v. United States*,
    981 F.Supp. 610 (Ct. Int'l Trade 1997) ................................................. 26

*Harding Co. v. United States*,
    23 C.C.P.A. 250 (1936) ........................................................................ 30

*Honda of Am. Mfg., Inc. v. United States*,
    607 F.3d 771 (Fed. Cir. 2010) .............................................................. 25

*IBM v. United States*,
    152 F.3d 1332 (Fed. Cir. 1998) ............................................................ 42

*Ideal Toy Corp. v. United States*,
    433 F.2d 801 (CCPA 1970) .................................................................. 42

*Intercontinental Marble Corp. v. United States*,
    264 F.Supp.2d 1306 (Ct. Int'l Trade 2003), *aff'd*, 381 F.3d 1169 (Fed. Cir.
    2004)...................................................................................................... 17

*Jing Mei Auto. (USA) v. United States,*
 --- F.Supp.3d ---, 2023 WL 9792953 (Ct. Int'l Trade Dec. 18, 2023) ................................... 25

*Kalle USA, Inc. v. United States,*
 273 F.Supp.3d 1319 (Ct. Int'l Trade 2017) ................................................................ 19, 21, 22

*La Crosse Tech., Ltd. v. United States,*
 723 F.3d 1353 (Fed. Cir. 2013) ........................................................................................... 21

*Lee Enter., Inc. v. United States,*
 84 Cust. Ct. 208 (1980) ...................................................................................................... 33

*Len–Ron Mfg. Co., Inc. v. United States,*
 334 F.3d 1304 (Fed. Cir. 2003) .......................................................................................... 22

*Logitech, Inc. v. United States,*
 532 F.Supp.3d 1358 (Ct. Int'l Trade 2021) ........................................................................ 23

*Ludvig Svensson (U.S.), Inc. v. United States,*
 62 F. Supp. 2d 1171 (Ct. Int'l Trade 1999) ................................................................ *passim*

*Marcel Watch Co. v. United States,*
 11 F.3d 1054 (Fed. Cir. 1993) ............................................................................................ 41

*Millennium Lumber Distrib., Ltd. v. United States,*
 558 F.3d 1326 (Fed. Cir. 2009) .......................................................................................... 19

*Mitsubishi Electronics America, Inc. v. United States,*
 882 F.Supp. 171 (Ct. Int'l Trade 1995) ...................................................................... *passim*

*Northwest Airlines v. United States,*
 17 F. Supp. 2d 1008 (Ct. Int'l Trade 1998) ........................................................................ 26

*Pillsbury Co. v. United States,*
 431 F.3d 1377 (Fed. Cir. 2005) .......................................................................................... 19

*Pima Western, Inc. v. United States,*
 915 F.Supp. 399 (Ct. Int'l Trade 1996) ......................................................................... 24, 32

*Quaker Pet Grp. LLC v. United States,*
 287 F.Supp.3d 1348 (Ct. Int'l Trade 2018) ........................................................................ 16

*R.T. Foods, Inc. v. United States,*
 757 F.3d 1349 (Fed. Cir. 2014) .......................................................................................... 40

*RKW Klerks v. United States,*
 592 F.Supp.3d 1349 (Ct. Int'l Trade 2022) ........................................................................ 28

*Rocknel Fastener, Inc. v. United States,*
   267 F.3d 1354 (Fed. Cir. 2001) ................................................................22

*Rollerblade, Inc. v. United States,*
   282 F.3d 1349 (Fed. Cir. 2002) ................................................................28

*Russel Stadelman & Co. v. United States,*
   242 F.3d 1044 (Fed. Cir. 2001) ................................................................22

*Salant Corp. v. United States,*
   86 F.Supp.2d 1301 (Ct. Int'l Trade 2000) ...............................................19

*Skidmore v. Swift & Co.,*
   323 U.S. 134 (1994) ...........................................................................17, 18

*Toy Biz, Inc. v. United States,*
   248 F. Supp. 2d 1234 (Ct. Int'l Trade 2003) ......................................16, 19

*United States v. American Express Co.,*
   29 C.C.P.A. 87 (1941) ..............................................................................24

*United States v. Mead Corp.,*
   533 U.S. 218 (2001) ..................................................................................17

*United States v. Pompeo,*
   43 C.C.P.A. 9 (1955) ....................................................................28, 29, 32

*United States v UPS Customhouse Brokerage, Inc.,*
   558 F.Supp.2d 1331 (Ct. Int'l Trade 2008), judgment affirmed in part, vacated
   in part by *U.S. v. UPS Customhouse Brokerage, Inc.,* 558 F. Supp. 2d 1331
   (Fed. Cir. 2009) ........................................................................................23

*United States v. Willoughby Camera Stores, Inc.,*
   21 C.C.P.A. 322 (1933) ................................................................28, 29, 32

## STATUTES, RULES & REGULATIONS

14 C.F.R. § 23 ...................................................................................................15

14 C.F.R. § 25 ...................................................................................................15

19 C.F.R. § 177.1(d)(1)(1999)...........................................................................17

19 U.S.C. § 1202 ............................................................................................1, 4

19 U.S.C. § 2272(a) ..........................................................................................17

28 U.S.C. § 1581(a) ............................................................................................2

28 U.S.C. § 2639(a)(1) ...................................................................................................... 17

USCIT R. 56(a) ................................................................................................................... 16

**OTHER AUTHORITIES**

Britannica (https://www.britannica.com/dictionary/undercarriage (last visited
    Mar. 5, 2024)) ............................................................................................................. 43

Britannica (https://www.britannica.com/technology/balloon-flight/Hot-air-
    ballooning#ref990697 (last visited Mar. 5, 2023)) .................................................... 27

City of Albuquerque Website, "How a Hot Air Balloon Works and Its Major
    Parts"
    (https://www.cabq.gov/artsculture/balloonmuseum/documents/HowaHotAirB
    alloonWorksandItsMajorParts.pdf) (last visited March 5, 2024) ............................... 27

Collins English Dictionary
    (https://www.collinsdictionary.com/us/dictionary/english/segment#:~:text=(no
    un%20%CB%88se%C9%A1m%C9%99nt%2C%20verb%20%CB%88se%C9
    %A1ment%2C,a%20segment%20of%20an%20orange) (last visited Mar. 4,
    2024) ............................................................................................................................. 4

Collins English Dictionary
    (https://www.collinsdictionary.com/us/dictionary/english/undercarriage (last
    visited Mar. 15, 2024)) ............................................................................................... 43

Dictionary.com (https://www.dictionary.com/browse/segment) (last visited Mar.
    4, 2024) .......................................................................................................................... 4

Encyclopedia.com (https://www.encyclopedia.com/literature-and-arts/performing-
    arts/music-history/part) (last visited Mar. 4, 2024) ...................................................... 4

Honeywell Website (https://aerospace.honeywell.com/) (last visited Mar. 5, 2024) ...................... 4

Hotairflight.com (https://hotairflight.com/blog/parts-of-a-hot-air-
    balloon?expand_article=1#google_vignette (last visited March 5, 2024)) ............................... 27

Merriam-Webster Dictionary (https://www.merriam-
    webster.com/dictionary/undercarriage (last visited Mar. 5, 2024)) ........................... 43

Oxford English Dictionary
    (https://www.oed.com/search/dictionary/?scope=Entries&q=undercarriage
    (last visited Mar. 15, 2024)) ....................................................................................... 44

Plano Balloon Festival Website
    (https://www.planoballoonfest.org/p/about/anatomy) (last visited March 5,
    2024) ............................................................................................................................. 28

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, *CHIEF JUDGE*

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 17-00256 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case concerns the proper tariff classification of certain radial, web, and chordal brake segments (the "Brake Segments") imported by Plaintiff, Honeywell International, Inc. ("Honeywell"). Plaintiff's Statement of Material Facts Not in Issue (hereafter, "SMF") at ¶¶ 1, 3. U.S. Customs and Border Protection ("Customs") liquidated the entries of the Brake Segments ("Subject Entries") under subheading 6307.90.9889 of the *Harmonized Tariff Schedule of the United States* ("HTSUS"), which provides for "*Other made up articles, including dress patterns: . . . Other: . . Other: . . . Other . . . Other: . . . Other.*"[2] *Id.* at ¶ 5; 19 U.S.C. § 1202. Honeywell contends that the Brake Segments are properly classified as parts of aircraft under HTSUS subheading 8803.20.00, which provides for "*Parts of goods of heading 8801 or 8802: . . . Undercarriages and parts thereof.*" Honeywell timely protested Customs' liquidation of the Subject Entries and paid all duties and fees due. *Id.* at ¶¶ 7-8. Customs subsequently denied Honeywell's protests and Honeywell has timely filed this action. *Id.* at ¶ 7.

---

[2]     Although all citations are to the HTSUS 2016 edition, the relevant heading language did not change from 2015-2016.

The U.S. Court of International Trade has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a). *Id.* at ¶ 9. There are no issues of disputed material facts to be resolved by trial and, therefore, disposition by summary judgment is appropriate. For the reasons discussed below, Honeywell respectfully requests that this Court grant summary judgment for Plaintiff and order Defendant to reliquidate the Subject Entries to reclassify the Brake Segments as parts of aircraft under HTSUS subheading 8803.20.00 and refund excess duties paid, with interest as provided by law.

## I.     ISSUE PRESENTED

Whether the Brake Segments are correctly classified as parts of aircraft under HTSUS heading 8803, as claimed by Honeywell, or as made up articles under HTSUS heading 6307, as liquidated.

## II.     SUMMARY OF ARGUMENT

Based on the factual and legal considerations discussed herein, Honeywell asserts that the Brake Segments are properly classified under HTSUS subheading 8803.20.00 as "*Parts of goods of heading 8801 or 8802: . . . Undercarriages and parts thereof*" pursuant to General Rule of Interpretation ("GRI") 1 or, alternatively, GRI 3(a).

## III.     VERBATIM PASSAGES FROM THE HTSUS

### A.     Tariff Classification Applied by Customs at Liquidation

At liquidation of the Subject Entries, Customs applied HTSUS subheading 6307.90.98, which provides as follows:

6307            Other made up articles, including dress patterns:

6307.90            Other:

            Other:

6307.90.98                Other

**B.    Tariff Classification Claimed by Honeywell**

Honeywell claims that the Brake Segments are properly classified in HTSUS subheading

8803.20.00, which provides as follows:

8803        Parts of goods of heading 8801 or 8802:

8803.20.00        Undercarriages and parts thereof

**C.    General Rules of Interpretation Pertinent to this Case**

GRI 1.  The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions: …

GRI 3(a). The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

Additional U.S. Rule of Interpretation 1(c). In the absence of special language or context which otherwise requires . . . a provision for parts of an article covers products solely or principally used as a part of such articles but a provision for "parts" or "parts and accessories" shall not prevail over a specific provision for such part or accessory[.]

**D.    Relative Section or Chapter Notes**

*HTSUS Section XVII, Notes 2 and 3*:

2.   The expressions "parts" and "parts and accessories" do not apply to the following articles, whether or not they are identifiable as for the goods of this section: . . .

3.   References in chapters 86 to 88 to "parts" or "accessories" do not apply to parts or accessories which are not suitable for use solely or principally with the articles of those chapters. A part or accessory which answers to a description in two or more of the headings of those chapters is to be classified under that heading which corresponds to the principal use of that part or accessory.

## IV.    STATEMENT OF FACTS

### A.        Background

Honeywell manufactures and distributes aerospace products, including aircraft engines, landing systems, and avionics. Honeywell Website (https://aerospace.honeywell.com/) (last visited Mar. 5, 2024). Honeywell was the importer of record of the entries at issue in this action (the "Subject Entries") and has standing to bring this action. (Second Amended Complaint ("Compl.") & Answer to Second Amended Complaint.  ("Answer") ¶ 2, ECF Nos. 34 & 39.) The Subject Entries cover importations made at the ports of Minneapolis, Charlotte, and Atlanta during the period of 2015 through 2016. (Summons, ECF No. 1.) Plaintiff has paid all liquidated duties and fees for the Subject Entries and timely filed this action. (*Id.* at ¶ 6.)

The products imported under the Subject Entries are chordal, radial, and web brake segments ("Brake Segments") used in aircraft wheel and brake assemblies.[3] Deposition of Mark Brown, attached hereto as **Exhibit A** (hereinafter, "Brown Dep.") at pg. 6:17; Compl. ¶ 7; Pl.'s Answers and Supplemental Answers to Def.'s First Interrs., Answer to Interr. No. 3, attached hereto as **Exhibit B**. At the time of entry, Honeywell declared the Brake Segments under subheading 6307.90.9889 of the Harmonized Tariff Schedule of the United States ("HTSUS"), 19 U.S.C § 1202. *See* ECF Nos. 5-6 (Protests and Entries Received). U.S. Customs and Border Protection ("Customs") liquidated the Brake Segments under HTSUS subheading 6307.90.9889. (Compl. & Answer ¶ 13.)

---

[3]    The products at issue are called "segments" in recognition that they are a part of something else. The word "segment" is defined as a part or piece of something. Collins English Dictionary (https://www.collinsdictionary.com/us/dictionary/english/segment#:~:text=(noun%20%CB%88se%C9%A1m%C9%99nt%2C%20verb%20%CB%88se%C9%A1ment%2C,a%20segment%20of%20an%20orange) (last visited Mar. 4, 2024); Dictionary.com (https://www.dictionary.com/browse/segment) (last visited Mar. 4, 2024). In turn, the term "part" may be broadly defined as "a piece or segment of something such as an object, activity, or period of time, which combined with other pieces makes up the whole." Encyclopedia.com (https://www.encyclopedia.com/literature-and-arts/performing-arts/music-history/part) (last visited Mar. 4, 2024).

On May 19, 2017, Customs issued Headquarters Ruling Letter ("HRL") H243798, holding certain radial and chordal brake segments imported by Honeywell are classified under HTSUS subheading 6307.90.98. Honeywell timely filed administrative protests in relation to the Subject Entries, asserting that the Subject Entries were classifiable under HSTSU Heading 8803, which proves for "[*p*]*arts of goods of heading 8801 or 8802*";[4] and Customs subsequently denied the protests. (Compl. & Answer ¶ 4.)

## B. Product Information

The Brake Segments are made from nonwoven polyacrylonitrile (PAN) fiber fabric material that is cut to a specific shape and size. Compl. ¶ 8. The PAN fiber fabric materials used to make the Brake Segments are described in one of three (3) Engineering Material Specifications (EMS-182, EMS-183, or EMS-270). *See* **Ex. C**.

Each Brake Segment is specifically designed and manufactured for exclusive use in aircraft braking systems. Compl. ¶ 10; **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 3. The Brake Segments at issue are listed in the table below:

| Part Number | Part Name | Brake Segment Type | Aircraft Program Use |
|---|---|---|---|
| 2703272 | Segment Rotor, Web | Web | Boeing 777 |
| 2703273 | Segment Stator, Web | Web | Boeing 777 |
| 2703275 | Segment, Rotor Chordal Duplex | Chordal Duplex | Boeing 777 |
| 2703276 | Segment, Rotor Radial Duplex | Radial Duplex | Boeing 777 |
| 2703277 | Segment, Stator, Chordal Duplex | Chordal Duplex | Boeing 777 |
| 2703278 | Segment, Stator, Radial Duplex | Radial Duplex | Boeing 777 |
| 2703329 | Segment, Web | Web | McDonnell Douglas F/A-18E/F Super Hornet |
| 2703331 | Segment, Chordal Duplex | Chordal Duplex | McDonnell Douglas F/A-18E/F Super Hornet |

---

[4]    On January 27, 2022, Heading 8806 was added to the HTSUS and Heading 8803 was transferred to Heading 8807. *See* Chapter 88, HTSUS (2024). Unless otherwise noted, reference to the HTSUS throughout this brief is to the version enacted at the time of entry of the Subject Entries.

| Part Number | Part Name | Brake Segment Type | Aircraft Program Use |
|---|---|---|---|
| 2703332 | Segment, Radial Duplex | Radial Duplex | McDonnell Douglas F/A-18E/F Super Hornet |
| 2703337 | Segment, Rotor, Web | Web | Lockheed Martin F-22 Raptor |
| 2703338 | Segment, Rotor Chordal Duplex | Chordal Duplex | Lockheed Martin F-22 Raptor |
| 2703339 | Segment, Rotor, Radial Duplex | Radial Duplex | Lockheed Martin F-22 Raptor |
| 2703340 | Segment, Stator Web | Web | Lockheed Martin F-22 Raptor |
| 2703341 | Segment, Stator, Chordal Duplex | Chordal Duplex | Lockheed Martin F-22 Raptor |
| 2703342 | Segment, Stator, Radial Duplex | Radial Duplex | Lockheed Martin F-22 Raptor |
| 2703355 | Segment, Stator, Radial Duplex | Radial Duplex | Airbus A380-800 |
| 2703356 | Segment, Stator, Chordal Duplex | Chordal Duplex | Airbus A380-800 |
| 2703358 | Segment, Rotor, Radial Duplex | Radial Duplex | Airbus A380-800 |
| 2703359 | Segment, Rotor, Chordal Duplex | Chordal Duplex | Airbus A380-800 |
| 59000865-001 | Segment, Chordal Duplex | Chordal Duplex | Airbus A380-800 |
| 59000866-001 | Segment, Radial Duplex | Radial Duplex | Airbus A380-800 |
| 59000867-001 | Segment, Chordal Duplex | Chordal Duplex | Airbus A380-800 |
| 59000868-001 | Segment, Radial Duplex | Radial Duplex | Airbus A380-800 |

**Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 3; Pl.'s Answer to Def.'s First Interr. No. 10 (describing the aircraft designations included in the chart above).

    1.  Radial and Chordal Brake Segments

The Radial and Chordal Brake Segments are "Duplex Segments" manufactured by needling web and unidirectional tow fabrics together to form a duplex fabric of a specific areal weight and width specified for the Brake Segment. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 5; Brake Segment patents, attached hereto as **Exhibit D**. Below are sample images of the Radial and Chordal Brake Segments (drawing and actual images):

**Chordal Brake Segment**                          **Radial Brake Segment**

  



The Radial and Chordal Brake Segments (Duplex Segments) are manufactured through the

following steps:

- A unidirectional fiber layer is formed by needling a specific number of parallel, non-twisted, continuous tows of oxidized polyacrylonitrile (PAN) fiber in a manner that stabilizes the fibers in their parallel orientation for further handling. The number of tows and the width of the needled fibers are designed to achieve the required areal weight and width needed for the segment.

- A web fiber layer is formed by needling tows of a different size of oxidized PAN fiber in a manner that results in a web of fibers. The number of tows and the width of the web are designed to achieve the required areal weight and width needed for the segment.

7

- Next, the unidirectional fiber layer and the web layer are needled together to form a duplex assembly of a specific areal weight and width to meet segment needs and to be stable enough for further handling.

- Segments are then cut in arc shapes from the duplex assembly in a manner that results in either a radial or chordal orientation of the unidirectional fibers as required for the segment, all of which are designed for the final needled preform with the correct fiber orientation and density.

**Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 5. The width and final cut of the duplex fabric is defined such that a finished Radial Brake Segment has a radial orientation of the unidirectional fibers. Brown Dep. at pgs. 15:23-16:12, 17:2-8; *see* **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 11 (describing chordal and radial brake segments). In turn, the width and final cut of the duplex fabric is defined such that a finished Chordal Brake Segment has a chordal orientation of the unidirectional fibers for a chordal segment. *Id.*

    2.  <u>Web Brake Segments</u>

A sample image of a Web Segment is included below:



Web Brake Segments are made of a single layer of PAN fabric material. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 5. They are manufactured through the following steps:

- A web fiber layer is formed by needling tows of oxidized PAN fiber in a manner that results in a web of fibers.

- The number of tows and the width of the web are designed to achieve the required areal weight and width needed for the Brake Segment.

- The Brake Segments are cut into arc shapes with a specific outer radius, a specific inner radius and an arc angle, all of which are designed for the final needled preform with the correct fiber orientation and density.

*Id.*

### 3. Use in Aircraft Braking Systems

Each Brake Segment is specifically designed to serve as an integral and constituent part of the manufacture of carbon composite brake discs. **Ex. A**, Brown Dep. at pgs. 20:20-23; 86:25-87:5; 88:5-11. Below are sample images of the completed brake discs in the form of a rotor[5] (image on the left) and a stator[6] (image on the right):



*See also id.* at pgs. 23:24-24:18 (further describing the function of rotors and stators within an

---

[5]    A rotor is a rotating disc in an aircraft brake assembly that is keyed to the wheel assembly and provides friction and heat absorption during braking. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 11.

[6]    A stator is a stationary disc in an aircraft brake assembly that is keyed to the torque tube and provides friction and heat absorption during braking. Auxiliary stators, commonly referred to as the pressure plate and the backing plate, are other stators in brake designs that are at the front and back of the heat sink, respectively. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 11.

aircraft braking system).

In turn, the brake discs are used in commercial and military aircraft braking systems. *Id.* at

pgs. 21:3-7. Below are sample images of the Brake Discs within an aircraft braking system:



The aircraft braking systems to which the Brake Segments are designed are a core component of

the aircraft's undercarriage. Ex. B, Brown Dep. at pgs. 30:16-32:4. Below are sample images of

the aircraft braking systems, as installed in the undercarriage of the aircraft:

  

4.  <u>Design and Manufacturing Specifications</u>

Each Brake Segment has a unique inner radius and outer radius that is specific to the final brake disc configuration for a specific aircraft braking system to be used in a specific airplane. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 3; **Ex. A,** Brown Dep. at pg. 34:10-19; **Ex. C** (Engineer Drawings). The Brake Segments are not interchangeable between aircraft braking systems that require different disc sizes as each part numbered Brake Segment is designed and uniquely manufactured for use within a specific braking system. *Id.* The specific radius, angle, fiber composition, and layering for each imported Brake Segment is specifically engineered to provide the strength, friction, heat absorption, and heat transfer capabilities to meet the braking needs and tolerances for specific disc sizes and respective aircraft brake assemblies. Brown Dep. at pgs. 29:16-30:15; 30:16-32:4; *see also* **Ex. E** (Engineer Drawings).

Brake discs are made of a specific number of Brake Segments that are layered together in a specific orientation and configuration and then subjected to further processing to create carbon brake discs. **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 6. The number and type of Brake Segments used to create a brake disc varies depending on each aircraft's unique specifications. **Ex. A**, Brown Dep. at pg. 34:2-9 ("For example, one disc might have 100 radial segments and 110 chordal segments.").

Below are images depicting the manufacture of a brake disc "preform" using the pre-cut Brake Segments:



More specifically, preforms are manufactured by situating Brake Segments in alternating layers of radial, chordal, and web (in some cases). **Ex. B**, Pl.'s Answer to Def.'s First Interr. No. 6. The Brake Segments slightly overlap at each end and they are punch needled to cause some of the web layer of each Brake Segment to extend to layers below. *Id.* This process results in a preform of circular shape with an outside diameter (OD), inside diameter (ID), thickness, and density that will support carbonization and densification to finally become a carbon disc. *Id.*

The figure below shows the assembly of the Brake Segments to create a preform:



Below are actual images of an assembled preform showing the layers of individual Brake Segments:







The carbon discs form the core of the performance characteristics of airplane brakes and, thus, every step in their manufacture is highly specified and controlled. *Id.* Brake performance for civil aircraft is regulated under subsections of Title 14 of the Code of Federal Regulations (CFR), Parts 23 and 25, respectively. *Id.* Regulatory guidance does not allow for any changes in the materials or methods of manufacture of friction materials (the carbon discs made from the Brake Segments are the friction materials) unless the party responsible for the change provides evidence of acceptable performance of the changed product. *Id.* This makes every step in the process integral to the type design of the aircraft and its certified performance, directly including the manufacture of the Brake Segments. *Id.*

For the reasons provided below, Honeywell believes that classification of the Brake Segments under HTSUS heading 6307 is incorrect and that these products are properly classified as aircraft parts under HTSUS heading 8803.

## V.    APPLICABLE LEGAL STANDARDS OF REVIEW

### A.    Summary Judgment Is Appropriate in this Case

Pursuant to U.S. Court of International Trade Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In tariff classification cases, "summary judgment is appropriate when there is no genuine dispute as to ... what the merchandise is ... or as to its use." *Toy Biz, Inc. v. United States*, 248 F. Supp. 2d 1234, 1241 (Ct. Int'l Trade 2003) (internal citations omitted). Summary judgment is appropriate for Plaintiff here because there is no genuine dispute about what the subject Brake Segments are or their use as parts of aircraft braking systems.

When there is a dispute over tariff classification, the Court first undertakes the legal question to "construe the relevant classification headings" and then undertakes the factual question to "determine under which of the properly construed tariff terms the merchandise at issue falls." *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998). "When there is no factual dispute regarding the merchandise, the resolution of the classification issue turns on the first step, determining the proper meaning and scope of the relevant tariff provisions." *Quaker Pet Grp. LLC v. United States*, 287 F.Supp.3d 1348, 1354 (Ct. Int'l Trade 2018).

The only issue presented here is a question of law pertaining to the proper classification of the Brake Segments based on the interpretation of HTSUS headings 6307 and 8803, as applied to the facts in this case. Pursuant to the terms of the relevant GRIs and HTSUS headings, Honeywell's Brake Segments are properly classified as parts of aircraft in heading 8803. Thus, Honeywell is entitled to summary judgment as a matter of law.

**B.    Customs' Classification of the Brake Segments Under Subheading 6307.90.98 Is Not Entitled to a Presumption of Correctness or Judicial Deference**

Customs' decision to classify the Brake Segments under HTSUS heading 6307 is not entitled to a presumption of correctness. While this Court has held that the factual component of a tariff classification determination by Customs normally garners a presumption of correctness pursuant to 28 U.S.C. § 2639(a)(1), that presumption does not apply to a Customs decision when no factual disputes surround the subject merchandise. *Intercontinental Marble Corp. v. United States*, 264 F.Supp.2d 1306, 1309 n.3 (Ct. Int'l Trade 2003), *aff'd*, 381 F.3d 1169 (Fed. Cir. 2004). There are no material issues of fact in this case and the classification issue is ripe for summary judgment. Accordingly, whether Customs asserts that the tariff classification assessed at liquidation is correct or another classification altogether, no presumption attaches that Customs' asserted classification is correct.

Even in the case of "Customs' own interpretations of the HTSUS," such interpretations "are not granted *Chevron* deference, at least when embodied in the form of letter rulings." *Former Emps. of Murray Eng'g, Inc. v. Chao*, 346 F.Supp.2d 1279, 1283 (Ct. Int'l Trade 2000) (citing *United States v. Mead Corp.*, 533 U.S. 218, at 221 (2001) ("Customs rulings do not carry the force of law and are not, like regulations, intended to clarify the rights and obligations of importers beyond the specific case under review. Instead, a ruling merely interprets and applies Customs law to 'a specific set of facts.'" (quoting 19 C.F.R. § 177.1(d)(1)(1999))). Thus, at most, judicial deference in these circumstances would only be in proportion to Customs' "power to persuade." *See Mead Corp.*, 533 U.S. 218, 235 (2001); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1994); *see also Former Emps. of Elec. Data Sys. Corp. v. U.S. Sec'y of Labor*, 408 F.Supp.2d 1338, 1342-48 (Ct. Int'l Trade 2005) (finding that the agency's interpretation of the term "articles" in the *Trade Adjustment Assistance* (TAA) statute, 19 U.S.C. § 2272(a), via its interpretation of the HTSUS, is

unpersuasive, and is thus not entitled to *Skidmore* deference).

On May 19, 2017, Customs issued Headquarters Ruling Letter ("HRL") H243798, holding that certain radial and chordal brake segments are classified under HTSUS subheading 6307.90.98. This ruling is not well-reasoned and does not have the power to persuade. Specifically, Customs does not conduct a proper analysis of the tariff classification of parts under the HTSUS and misinterprets the holdings in *Baxter Healthcare Corp. of Puerto Rico v. United States*, 182 F.3d 1333 (Fed Cir 1999) and *Benteler Indus., Inc. v. United States*, 840 F.Supp. 912 (Ct. Int'l Trade 1993) as they apply to parts classifiable in HTSUS heading 8803. Customs also discusses GRI 2(a), which is not relevant to the classification of the subject Brake Segments, since they are fully finished parts at the time of importation. Customs also improperly invokes *Mitsubishi Electronics America, Inc. v. United States*, 882 F.Supp. 171 (Ct. Int'l Trade 1995) for the proposition that the Brake Segments are parts of subparts excluded from HTSUS heading 8803.

Moreover, although "Customs may change a view it believes to have been grounded upon a mistaken legal interpretation, the consistency and predictability of an agency's position is a factor in assessing the weight that position is due." *Calif. Indus. Prods., Inc. v. United States*, 350 F.Supp.2d 1135, 1140-41 (Ct. Int'l Trade 2004) (granting no deference to a Customs ruling letter because Customs failed to "demonstrate[] that it followed a consistent pattern of rulings."). In the past, Customs has classified parts of aircraft parts in HTSUS heading 8803. *See* further discussion below at pgs. 20-21. In this case, Customs itself had an internal disagreement over the proper tariff classification of the Brake Segments with one National Import Specialist classifying the Brake Segments as parts in HTSUS heading 8803 and another excluding them from this tariff provision in favor of HTSUS heading 6307. *See* CBP001239**,** April 5, 2013 email from Mitchel S. Bayer to Jennelle M. Cray (stating that "[w]e have been unable to reconcile the two views. NIS 101 has

written it out of Ch. 88/parts. However, despite the fact that 6307 is a possibility, I believe it is more specifically classified as a part"), attached hereto as **Exhibit F**; *see also* CBP001286-1289, Aug. 9, 2023 Mem. from Chief, Metals & Machinery Branch National Commodity Specialist Division to Director, Commercial & Trade Facilitation Division Regulations & Rulings Headquarters, Customs & Border Protection (stating "[i]t is this office's opinion that the subject matter, Non-woven Rotor Radial and Chordal Brake Segments should be classified in heading 8803, HTSUS as these carbon discs are an integral part of the aircraft braking system and is solely used on the aircraft."), attached hereto as **Exhibit G**.

Since Customs' classification of the Brake Segments is not entitled to a presumption of correctness or judicial deference, Honeywell respectfully submits that the Court's next task is to determine whether either party is entitled to judgment as a matter of law based upon the properly interpreted provisions of the HTSUS and other relevant legal text. *See Salant Corp. v. United States*, 86 F.Supp.2d 1301, 1303 (Ct. Int'l Trade 2000).

## VI.    ARGUMENT

The classification of goods under the HTSUS is governed by the principles set forth in the GRIs and, in the absence of special language or context which requires otherwise, by the Additional U.S. Rules of Interpretation ("ARIs"). *Toy Biz*, 248 F.Supp.2d at 1241. The GRIs are applied in numerical order starting with GRI 1. *Pillsbury Co. v. United States*, 431 F.3d 1377, 1379 (Fed. Cir. 2005). "Under GRI 1, the court must determine the appropriate classification according to the terms of the headings and any relative section or chapter notes" with all terms construed according to their "common commercial meaning." *Millennium Lumber Distrib., Ltd. v. United States*, 558 F.3d 1326, 1328-29 (Fed. Cir. 2009) (citation and internal quotation marks omitted). Chapter and section notes are considered in "classification disputes because they are statutory law, not interpretative rules." *Kalle USA, Inc. v. United States*, 273 F.Supp.3d 1319, 1326 (Ct. Int'l

Trade 2017).

Where there is a dispute as to which of two or more tariff classifications may apply to particular merchandise, the Court should analyze the problem first by construing the relevant classification headings. *Bausch & Lomb*, 148 F.3d at 1365. Per GRI 1, if a heading specifically describes the Brake Segments, they should be classified under that heading. *See Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). Based on a review of properly interpreted terms of the tariff headings at issue, the Brake Segments are properly classified as parts of aircraft under HTSUS heading 8803 using a GRI 1 analysis.

**A. The Brake Segments Are Classifiable in Heading 8803 Pursuant to GRI 1**

There are two tariff headings at issue in this litigation: HTSUS heading 6307, which provides for "[o]*ther made up articles*" of textiles, and HTSUS heading 8803, which provides for "[p]*arts of goods of heading 8801 or 8802*," including airplanes. Heading 6307 is a basket provision and the subject Brake Segments can only be classified in this heading if they are not more properly classified elsewhere. *Allstar Mktg. Grp., LLC v. United States*, 211 F.Supp.3d 1319, 1337 n.26 (Ct. Int'l Trade 2017) (stating that the Court did not need to consider HTSUS subheading 6307.90.98 as an alternative proposed classification for imported Snuggie® products because heading 6307 is a basket provision and, even though the Snuggie® was a "made up article," the goods were properly classified in HTSUS subheading 6301.40.00 as textile blankets since "GRI 3(a) mandates classification under the 'most specific description'"). Therefore, pursuant to GRI 1, we must begin the tariff classification analysis for the Brake Segments by applying the terms of HTSUS heading 8803. *See* GRI 1 ("For legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter note."). We believe Customs agrees the analysis should begin with whether the Brake Segments are more specifically classified under HTSUS heading 8803. *See* HRL H255855 (May 27, 2015). In this ruling, Customs

20

started with a review of certain parts provisions (HTSUS headings 8538 and 8803) when comparing them with a basket provision (HTSUS heading 7616) in the classification analysis for certain backshells. On this issue, HRL H255855 provides:

> Heading 7616, HTSUS, is a basket provision, and classification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically. *See E.M. Chems. v. United States*, 923 F. Supp. 202, 206 (Ct. Int'l Trade 1996). *See also* GRI 3(a), HTSUS ("The heading which provides the most specific description shall be preferred to headings providing a more general description."). Heading 8538, HTSUS, and heading 8803, HTSUS are "parts" provisions. Furthermore, pursuant to Note 3 to Section XVII, if the backshells are classifiable as parts of heading 8803, HTSUS, and are suitable for use solely or principally with aircraft, they are not classifiable in either heading 7616, HTSUS or heading 8538, HTSUS. Therefore, **[Customs] *will first address whether the imported goods are more specifically classifiable under headings 8538, HTSUS, or heading 8803, HTSUS***.

*Id.* at 4 (emphasis added).

Honeywell asserts that the Brake Segments are properly classified in HTSUS heading 8803 as "parts of" aircraft pursuant to GRI 1 because they satisfy the tariff definition of the term "parts" and are used as parts of aircraft of HTSUS heading 8802. More specifically, the Brake Segments are parts of aircraft undercarriages classified in HTSUS subheading 8830.20.00. Therefore, these goods are excluded from classification in HTSUS heading 6307 and classification under this basket provision does not need to be considered because the Brake Segments are more specifically provide for elsewhere in the HTSUS. *Allstar Mktg. Grp.*, 211 F.Supp.3d at 1337 n.26.

"A product is classifiable under GRI 1 if it is described in whole by a single classification heading or subheading of the HTSUS." *Kalle USA*, 273 F.Supp.3d at 1327 (internal citations omitted). Certain tariff terms may be defined in the HTSUS. When a tariff term is not defined, "unless there is evidence of contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings." *Id*. at 1326 (citing *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013)); *see also Agatec Corp. v. United States*, 31 CIT 847,

852 (Ct. Int'l Trade 2007) (undefined HTSUS terms "are construed according to their common and commercial meanings, which are presumed to be the same absent contrary legislative intent") (citation omitted). "In ascertaining a term's common meaning, the court may 'consult lexicographic and scientific authorities, dictionaries, and other reliable information' or may rely on its own 'understanding of the terms used.'" *Kalle USA*, 273 F. Supp. 3d at 1326 (citing *Baxter*, 182 F.3d at 1337-38); *see also Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1356-57 (Fed. Cir. 2001) (same).

Further, the Court may also refer to The Harmonized Commodity Description and Coding System Explanatory Notes ("Explanatory Notes" or "ENs") accompanying a tariff heading. While these notes are not controlling legislative history, they are intended to clarify the scope of the HTSUS tariff headings and to offer guidance in their interpretation. *Agatec Corp.*, 31 CIT at 852 (citing *Len–Ron Mfg. Co., Inc. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003)). While not binding on this Court, the ENs "provide a commentary on the scope of each heading of the Harmonized System and are useful in ascertaining the classification of merchandise under the system." *See, e.g., Russel Stadelman & Co. v. United States*, 242 F.3d 1044, 1047 (Fed. Cir. 2001) (citation omitted). As an interpretative supplement to the HTSUS, the ENs may help clarify the scope of an HTSUS provision and offer guidance on its interpretation. *Id.* at 1048. The ENs are "generally indicative of the proper interpretation of a tariff provision." *Agfa Corp. v. United States*, 520 F.3d 1326, 1329-30 (Fed. Cir. 2008) (citation and internal quotation marks omitted).

1. Heading 8803 Is a Parts Provision That Expressly Provides for Parts of Certain Aircraft, Not the Complete Aircraft

As noted above, HTSUS heading 8803 provides for "[*p*]*arts of goods of heading 8801 or 8802*." This is a "parts" provision that covers parts of certain aircraft, including parts of "*[b]alloons and dirigibles; gliders, hang gliders and other non-powered aircraft*" (heading 8801) and parts of

"*[o]ther aircraft (for example, helicopters, airplanes); spacecraft (including satellites) and suborbital and spacecraft launch vehicles*" (heading 8802). Heading 8803 does not cover the complete aircraft themselves. *See, e.g., United States v UPS Customhouse Brokerage, Inc.*, 558 F.Supp.2d 1331, 1348 (Ct. Int'l Trade 2008) (noting, in the context of HTSUS heading 8473, which provides for "*Parts and accessories (other than covers, carrying cases and the like) suitable for use solely or principally with machines of headings 8469 to 8472,*" that a "parts provision" covers the parts of certain articles, and not the articles themselves), judgment affirmed in part, vacated in part by *U.S. v. UPS Customhouse Brokerage, Inc.*, 558 F. Supp. 2d 1331 (Fed. Cir. 2009). The further subdivisions of HTSUS heading 8803 are a reference to specific aircraft parts or parts of such parts (*e.g.*, propellors and parts of propellers, rotors and parts of rotors, undercarriages and parts of undercarriages).

2.    Heading 8803 Covers All Parts of the Aircraft Classified in Headings 8801 or 8802

By its express terms, HTSUS heading 8803 broadly covers all parts of the aircraft classified in HTSUS headings 8801 or 8802 without limitation.[7] *Logitech, Inc. v. United States*, 532 F.Supp.3d 1358, 1368 (Ct. Int'l Trade 2021) (noting that an *eo nomine* tariff provision describes articles by name and covers "all forms of the named article"). Thus, HTSUS heading 8803 includes parts of the aircraft parts classified therein, as it is well-established that a part of a part is also considered part of the whole. *See, e.g., Clipper Belt Lacer Co., Inc. v. United States*, 738 F.Supp. 528, 539 (Ct. Int'l Trade 1990) (recognizing "the principle that a part of a part is classifiable as a part of the whole"); *see also Flex Track Equip., Ltd. and Border Brokerage Co., Inc. v. United*

---

[7]    Since HTSUS heading 8803 covers all parts of the identified aircraft, it covers parts that may be considered parts of subparts of the aircraft. There is no general rule that parts of aircraft parts are excluded from HTSUS heading 8803. Instead, there would need to be a specific exclusionary rule to remove an aircraft part from classification in this heading.

*States*, 65 Cust. Ct. 119, 125 (Cust. Ct. 1970) ("Since the assembled track is a 'part' for a motor vehicle, and the imported articles are 'parts' for the assembled track, it follows that the imported articles are 'parts' for motor vehicles under the judicial principle that 'a part of a part of a main article is a part of the main article.'") (citation omitted).[8]

"In the field of customs jurisprudence it is a well-recognized principle that a part of a part is a part for tariff purposes." *American Schack Co., Inc. v. United States*, 1 CIT 1, 5 (Ct. Int'l Trade 1980) (determining that parts of an exhaust system that was an integral part of a furnace were properly considered to be parts of the furnace for tariff purposes); *see also United States v. American Express Co.*, 29 C.C.P.A. 87, 93 (1941) (cited in *American Schack*) ("[A]n integral part of an integral part of an article is an integral part of such article."). For HTSUS heading 8803, this proposition is further supported by inclusion of the language "and parts thereof" within the subheadings of this heading.[9] *See, e.g.*, HTSUS subheading 8803.10.00 (covering "[p]ropellers and rotors <u>and parts thereof</u>") and HTSUS subheading 8803.20.00 (covering "[u]ndercarriages <u>and parts thereof</u>") (emphasis added).[10]

The U.S. Court of Appeals for the Federal Circuit ("CAFC") recognized this proposition

---

[8]    Although the decision in *Flex Track* was made under the T*ariff Schedules of the United States* ("TSUS"), this Court has held that prior decisions under the TSUS may be instructive where, as here, the statutory language remains unchanged in the transition from the TSUS to the HTSUS. *See G.G. Marck & Assocs., Inc. v. U.S.*, 2015 WL 3757040, at *4 (Ct. Int'l Trade 2015) (decisions under the TSUS are instructive where the statutory language remains unchanged in the transition from the TSUS to the HTSUS) (citing *Pima Western, Inc. v. United States*, 915 F.Supp. 399, 404 (Ct. Int'l Trade 1996)).

[9]    It does not matter that the HTSUS heading 8803 language does not include the phrase "and parts thereof", as that would be redundant given the well-established principle that parts of parts are parts of the whole.

[10]    Further support can be found in the language of the statistical breakouts in HTSUS heading 8803, which include the phrase "for use in civil aircraft." The term "civil aircraft" is defined in HTSUS GN 6(b) as any aircraft, aircraft engine, or ground flight simulator (***<u>including parts, components, and subassemblies thereof</u>***). Thus, including aircraft components and parts of these components in heading 8803 is aligned with the HTSUS definition of "civil aircraft" as found within heading 8803.

in the context of HTSUS heading 8708, which provides for "[*p*]*arts and accessories of the motor vehicles of headings 8701 to 8705.*" *Honda of Am. Mfg., Inc. v. United States*, 607 F.3d 771, 776 (Fed. Cir. 2010) (classifying certain oil bolts used in cars and motorcycles). The oil bolts at issue in *Honda* were used to "connect fluid lines to brake master cylinders or transmission cases, allowing fluid to flow through without leaking," but also had a fastening function. *Id.* at 772, 775. Although the CAFC affirmed classification of the oil bolts as fasteners in HTSUS heading 7318 (based on application of the "parts of general use" exclusion found in HTSUS Section XVII, Note 2), the court recognized that the oil bolts "facially meet Honda's proposed subheadings because they are 'parts and accessories' of vehicle power trains (subheading 8708.99.6790), of vehicle 'brakes and servo-brakes' (subheading 8708.39.5050), and of motorcycles (subheading 8714.19.0060)." *Id.* at 773. The court's recognition that the oil bolts could be classified as parts for motor vehicles in HTSUS heading 8708 was not impacted by the fact that the oil bolts were parts of subparts of the vehicles (*e.g.,* parts of power trains or brakes). Instead, the court noted that Customs had "recognized that the oil bolt is classifiable in heading 8708 by the fact that it is a part of a part for use in a motor vehicle." *Id.* (citation and internal quotation marks omitted); *see also Jing Mei Auto. (USA) v. United States*, --- F.Supp.3d ---, 2023 WL 9792953, at *23 (Ct. Int'l Trade Dec. 18, 2023) (classifying axle covers under HTSUS heading 8708 without any discussion that the axle covers might be excluded because they were a part of a subpart of the vehicle).

The same logic applies to HTSUS heading 8803 at issue in this case. The subject Brake Segments are classifiable in heading 8803 by the fact they are a part of a part for use in an airplane—the Brake Segments are dedicated for use in making brake discs and the brake discs are intended for use in braking systems for aircraft landing gear (undercarriages). SMF ¶¶ 21-28. There is no limitation within HTSUS heading 8803 that would exclude parts of aircraft braking systems

from classification in this heading.[11] Consider, for example, the analysis in *Northwest Airlines v. United States*, 17 F. Supp. 2d 1008 (Ct. Int'l Trade 1998), wherein this Court reviewed the tariff classification of a Brake and Steering Control Unit ("BCSU") of an Airbus A320 aircraft. The BCSU controlled the braking and steering of the aircraft and was described by Airbus as "landing gear" in its "Technical Definition" manual. *Id.* at 1012. Although the BCSU was not the complete landing gear, or complete braking and steering system of the aircraft, in *Northwest Airlines*, the Court indicated that such parts of aircraft landing gear are classifiable under HTSUS heading 8803, "as a part to an aircraft that falls under subheading [sic] 8802." *Id.* at 1014. While the BCSU was not ultimately classified in HTSUS heading 8803, there is no discussion that the BCSU should be excluded from heading 8803 because it is part of a part. *Id.* at 1008-1015 (holding that the BCSU was excluded from heading 8803 by Section Note XVII, Note 2(f)).

Finally, the Explanatory Notes provide clear guidance that parts of aircraft parts are classified in HTSUS heading 8803. When "determining whether an item is properly classified under a particular heading in the HTSUS, the [ENs] are persuasive authority for the Court when they specifically include or exclude an item from a tariff heading." *See, e.g., H.I.M./Fathom, Inc. v. United States*, 981 F.Supp. 610, 613 (Ct. Int'l Trade 1997). The 8803 ENs provide several examples of parts of aircraft parts that are included within this heading. For example, the 8803 ENs state, "[t]he parts of this heading include: (I) Parts of balloons and dirigibles, such as: … (2) ***Envelopes and parts thereof (strips or panels)*** … (5) ***Rigid frames and sections thereof***." (emphasis added). This language clearly identifies certain portions or sections of aircraft parts that are included as parts within HTSUS heading 8803. In fact, the "envelope" is the balloon portion

---

[11]    In fact, such parts of aircraft braking systems are specifically named in subheading 8803.20.00, which provides for parts of undercarriages. *See* discussion below.

of a hot air balloon and is typically made of fabric.[12] *See* picture of the components of a hot air balloon below:



https://hotairflight.com/blog/parts-of-a-hot-air-balloon?expand_article=1#google_vignette     (last visited March 5, 2024); *see also* City of Albuquerque Website, "How a Hot Air Balloon Works and Its Major Parts" (https://www.cabq.gov/artsculture/balloonmuseum/documents/HowaHotAirBalloonWorksandIts

---

[12] https://www.britannica.com/technology/balloon-flight/Hot-air-ballooning#ref990697 (last visited Mar. 5, 2023).

MajorParts.pdf) (last visited March 5, 2024). Fabric panels are sewn together and assembled with other components to make the envelope. *See* Plano Balloon Festival Website (https://www.planoballoonfest.org/p/about/anatomy) (last visited March 5, 2024). Based on this portion of the 8803 ENs, we see an example of certain fabric pieces (strips or panels) that will be used to make an aircraft part (envelope)—*i.e.*, parts of a part—that are specifically included as aircraft parts in HTSUS heading 8803. This is example is substantially similar to the relationship between the Brake Segments and the aircraft brake discs as the Brake Segments are fabric pieces (segments) that will be used to make an aircraft part (brake disc).

    3.    <u>The Brake Segments are "Parts" of Airplanes for Tariff Classification Purposes Under the HTSUS</u>

The term "part" is not defined in the HTSUS. As discussed in *RKW Klerks v. United States*, 592 F.Supp.3d 1349, 1357-1358 (Ct. Int'l Trade 2022), the CAFC has adopted two tests for determining whether merchandise may be classified as a "part" of another article. "The first test is used when the merchandise in question is claimed to be a part of another article that "could not function as such article" without the claimed part." *Id.* (citation omitted). In *Bauerhin Technologies Ltd. v. U.S.*, 110 F.3d 774, 779 (Fed. Cir. 1997), the court found that, consistent with *United States v. Willoughby Camera Stores, Inc.*, 21 C.C.P.A. 322, 324 (1933), this first test holds that a part of an article "is something necessary to the completion of that article . . . without which the article to which it is to be joined, could not function as such article." *Id.*; *RKW Klerks*, 592 F.Supp. at 1358. The other test evolved from *United States v. Pompeo*, 43 C.C.P.A. 9, 14 (1955), which held that a device may be a part of an article even though its use is optional and the article will function without it, if the device is dedicated for use upon the article, and, once installed, the article will not operate without it. *RKW Klerks*, 592 F. Supp. at 1358; *Bauerhin*, 110 F.3d at 779; *see also Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1353 (Fed. Cir. 2002)

(defining parts as "an essential element or constituent; integral portion which can be separated, replaced, etc."). Neither the *Willoughby* nor the *Pompeo* test is exclusive. *Bauerhin*, 110 F.3d at 779. Under either test or line of cases, an imported item is not considered a part if it is a "distinct and separate commercial entity." *ABB, Inc. v. United States*, 346 F. Supp. 2d 1357, 1364 (Ct. Int'l Trade 2004) (internal quotation marks and citation omitted).

A useful illustration of these concepts as it relates to imported textile material is found in *Baxter Healthcare Corp. of Puerto Rico v. United States*, 182 F.3d 1333 (Fed. Cir. 1999). In *Baxter Healthcare*, the CAFC classified Oxyphan®, a polypropylene filament, as a textile article, and not as a "part" or "unfinished part" of a membrane oxygenator. *Id.* at 1339. The Oxyphan® was imported in ten-kilometer spool units and was cut to length after importation to be used in the manufacture of oxygentaors. *Id.* at 1335-36. Although the CAFC determined that Oxyphan® was "dedicated for use" with an oxygenator, the court nonetheless agreed with the government's argument that the Oxyphan® had not been modified (*e.g.*, by being cut to specific lengths or by being attached to something else) at the time of importation, and thus did not possess the "essential character" of a part of an oxygenator at the time of importation. *Id.* at 1338. Ultimately, the CAFC concluded that Oxyphan® was not a "part" because "the individual parts are not identifiable or fixed at the time of import," in that they were not cut to a predefined length for use in the oxygenator. *Id.* at 1339.

In reaching its determination, the CAFC enunciated a two-part test to determine if merchandise is classifiable as a textile material or a "part" for tariff classification purposes. *Id.* at 1338-39. The first part of the *Baxter Healthcare* test provides that "the item must be dedicated solely or principally for use in those articles [of which it is said to be a part] and must not have substantial other independent commercial uses." *Id.* (citing *Bauerhin*, 110 F.3d at 779). The second

29

part of the *Baxter Healthcare* test states that "if the item as imported can be made into multiple parts of articles, the item must identify and fix with certainty the individual parts that are to be made from it." *Id.* at 1339. We note, however, the trial court in *Baxter Healthcare* stated, "the question of whether merchandise is classified as a material or as an unfinished part is determined on a case-by-case basis." *Baxter Healthcare Corp. of Puerto Rico v. United States*, 998 F.Supp. 1133, 1147 (Ct. Int'l Trade 1998), *aff'd*, 182 F.3d 1333 (Fed. Cir. 1999) (citing *Harding Co. v. United States*, 23 C.C.P.A. 250 (1936), which found that "brake lining imported in rolls measuring 100 feet in length and used to make different sized brake shoes was not classified properly as 'parts of automobiles' but rather as 'asbestos yarn' because merchandise was not cut to length or marked to indicate where it was to be cut") (other citations omitted).

This Court conducted a similar analysis in a review of screening products (environmental screens, insect screens, and greenhouse roof screens) imported in large rolls (several hundred feet long), but reached a different conclusion—determining the imported materials had been sufficiently advanced to be considered a "part of agricultural products." *Ludvig Svensson (U.S.), Inc. v. United States*, 62 F. Supp. 2d 1171 (Ct. Int'l Trade 1999). The only commercial use of the screens at issue in *Ludvig Svensson* was either as part of a shade and retention heat system in a greenhouse (environmental screens and greenhouse roof screens) or to control the insect population within a greenhouse (insect screens). *Id.* at 1173. The shade and heat retention systems "consist of the screens along with drive motors, cables, aluminum and steel supports, brackets, pulleys, fasteners, and support wires," but the insect screens were not part of these systems. *Id.* at 1174. At the time of manufacture (and importation), the shade and energy saving properties of the screens were fixed and not altered by any post-importation processing. *Id.* at 1173. However, after importation, Ludvig Svensson might perform some processing, such as cutting the screens to

length, sewing two pieces of screen together, or adding hooks and electrical tape. *Id.* at 1174.

Ludvig Svensson argued that the screens were "properly classified as parts of agricultural equipment under HTSUS 8436.99.00 because at the time of import the screens are in an advanced state of manufacture; their identity is fixed with certainty; the screens are dedicated to use; and the post-importation processing is insignificant and part of the installation." *Id.* at 1175. This Court relied upon *Bauerhin* to analyze whether the screens were a "part" for tariff classification purposes, stating that "[f]irst, the court must determine whether the imported item is 'an integral, constituent, or component part, without which the article to which it is to be joined, could not function as an article" and, "[s]econd, the court must establish whether the imported item is dedicated solely for use with the article in question." *Id.* at 1178 (citations omitted).

Upon review of the facts, the Court in *Ludvig Svensson* found that both prongs of the *Bauerhin* test were satisfied. *Id.* at 1178-82. First, "by virtue of the nature and function of the product itself," the Court found the screens were an integral part of shade and heat retention systems and an integral part of the greenhouses themselves. *Id.* at 1178. The Court also found the second prong of the test was satisfied because "[t]he screens are in an advanced state of manufacture, and have no other commercial uses." *Id*. Therefore, the Court found the screens were properly classified as parts of agricultural machinery. *Id.* at 1181-82. In support of its classification of the imported screen materials as "parts", the Court stated that "[a]n examination of relevant case law shows that a material may be classified as an unfinished article when the fabric in its imported condition has been so far advanced beyond the stage of materials so as to be dedicated to and commercially fit for use as that article and incapable of being made into more than one article or class of articles." *Id.* at 1179 (citations omitted).

Another case that is supportive of this proposition is *Benteler Industries, Inc. v. United*

*States*, 840 F. Supp. 912 (Ct. Int'l Trade 1993). In *Benteler*, this Court determined that certain imported seamless steel tubes were into properly classified as steel profiles or tubes in a legacy provision to HTSUS heading 7304, *i.e.*, item 610.4045 of the TSUS and instead were properly classified as parts of motor vehicles.[13] *Id.* at 918-19. Since the seamless steel tubular sections were specifically designed and engineered for a particular automobile platform, they were <u>*not*</u> classifiable as "*Other pipes and tubes and blanks therefor.*" *Id*.[14] Rather, the Court held that the seamless steel tubular sections were properly classified as "*Other chassis, cabs, and parts of . . . motor vehicles,*" the predecessor to HTSUS heading 8708. *Id*. at 916 (finding the beams were intended for use as parts because they were imported in specific lengths, of specific alloys, and painted with colored bands to enable the post-importation laser cutting).

In *Benteler*, the Court adopted the defendant's argument that the "significant fact that the courts have looked to in distinguishing . . . material from individual articles is whether the importations are dedicated to use for no more than a single article and are not bulk material from which an indiscernible number of articles could be made after entry." *Id.* at 918. The steel tubes at issue in *Benteler* were considered to be "parts" given their dedicated function, regardless of whether there was post-importation processing required prior to their final incorporation in the vehicle. *Id*. at 916-918 ("At importation, the sections are differentiated by part numbers, as well as by color code, and each is also identifiable by its diameter and wall thickness. In other words,

---

[13]    In HRL H243798, Customs erroneously stated that the CAFC in *Baxter* "cited [*Benteler*] with approval." However, *Benteler* was only referenced in the lower court's decision for this case. *Baxter Healthcare*, 998 F.Supp. at 1148-49.

[14]    Since both the *Pompeo* and *Willoughby* definitions for "parts" were established prior to the *Benteler* decision and remain central judicial authority, the *Benteler* Court's interpretation on what is a "part" remains instructive and directly relevant to the products at issue even though the *Pompeo* and *Willoughby* decisions were made under the TSUS. *See G.G. Marck*, 2015 WL 3757040, at *4 (citing *Pima Western*, 915 F.Supp. at 404).

the 'design is specific to a type of door and door structure.'"); *see also Lee Enter., Inc. v. United States*, 84 Cust. Ct. 208, 213 (1980) (cited in *Benteler*, 840 F.Supp. at 217) (concluding that aluminum plates were parts of printing machines rather than articles of aluminum, as they "were dedicated to use as printing plates, and . . . the identity of the individual articles was 'fixed with certainty'" even though they required trimming, hole-punching and bending after importation).

The Brake Segments at issue in this case meet the first criterion of the *Bauerhin* "parts" test as applied in *Ludvig Svensson*. The Brake Segments are an integral part of brake discs used in aircraft braking systems, which are an integral part of the aircraft themselves. SMF ¶¶ 29-31. The braking system, which in turn is part of the landing gear, is essential to the function of the aircraft as the aircraft could not take off or land without the landing gear and could not stop without the brakes. *Id.* at ¶¶ 29-31. Without the Brake Segments and the brake discs made from these segments, the aircraft's braking system would not properly function.

The Brake Segments also meet the second criterion of the *Bauerhin* "parts" test as applied in *Ludvig Svensson*. The Brake Segments are in an advanced state of manufacture having been cut to a specific size and shape for production of a specific brake disc for a use on a specific aircraft (*i.e.*, there is a specific relationship between the size and shape of the Brake Segment and the size and shape of the brake disc made from the Brake Segment). SMF ¶¶ 19-23. The Brake Segments are imported with defined specifications as to radius, angle, fiber composition, layering, and other elements to prepare them for incorporation within a specific aircraft braking system. *Id.*; *see also* **Ex. D** (Brake Segment Patents). Further, at the time of importation, each Brake Segment has been engineered to meet the braking needs and tolerances for respective aircraft brake assemblies, including strength, friction, heat absorption, and heat transfer capabilities. SMF ¶¶ 19-31; **Ex. E** (engineer drawings). At the time of importation, the Brake Segments have no commercial use other

than for use in brake discs for specific aircraft braking systems (*i.e.*, they are dedicated to and commercially fit only for a particular aircraft braking system). *Id.* at ¶ 21.

The imported Brake Segments also meet the two criteria for "parts" as established in *Baxter Healthcare* based on the facts discussed above. First, the Brake Segments are dedicated for use solely in the manufacture of specific aircraft braking systems for specific aircraft and are not interchangeable or suitable for other applications (*i.e.*, the Brake Segments do not have other independent commercial uses). Second, the Brake Segments have a size, shape, and identity that is fixed with certainty at the time of importation. SMF ¶ 28. Unlike the merchandise at issue in *Baxter Healthcare* (large rolls of monofilament), the Brake Segments are not imported in material lengths. Instead, the Brake Segments have been advanced far beyond the stage of materials, as they are discernable, individual parts that have been processed to a specific size and shape limiting their use to the production of brake discs for airplane braking systems.

The Brake Segments are fully finished parts at the time of importation and do not require any further processing after importation to be used for their intended purpose in the manufacture of brake discs (*i.e.*, the Brake Segments require no additional parts, assembly, or processing to be used as part of a brake disc). *Id.*; *see also* **Exs. C** and **D**.[15] Therefore, the Brake Segments at issue are markedly different from the product at issue in *Baxter Healthcare*, which necessitates a different tariff classification result in this case. *Id.* at 1339 (stating that "[a]t the time of import, the individual parts cannot be discerned from the roll, and the roll nowhere marks or otherwise identifies the individual parts to be made from it"). The facts in the case are distinguishable from cases where the courts have found a product to be classified as materials. Like the products at issue

---

[15]    In their imported condition the Brake Segments are ready for assembly in alternating layers of five (5) segments each that are needled together to create the brake disc shape, which is then carbonized, densified, and machined to create the finished brake disc. **Ex. B**, Ex. B, Pl.'s Answer to Def.'s First Interr. No. 6.

in *Ludvig Svensson* and *Benteler*, the subject Brake Segments are properly classified as "parts."

Pursuant to the two-part test set forth in *Bauerhin,* as further explained by the guidance of *Ludvig Svensson* and *Benteler* cases for purposes of distinguishing materials from parts, the Brake Segments are appropriately classified as "parts" under HTSUS heading 8803, and more specifically under HTSUS subheading 8803.20.00, which provides for "*Parts of goods of heading 8801 or 8802: ... Undercarriages and parts thereof.*"[16]

4. The Brake Segments Are Not Excluded from Heading 8803 by the Relative Section or Chapter Notes

HTSUS Chapter 88 is included within HTSUS Section XVII (VEHICLES, AIRCRAFT, VESSELS AND ASSOCIATED TRANSPORT EQUIPMENT). HTSUS Section XVII, Notes 2 and 3 provide guidance regarding the classification of "parts" within this Section, including HTSUS heading 8803. In particular, Section XVII, Note 2 provides a list of articles that do not fall within the term "parts" in the headings of this Section. None of the listed examples are applicable to exclude the Brake Segments from HTSUS heading 8803. Further, Section XVII, Note 3 more broadly excludes parts that "are not suitable for use solely or principally with the articles" of chapters 86 to 88. As applied to this case, if the Brake Segments are solely or principally used with aircraft braking systems, they remain properly classified under HTSUS heading 8803.[17] *See* footnote 13 above.

---

[16]    In HRL H243798, Customs states that "[t]he radial and chordal brake segments are not *prima facie* classifiable in heading 8803 because they are not parts of aircraft." However, there is no analysis or support for this conclusion (*i.e.*, no review or discussion of the applicable case law for determining whether an item is a part). For the reasons discussed herein, this conclusion is wrong.

[17]    *See, e.g.*, HRL H173197 (Nov. 13, 2012), wherein Customs confirmed application of Section XVII Note 3 and GRI 1 when reviewing the tariff classification of certain curtains alleged to be specially designed for various models of civil aircraft, explaining that "pursuant to Note 3 to Section XVII, if the curtains are classifiable as parts in Heading 8803, HTSUS, and are suitable for use solely or principally with aircraft, they are not classifiable as curtains in Heading 6303, HTSUS."

At the time of importation, the Brake Segments are dedicated for use in particular brake discs to be incorporated within an identified aircraft braking system. SMF ¶¶ 21, 28. The Brake Segments are designed with specific radius, angle, fiber composition, and layering, and each imported segment, identifiable by part number, is specifically designed and engineered to meet the braking needs and tolerances for respective braking systems, including strength, friction, heat absorption, and heat transfer capabilities. *Id.* at ¶¶ 29-31. The imported segments are not interchangeable between braking systems that require different disc sizes, with each part number designed, manufactured, and intended for use within a respective aircraft braking system (*e.g.*, Boeing 777). *Id.* at ¶ 22.

The Brake Segments are cut-to-shape and clearly identifiable and dedicated for a predetermined use at the time of importation as a part of an aircraft brake system. *Id.* at ¶ 20. The Brake Segments do not have any other use. *Id.* at ¶¶ 19-22. In contrast to roll fabric material imported in bulk (*i.e.*, on spools and not cut to length), the Brake Segments at issue are clearly identified as such at the time of entry and are dedicated for and principally used within aircraft brake systems. *Id.* at ¶ 19.

The Explanatory Notes also provide similar guidance on the classification of "parts" under HTSUS heading 8803. First, the 8803 ENs state the following with respect to parts classified under this tariff provision:

> *This heading covers parts of goods falling in heading 88.01 or 88.02, provided the parts fulfill both the following conditions: (i) They must be identifiable as being suitable for use solely or principally with the goods of the above-mentioned headings; and (ii) They must not be excluded by the provisions of Notes to Section XVII (see the corresponding General Explanatory Note).*

As detailed in the discussion above, the Brake Segments meet these two conditions.

Section XVII, General Explanatory Note 3 includes similar requirements and provides that the headings of this Section (including HTSUS heading 8803) "apply **only** to those parts or

accessories which comply with **all three** of the following conditions:"

> *(a) They must not be excluded by the terms of Note 2 to this Section (see paragraph (A) below).*
>
> *and (b) They must be suitable for use solely or principally with the articles of Chapters 86 to 88 (see paragraph (B) below).*
>
> *and (c) They must not be more specifically included elsewhere in the Nomenclature (see paragraph (C) below).*

(emphasis in original).

The first two requirements are similar to the 8803 ENs and the requirements of HTSUS Section XVII, Notes 2 and 3 (which are met for the reasons discussed above). However, the third requirement in Section XVII, General EN 3 is unique. As further discussed in Section B below, the Brake Segments are not more specifically included elsewhere in the Nomenclature, as there is no tariff provision that more specifically provides for aircraft brake segments, aircraft brake discs, or aircraft brake systems. Such articles are parts of aircraft that are specifically included within HTSUS heading 8803.

### 5. The Brake Segments Are Not Excluded from HTSUS Heading 8803 by the *Mitsubishi* Case

In HRL H243798, Customs found that classification of the Brake Segments under HTSUS heading 8803 as a part of an aircraft undercarriage was precluded by an exclusion found in *Mitsubishi Electronics America, Inc. v. United States*, 882 F. Supp. 171, at 176 (Ct. Int'l Trade 1995). Specifically, Customs states:

> With regard to whether the instant brake segments are considered "parts" of aircraft braking systems to be classified in heading 8803, HTSUS, the U.S. Court of International Trade (CIT) has held that a subpart of a particular automotive part should not be classified in heading 8708, HTSUS, if that subpart is more specifically provided for elsewhere in the Nomenclature. … This is because a subpart of a particular part of an article is more specifically provided for as a part of the part than as a part of the whole.

HRL H243798 (citing *Mitsubishi*, 882 F. Supp. at 175 n.3).[18] Customs goes on to state that they "are compelled by the reading of *Mitsubishi*, supra, to note the distinction between aircraft and aircraft braking systems." *Id.* While the Brake Segments "may be parts of aircraft braking systems" and "aircraft braking systems are parts of aircraft," since "aircraft raking systems are not specifically covered by name in Chapter 88," Customs concludes the Brake Segments are not classified in heading 8803. *Id.*

The rule espoused in footnote 3 of the *Mitsubishi* case has sometimes been colloquially referred to as the "parts of parts" rule establishing that, in some cases, a part of a part is not a part of the whole for tariff classification purposes. However, as a starting point, this is <u>*not*</u> the legal principle set forth in *Mitsubishi* and captured in several earlier court cases. Rather, the Court in *Mitsubishi* was addressing the tariff classification principle that a provision for "parts of an article covers products solely or principally used as parts of such articles . . . [but] does not, however, prevail over a specific or *eo nomine* provision for such parts." 882 F. Supp. at 383-84. This tariff classification rule is restated within HTSUS AUSRI 1(c), which states that:

> In the absence of special language or context which otherwise requires . . . a provision for parts of an article covers products solely or principally used as a part of such articles but a provision for "parts" or "parts and accessories" shall not prevail over a specific provision for such part or accessory.

In contrast to Customs' assertion in HRL H243798, there is no general rule that a part of a subpart cannot be classified as part of the whole. In fact, it is well-established that a part of a part

---

[18]    Footnote 3 of the *Mitsubishi* case states:

> The Court notes that if the subject merchandise is not a clutch, but rather a part of a starter motor, then it cannot be classified as part of an automobile, even though it is used solely in automobiles. This is because a subpart of a particular part of an article is more specifically provided for as a part of the part than as a part of the whole. *Mitsubishi*, 882 F. Supp. at 175, n.3; *c.f., Liebert v. United States*, 287 F. Supp. 1008, 1014 (Customs Ct. 1968) (holding that parts of clutches which are parts of winches are more specifically provided for as parts of clutches than as parts of winches).

is also considered to be part of the whole for tariff classification purposes. *See Clipper Belt Lacer Co.*, 738 F. Supp. at 539; *Flex Track Equipment*, 65 Cust. Ct. at 125; *American Schack Co.*, 1 CIT at 5 ("In the field of customs jurisprudence it is a well-recognized principle that a part of a part is a part for tariff purposes.").[19] Contrary to Customs' analysis in HRL H243798, the discussion in footnote 3 of the *Mitsubishi* case is indicative of the well-established proposition that a part of a part is part of the whole. That is why the Court's statement in *Mitsubishi* is couched as an exception. Stated differently, the rule set forth in *Mitsubishi* stands for the principle that a part of a subassembly or subpart of a larger article is appropriately classified as a part of the whole, <u>unless</u> there is a more specific tariff provision that covers the subassembly and its parts.

The well-established proposition that a part of a part is part of the whole contradicts Customs' analysis and conclusion in HRL H243798.[20] The proposition that "a subpart of a particular automotive part should not be classified in heading 8708, HTSUS, if that subpart is more specifically provided for elsewhere in the Nomenclature" (as similarly applied to heading 8803 by Customs in HRL H243798) does not exist as a general rule, but only as an exception where the subpart has its own specific tariff classification that covers the subpart and its parts.[21]

---

[19]    Consistent with *Mitsubishi* and AUSRI 1(c), the court in *American Schack Co.* similarly explained that "a product solely or chiefly used as a part is covered by a provision for "parts" but does not prevail over a specific provision for such part." 1 CIT at 5.

[20]    We note that Customs has classified other parts of parts of aircraft in HTSUS heading 8803 without any discussion of the *Mitsubishi* case. For example, in HRL 963663 (July 30, 2001), Customs classified aluminum rails and drawers that were parts of aircraft galleys in HTSUS heading 8803. Customs reasoned that the items were parts specifically designed for galleys, which were in turn parts of the aircraft. *Id.*

[21]    We believe that *Mitsubishi* footnote 3 aligns with the basic principles discussed herein, *i.e.,* if there is no specific provision covering the part, then the *Mitsubishi* rule does not apply and the subpart remains classified as part of the whole, as the Court's use of the word "particular" appears to be indicative of a specific tariff provision covering the part that would, in turn, cover subparts of that part. However, as cited in HRL H243798, Customs' interpretation of *Mitsubishi* is clearly wrong and brings into question any administrative precedent that may rely on a similar misinterpretation of the *Mitsubishi* case. Upon review of the documents produced in this litigation it appears that this misinterpretation may be pervasive throughout a number of Customs rulings (*i.e.*, Customs has been getting this wrong for years).

Accordingly, since the Brake Segments are integral, constituent component parts without which the aircraft braking system would not function, **Ex. B** (Pl.'s Answer to Def.'s First Interr. No. 3), the question in this case is whether there is a tariff provision that more specifically provides for the aircraft brake discs or the aircraft braking systems. *See* Section XVII, General EN 3. There is no HTSUS tariff heading that covers brake discs or aircraft braking systems that would raise the potential application of the "parts of parts" exclusion analysis to the Brake Segments. Instead, such parts of brake discs that are parts of aircraft braking systems are broadly covered as parts of aircraft by HTSUS heading 8803. As discussed herein, this determination is properly made under GRI 1.

**B.  The Brake Segments Are Excluded from Classification in HTSUS Heading 6307**

As discussed above, the Brake Segments are properly classified, *prima facie*, within HTSUS heading 8803—a classification that is also consistent with application of the relevant GRIs and corresponding Section and Chapter Notes. This determination precludes classification of the Brake Segments in HTSUS heading 6307 because it is a basket provision and does not more specifically include the Brake Segments.

"A basket provision is not a specific provision." *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1354 (Fed. Cir. 2014). "Therefore, [c]lassification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically." *Id.* (citations and internal quotation marks omitted); *see also, EM Indus., Inc. v. United States*, 999 F. Supp 1473, 1480 (Ct. Int'l Trade 1998) ("Basket' or residual provisions of HTSUS Headings . . . are intended as a broad catch-all to encompass the classification of articles for which there is no more specifically applicable subheading").

"Heading 6307, HTSUS, is a basket provision, and classification therein is only appropriate

if the merchandise is not included elsewhere more specifically in the Nomenclature."[22] HRL H243798 at 6; see also, 6307 ENs ("[t]his heading covers made up articles of any textile material which are **not included** more specifically in other headings of Section XI or elsewhere in the Nomenclature") (emphasis in original). Since HTSUS heading 6307 is a basket provision, it cannot prevail over a tariff provision for parts. *See American Schack Co.*, 1 CIT at 6 ("a basket provision . . . cannot prevail over a provision for parts") (citing *Beacon Cycle & Supply Co., Inc. v. United States*, 458 F. Supp. 813 (Ct. Int'l Trade 1978)); *see also Chevron Chem. Co. v. United States*, 59 F. Supp. 2d 1361, 1368 (Ct. Int'l Trade 1999) ("Classification of imported merchandise in a basket provision, however, is appropriate only when there is no tariff category that covers the merchandise more specifically"). Accordingly, pursuant to GRI 1 and the terms of the corresponding HTSUS headings and relevant Section and Chapter Notes, since the Brake Segments are solely or principally used as parts in aircraft braking systems, they are more specifically included in HTSUS heading 8803 and excluded from the basket provision of HTSUS heading 6307.

The prohibition against classification in a basket provision when there is a more specific tariff heading is also consistent with GRI 3(a), generally known as the "rule of relative specificity," which provides, in relevant part, that "when, by application of rule 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings … [t]he heading which provides the most specific description shall be preferred to headings providing a more general description." *Marcel Watch Co. v. United States*, 11 F.3d 1054, 1058 (Fed. Cir. 1993) (noting the "rule of relative specificity" provides that "an imported article which is described in two or more provisions

---

[22]     The Explanatory Notes for Heading 6307 state, in relevant part, that "[t]his heading covers made up articles of any textile material which are **not included** more specifically in other headings of Section XI or elsewhere in the Nomenclature." (emphasis in original).

of the schedules is classifiable in the provision which most specifically describes it"). This tariff classification rule has been consistently reiterated by the courts. *See, e.g., IBM v. United States*, 152 F.3d 1332, 1338 (Fed. Cir. 1998) ("The superior heading for '[p]arts of automatic data-processing machines' is '[p]arts of the foregoing'—essentially meaning 'parts of office machines.' The parts provision thus is more specific than the coordinate office machines provision because under [the rule of relative specificity], 'parts' provisions prevail over 'basket' provisions."); *see also Ideal Toy Corp. v. United States*, 433 F.2d 801, 804 (CCPA 1970) (observing that under the TSUS if "general basket provisions [were] deemed 'specific provisions' within the meaning of general headnote 10(ij), no imported merchandise could ever be classified as a 'part.' For in such a circumstance, a basket provision would prevail over a 'part' provision— which would mean that even though an importation is a 'part,' it would necessarily be classifiable under a basket provision").

Therefore, even if the tariff classification of the subject Brake Segments in HTSUS heading 8803 was not considered to be definitive pursuant to GRI 1, under a GRI 3(a) relative specificity analysis, a specific parts provision such as HTSUS heading 8803 takes precedence over application of a basket provision such as HTSUS heading 6307. *Allstar Mktg. Grp.*, 211 F.Supp.3d at 1337 n.26. We note that Customs appears to agree, as it has consistently held that HTSUS heading 8708 (covering parts and accessories of motor vehicles) is more specific than basket provisions found elsewhere in the HTSUS. *See, e.g.,* HRL 965189 (April 22, 2002) (determining that, pursuant to GRI 3(a), certain universal fit automotive seat covers were more appropriately classified within HTSUS heading 8708 as parts of automobiles, rather than under the basket provision of HTSUS heading 6304 providing for other furnishing articles); *see also*, HRL 961386 (Oct. 19, 1998) (holding, *inter alia*, that HTSUS heading 8708 (parts and accessories of motor vehicles) was more

specific than heading 6307 under a GRI 3(a) analysis). HTSUS heading 8803 covers the Brake Segments based on their specific and exclusive use as part of an aircraft. Based on the language of HTSUS headings 6307 and 8803, the Brake Segments are properly classified under HTSUS heading 8803 as it provides the most specific description of these articles according to the rule of relative specificity, GRI 3(a).[23]

## C.    The Brake Segments Are Parts of an Undercarriage Used in Airplanes Classified Under HTSUS Subheading 8803.20.00

Having established that the Brake Segments are properly classified as aircraft parts under HTSUS heading 8803, we next turn to the proper subheading for these goods. HTSUS subheading 8803.20 provides for "[u]ndercarriages and parts thereof." The term "undercarriage" is not defined in the HTSUS, but is commonly understood to be the landing gear of an airplane.

The Merriam-Webster Dictionary defines "undercarriage" as "a supporting framework or underside (as of an automobile)" and "the landing gear of an airplane." https://www.merriam-webster.com/dictionary/undercarriage (last visited Mar. 5, 2024). Similarly, Britannica Dictionary defines undercarriage as "the supporting structures of a car, truck, etc." and "landing gear". https://www.britannica.com/dictionary/undercarriage (last visited Mar. 5, 2024). Collins Dictionary defines "undercarriage" as "the part, including the wheels, which supports the airplane when it is on the ground and when it is landing or taking off." https://www.collinsdictionary.com/us/dictionary/english/undercarriage (last visited Mar. 15,

---

[23]    Even if an article is considered to be unfinished or incomplete in its imported condition, that does not prevent the article from being classified as a part if the relevant "part" requirements are met. *See, e.g., Ludvig Svensson*, 62 F.Supp.2d at 1179 (Ct. Int'l Trade 1999). This includes classification of a part of a subpart of a larger article, which may be classified under a provision for a part of the larger article. The parts of parts exclusion (*e.g.*, *Mitsubishi* footnote 3) is intended to address conflict between competing parts provisions. This potential exception to the broader rule that parts of parts are parts of the whole does not apply when there is competition between a parts provision and a basket provision. In such cases, the parts provision prevails because it is more specific.

2024). Finally, Oxford English Dictionary defines "undercarriage" as "[t]he landing gear of an aircraft." https://www.oed.com/search/dictionary/?scope=Entries&q=undercarriage (last visited Mar. 15, 2024).

The undercarriage or landing gear includes the support, wheels, tires, and braking components. Ex. A, Brown Dep. at pgs. 30:16-32:4. The 8803 ENs further provide, in relevant part, the following with respect to the undercarriages and parts thereof that are classified under this tariff provision:

> *The parts of this heading include: ... (II) Parts of aircraft including gliders and kites, e.g.: ... (5) Undercarriages (including brakes and brake assemblies) and their retracting equipment; wheels (with or without tyres); landing skis.*

The Brake Segments are parts of aircraft brake systems, which in turn are part of the undercarriage. Customs acknowledges that brake discs are "parts of aircraft braking systems." HRL H243798. Further, Customs acknowledges "that aircraft braking systems are parts of aircraft." *Id.* Finally, Customs acknowledges "that the subject brake segments might be recognized as parts of aircraft braking systems." *Id.* However, Customs gets it wrong in its claims that "aircraft braking systems are not specifically covered by name in Chapter 88." *Id.* As discussed above, aircraft braking systems and parts thereof are specifically provided for in HTSUS heading 8803 as parts of aircraft. Within HTSUS heading 8803, the Brake Segments are specifically provided for as parts of undercarriages.[24] Therefore, the subject Brake Segments are properly classified under HTSUS subheading 8803.20.00.

**CONCLUSION**

For the reasons set forth above, Honeywell respectfully asserts that it has met its burden of

---

[24]    Customs has recognized that other parts of undercarriages and aircraft braking systems are properly classified in HTSUS subheading 8803.20.0030. *See, e.g.,* New York Ruling Letter ("NYRL") N258524 (Oct. 24, 2014) (finding that certain imported wheel halves (inner and outer) and brake piston housing forgings were appropriately classified as parts of undercarriages under HTSUS subheading 8803.20.0030).

showing that the government's classification of the subject Brake Segments in HTSUS subheading 6307.90.98 is incorrect. Therefore, Honeywell respectfully requests that the Court issue summary judgment in its favor and order Customs to reliquidate the subject entries with classification of the Brake Segments in HTSUS subheading 8803.20.00 and to refund excess duties paid with interest as provided by law.

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Honeywell International, Inc.
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

By:    /s/ Wm. Randolph Rucker

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. MARK A. BARNETT, *CHIEF JUDGE***

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 17-00256 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S CERTIFICATION OF COMPLIANCE

I, Wm. Randolph Rucker, counsel for Plaintiff, Honeywell International, Inc., certify that the foregoing brief complies with the type-volume limitation set forth in the *Standard Chambers Procedures* and USCIT Rules 56 and 81. Specifically, this brief contains 13,019 words (excluding the parts of the brief exempted by *Standard Chambers Procedures* 2(B)) as determined by the word count feature of the word processing program used to create this brief. I further certify that the foregoing brief complies with the typeface requirements set forth in USCIT Rule 81. Specifically, this brief has been prepared using a proportionately spaced typeface using Microsoft Word 2007, in 12-point Times New Roman font.

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Honeywell International, Inc.
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

By:   /s/ Wm. Randolph Rucker
Dated: March 5, 2024          Wm. Randolph Rucker

## CERTIFICATE OF SERVICE

Wm. Randolph Rucker certifies that he is an attorney with the law firm of Faegre Drinker Biddle & Reath LLP, with offices located at 320 S. Canal Street, Suite 3300, Chicago, IL 60606, and that on March 5, 2024 on behalf of the Plaintiff herein, he served the attached Motion for Summary Judgment on:

Edward F. Kenney
U.S. Department of Justice
Commercial Litigation Branch – Civil Division
26 Federal Plaza
Room 346
New York, NY 10278

the attorney for the Defendant herein, by electronic service in the CM/ECF System of the Court of International Trade.


/s/ Wm. Randolph Rucker

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. MARK A. BARNETT, *CHIEF JUDGE***

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 17-00256 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**TABLE OF CONTENTS FOR EXHIBITS**

| Exhibit | Full Citation | Abbreviated Citation | Confidential |
|---|---|---|---|
| A | Deposition of Mark Brown | Brown Dep. | YES |
| B | Pl.'s Answers and Supplemental Answers to Def.'s First Interrs. | Pl.'s Answers to Def.'s First Interrs. | YES |
| C | Engineering Material Specifications | Engineering Material Specifications | YES |
| D | Brake Segment Patents | Brake Segment Patents | YES |
| E | Engineer Drawings for each of the twenty-three (23) Brake Segments at issue | Engineer Drawings | YES |
| F | CBP001239, April 5, 2013 email from Mitchel S. Bayer to Jennelle M. Cray | N/A | NO |
| G | CBP001286-1289, Aug. 9, 2023 Mem. from Chief, Metals & Machinery Branch National Commodity Specialist Division to Director, Commercial & Trade Facilitation Division Regulations & Rulings Headquarters, Customs & Border Protection | N/A | NO |