**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. MARK A. BARNETT, *CHIEF JUDGE***

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 17-00256 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**GOVERNMENT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND**
**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

By:    /s/ Wm. Randolph Rucker
       Wm. Randolph Rucker

Dated: August 30, 2024

**FAEGRE DRINKER BIDDLE & REATH LLP**

Attorneys for Plaintiff
Honeywell International, Inc.
320 S. Canal Street
Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

SUMMARY OF THE ARGUMENT .......................................................................... 1

ARGUMENT ............................................................................................................... 2

    I.      Defendant Is Not Entitled to Summary Judgment in this Case ................................ 2

    II.     The Subject Brake Segments Are Properly Classified as Aircraft Parts
          Under HTSUS Heading 8803 ........................................................................... 3

          A.     Goods Are Classified in Their Condition at the Time of
                Importation ........................................................................................... 3

          B.     The Classification of Imported Articles as "Materials" or "Parts"
                Under the HTSUS ............................................................................... 4

          C.     The Brake Segments Are Properly Classified as a "Part" and Not
                as a "Material" ..................................................................................... 10

          D.     The Brake Segments Are "Parts" of Brake Discs that Are "Parts"
                of Aircraft ............................................................................................ 13

          E.     TSUS Precedent Provides Instruction on the Classification of
                "Parts" Under the HTSUS ................................................................... 16

    III.    Heading 6307 Does Not Cover the Brake Segments Because They Are
          Properly Classified as "Parts" of Aircraft ............................................... 16

    IV.    Classification of the Brake Segments Is Resolved by Application of GRI 1 ......... 20

CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*ABB, Inc. v. United States,*
   346 F. Supp. 2d 1357 (Ct. Int'l Trade 2004) ........................................................... 13

*Allstar Mktg. Grp., LLC v. United States,*
   211 F. Supp. 3d 1319 (Ct. Int'l Trade 2017) ..................................................... *passim*

*Amersham Corp. v. United States,*
   564 F. Supp. 813 (Ct. Int'l Trade 1983) ................................................................... 4

*Baxter Healthcare Corp. of P.R. v. United States,*
   182 F.3d 1333 (Fed. Cir. 1999) ........................................................................... 5, 12

*Benteler Indus., Inc. v. United States,*
   840 F. Supp. 912 (Ct. Int'l Trade 1993) ................................................................... 4

*Chemtall, Inc. v. United States,*
   878 F.3d 1012 (Fed. Cir. 2017) ............................................................................... 15

*Deacero S.A. de C.V. v. United States,*
   942 F.Supp.2d 1321 (Ct. Int'l Trade 2013) ............................................................ 15

*E.M. Chem. v. United States,*
   728 F. Supp. 723 (Ct. Int'l Trade 1989) ........................................................... *passim*

*GRK Canada, Ltd. v. United States,*
   761 F.3d 1354 (Fed. Cir. 2014) ............................................................................... 19

*Harding Co. v. United States,*
   23 C.C.P.A. 250 (1936) .......................................................................................... 12

*Heraeus-Amersil, Inc. v. United States,*
   640 F. Supp. 1331 (Ct. Int'l Trade 1986) ................................................... 7, 8, 9, 10

*JVC Co. of Am., Div. of US JVC Corp. v. United States,*
   234 F.3d 1348 (Fed. Cir. 2000) ............................................................................... 16

*Kalle USA v. United States,*
   273 F.Supp.3d 1319 (Fed. Cir. 2017) ...................................................................... 20

*Lee Enter., Inc. v. United States,*
   84 Cust. Ct. 208 (1980) ........................................................................................... 10

*Ludvig Svensson (U.S.), Inc. v. United States,*
   62 F.Supp.2d 1171 (Ct. Int'l Trade 1999) ................................................... 4, 8, 9, 14

*Marine Indus. Constr., LLC v. United States,*
  151 Fed.Cl. 349 (Ct. Fed. Claims 2020) ............................................................... 6

*Millenium Lumber Distrib. Ltd. v. United States,*
  558 F.3d 1326 (Fed. Cir. 2009) ........................................................................... 5

*Mita Copystar Am. v. United States,*
  21 F.3d 1079 (Fed. Cir. 1994) ............................................................................. 3

*Mitsubishi Elec. Am., Inc. v. United States,*
  882 F. Supp. 171 (Ct. Int'l Trade 1995) ............................................................ 14

*Phone-Mate, Inc. v. United States,*
  690 F. Supp. 1048 (Ct. Int'l Trade 1988) ............................................................ 2

*Russell Stadelman & Co. v. United States,*
  83 F.Supp.2d 1356 (Ct. Int'l Trade 1999) ......................................................... 18

*Saab Cars USA, Inc. v. United States,*
  434 F.3d 1359 (Fed. Cir. 2006) ........................................................................... 2

*Schlumberger Tech. Corp. v. United States,*
  845 F.3d 1158 (Fed. Cir. 2017) ......................................................................... 20

*United States v. Citroen,*
  223 U.S. 407 (1912) ............................................................................................. 3

*United States v. Pompeo,*
  43 C.C.P.A. 9 (1955) .................................................................................... 12, 16

*United States v Sterling Footwear, Inc.,*
  279 F. Supp. 3d 1113 (Ct. Int'l Trade 2017). ...................................................... 6

*United States v. Willoughby Camera Stores, Inc.,*
  21 C.C.P.A. 322 (1933) ................................................................................ 12, 16

*Worthington v. Robbins,*
  139 U.S. 337 (1891) ............................................................................................. 3

**Statutes, Rules & Regulations**

Ct. Int'l Trade R. 56 .............................................................................................. 1

Ct. Int'l Trade R. 56(a) .......................................................................................... 3

Ct. Int'l Trade R. 56(c)(1)(a) ................................................................................ 6

**Other Authorities**

H.R. Conf. Rep. No. 100-576 (1988), reprinted in 1988 U.S.C.C.A.N. 1547 .............................. 16

Harmonized Tariff Schedule of the United States ................................................................. *passim*

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. MARK A. BARNETT, *CHIEF JUDGE***

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 17-00256 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**GOVERNMENT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND**
**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Honeywell International, Inc. ("Plaintiff") submits this response to the Government's ("Defendant") Cross-Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment [ECF No. 54] (hereinafter "Def.'s Cross-Mot."). U.S. Ct. Int'l Trade R. 56. Summary judgment is appropriate in this case because there are no genuine issues of material fact in dispute. Therefore, the only issue before this Court is the proper legal interpretation of the competing tariff provisions. For the reasons discussed below, this Court should deny Defendant's Cross-Motion for Summary Judgment and enter summary judgment in favor of Plaintiff.

**SUMMARY OF THE ARGUMENT**

Contrary to Defendant's assertion, the imported products at issue ("Brake Segments") are not properly classified under heading 6307 of the *Harmonized Tariff Schedule of the United States*

1

("HTSUS"). Per General Rule of Interpretation ("GRI") 1, the Brake Segments should be classified as aircraft parts under HTSUS heading 8803.[1]

## ARGUMENT

### I.    Defendant Is Not Entitled to Summary Judgment in this Case

Along with its response to Plaintiff's Motion for Summary Judgment [ECF No. 42] (hereinafter "Pl.'s Mot."), Defendant has filed a Cross-Motion for Summary Judgment in this case. Gov.'s Cross-Mot. "In ruling on motions for summary judgment, if there are no genuine issues of material fact, the court must decide whether either party has demonstrated its entitlement to judgment as a matter of law." *Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Trade 1988), *aff'd* 867 F.2d 1404 (Fed. Cir. 1989). The parties agree there is no genuine dispute as to any material fact in this case. Pl.'s Mot. at 16; Def.'s Cross-Mot. at 9; Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue (hereinafter "Def.'s Resp. to Pl.'s SMF") at 1. However, Defendant has not demonstrated its entitlement to judgment as a matter of law.

Defendant (as the movant) bears the burden of proving that it is entitled to judgment as a matter of law; and, as the non-moving party, Defendant has the burden to show why summary judgment should not be granted to Plaintiff. *See, e.g.*, S*aab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1368-69 (Fed. Cir. 2006) (discussing the burdens of non-moving and moving parties for summary judgment). Defendant's arguments are unpersuasive and do not demonstrate entitlement to judgment as a matter of law; and therefore, Defendant's Motion must be denied.

---

[1]    Plaintiff refers to the subject products as "Brake Segments" because they are parts (segments) of brake discs. Throughout its Motion, Defendant erroneously refers to the subject products as "fabric segments." *See generally* Gov.'s Cross-Mot. We note that Customs called the subject products "brake segments" in its published ruling (Headquarters Ruling Letter ("HRL") H243798) (Def.'s Ex. 10), without any caveat or objection to that description. Accordingly, Defendant's semantical objections and efforts to "rename" the products as "fabric segments" are unavailing.

Further, Defendant has failed to show why summary judgment should not be granted in favor of Plaintiff. Accordingly, for the reasons set forth herein and in Plaintiff's Motion, Plaintiff respectfully asserts that it has shown it is entitled to judgment as a matter of law. U.S. Ct. Int'l Trade R. 56(a) (this Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

## II.    The Subject Brake Segments Are Properly Classified as Aircraft Parts Under HTSUS Heading 8803

### A.    Goods Are Classified in Their Condition at the Time of Importation

As a starting point, it is "well-established" that goods are classified in their condition at the time of importation. *United States v. Citroen*, 223 U.S. 407, 414–15 (1912) ("The rule is well established that in order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported.") (internal quotation marks and citations omitted); *see also Worthington v. Robbins*, 139 U.S. 337, 341 (1891) ("[i]n order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported"). "If the rule were otherwise, not only could the same product be subject to different duty rates depending on its intended end use, but Customs would be flooded with affidavits or other evidence of differing intended uses." *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994).

Throughout its Cross-Motion, Defendant places a heavy (and near-exclusive) emphasis on post-importation processing in an attempt to support its argument that Brake Segments are fabric "materials." However, the post-importation processing is immaterial to the analysis here, given that, as discussed below, the Brake Segments are identifiable parts of brake discs for aircraft at the

time of importation. *See, e.g., E.M. Chem. v. United States*, 728 F. Supp. 723, 726 (Ct. Int'l Trade 1989), *aff'd* 920 F.2d 910 (Fed. Cir. 1990).

B.    **The Classification of Imported Articles as "Materials" or "Parts" Under the HTSUS**

Defendant argues the Brake Segments are a "material" that should be classified as a "textile fabric article" in HTSUS heading 6307. Gov.'s Cross-Mot. at 10, 12. In support of its position, Defendant claims judicial precedent supports its conclusion that the Brake Segments are properly considered a "material" rather than a "part" for tariff classification purposes. *See* Def.'s Cross-Mot. at 27. However, Defendant cites no precedent that supports this proposition. Further, Defendant fails to distinguish the precedent cited in Plaintiff's Motion that expressly identifies the distinction between "materials" and "parts" for tariff classification purposes and, in turn, supports classification of the Brake Segments as "parts" in heading 8803. *See* Pl.'s Mot. at 28-35 (citing *Ludvig Svensson (U.S.), Inc. v. United States*, 62 F.Supp.2d 1171 (Ct. Int'l Trade 1999) and *Benteler Indus., Inc. v. United States*, 840 F. Supp. 912 (Ct. Int'l Trade 1993)).

Defendant also characterizes the Brake Segments as "raw materials," claiming that the contract between Plaintiff and Bethlehem Advanced Materials, Inc. ("BAM") identifies the Brake Segments as a "raw material," all the while ignoring the fact that the same document (and other documents produced by BAM) identify the Brake Segments as "parts." Def.'s Cross-Mot. at 4, 17-18; Pl's Resp. to Def.'s SMF at ¶ 8. Regardless, the manner in which a product is referenced in extraneous commercial documents is not determinative of tariff classification. *See, e.g., Amersham Corp. v. United States*, 564 F. Supp. 813, 820 (Ct. Int'l Trade 1983). Further, the term "raw material" has no relevance to the analysis in this case, as courts have been clear that the proper comparison is whether a product is classified as a "material" or as a "part," not whether the article is a "raw material."

In addition to the cases cited in Plaintiff's Motion, *Millenium Lumber Distribution Ltd. v. United States* is instructive as to the distinction between a "material" and a "part" for tariff classification purposes. 558 F.3d 1326 (Fed. Cir. 2009). In *Millenium Lumber*, the court discussed the difference between a "basic material" and "recognizable unassembled pieces" (*i.e.*, parts) and stated that "[t]o qualify as 'recognizable unassembled pieces' of particular articles, the subject merchandise must be 'dedicated solely or principally for use in those articles.'" *Id.* at 1329 (citing *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1339 (Fed. Cir. 1999)). Further, "unassembled pieces must be more than just basic material generally suitable for use in the finished article." *Id.*

The Federal Circuit in *Millennium Lumber* noted that this Court had found that the lumber at issue "was not identifiable or fixed with certainty as unassembled truss pieces" because "the lumber maintained its identity and usefulness as general sawn lumber for potentially numerous purposes" and "was not identifiable as particular pieces of any specific finished truss." *Id*. at 1329. As also noted by the Federal Circuit, this Court found that Millenium Lumber had acknowledged the lumber was "more raw material for trusses or other purposes generally than they are identifiable parts of a specific finished truss." *Id.* at 1330. Since the lumber was a basic material that could be used for trusses and other general purposes, rather than "identifiable parts" of specific trusses, it could not be classified in the more specific tariff provision as pieces (parts) of trusses.[2] *Id.* at 1330-31.

---

[2]     We note that even if an article is imported in material form that could be made into multiple parts, it may still be classifiable as a "part," but "the item must identify and fix with certainty the individual parts that are to be made from it." *Millenium Lumber*, 558 F.3d at 1329 (citing *Baxter Healthcare*, 182 F.3d at 1339).

The facts in this case are clearly distinguishable from *Millenium Lumber*, given that the Brake Segments are identifiable pieces of specific brake discs. Pl.'s Ex. A, Brown Dep. at 29:23-30:7; Pl.'s Ex. B, Pl.'s Answer to Def.'s Interr. No. 3.[3] Unlike the "general purpose" lumber at issue in *Millenium Lumber*, the identity of the Brake Segments is fixed with certainty at the time of importation, as they have only one use—assembly into brake discs. Pl.'s Ex. A, Brown Dep. at 29:23-30:7 and 34:10-19 ("So each segment has . . . an inner radius, outer radius that's a specific dimension. Those specific dimensions are related to the final brake disc configuration and so -- and each brake disc is different sized whether that's outer diameter, inner diameter, thickness, et cetera for a specific aircraft brake, and basically every aircraft brake that we manufacture is specific to a one airplane."); *id.* at 88:5-11 ("So, no, I can't just take a segment and put it on an aircraft brake. However, that is the specific designed part that we used in order to get the end product that we were looking for, and there's really nothing else that we would use that for besides creating carbon brake discs."); Pl.'s Ex. E (Engineering Drawings). Further, the Brake Segments do not require any post-importation processing to be used as a part for making brake discs for specific aircraft (*i.e.*, they are assembled into brake discs in their imported condition). Pl.'s Ex. A, Brown Dep. at 14-17 (noting that "[r]adial and chordal brake segments are parts of the brake discs

---

[3]    Rule 56 allows citation to interrogatory answers in support of factual assertions in summary judgment motions. U.S. Ct. Int'l Trade R. 56(c)(1)(a). Yet, Defendant objects to Plaintiff's citation to its interrogatory answers in support of its Statement of Undisputed Material Facts, claiming inadmissibility because the answers "are self-serving hearsay, for which no exception to the hearsay rule applies." Def.'s Cross-Mot. at 3, 10, 13-15, 18-22, 24, 26-28, 30, 32 (citing *Marine Indus. Constr., LLC v. United States*, 151 Fed.Cl. 349, 365 (Ct. Fed. Cl. 2020). However, Defendant also cites to Plaintiff's interrogatory answers in support of its own Statement of Undisputed Material Facts. Def.'s SMF at 10, 27-33, 36. Since Defendant cites to Plaintiff's interrogatory answers as support for its own statement of facts, we assert that Defendant has adopted these interrogatory answers as true and any objection against the evidentiary value of these documents should be deemed to have been waived. The Court may nevertheless "consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *United States v Sterling Footwear, Inc.*, 279 F. Supp. 3d 1113, 1124–25 (Ct. Int'l Trade 2017) (citation omitted).

that [Plaintiff] manufacture[s] for aircraft wheel and brake assemblies."). The diagram below (taken from the related patents for the Brake Segments, *see* Pl.'s Ex. D at 4) depicts the distinction between the Brake Segments and the nonwoven polyacrylonitrile (PAN) fiber fabric "material" the brake segment "parts" are cut from:



The Brake Segments do not maintain the "general" usefulness of uncut nonwoven polyacrylonitrile (PAN) fiber fabric that could be made into potentially numerous shapes. Once cut from the fabric "material" to a specific size and shape, the Brake Segments do not require any further processing to be recognized as "parts" of brake discs. At this point, the Brake Segments have been advanced beyond the stage "materials" as they are now useful for only one purpose, being assembled into brake discs.

We note that Defendant also describes the Brake Segments as "semi-manufactures." *See* Def.'s Cross-Mot. at 17-18. But this reference appears to be merely another attempt at characterizing the Brake Segments as a "material" rather than a "part." *Id*. This Court addressed the distinction between "semi-manufactured" articles and "parts" in *Heraeus-Amersil, Inc. v. United States*, 640 F. Supp. 1331 (Ct. Int'l Trade 1986). In *Heraeus*, the Court considered whether

certain reels of contact tape were properly classified as parts of relays or as "semi-manufactured rolled precious metal." *Id.* at 1331. The Court stated that classification of the contact tape as "materials" or "parts" depended upon "whether they were sufficiently advanced toward and dedicated to use as contacts for relays at the time of importation, and were capable of no other substantial commercial use." *Id.* at 1333.[4]

This Court found "the contact tape was manufactured to particular specifications and that it was designed for, and used only as, contacts in certain telephone relays." *Id.* Therefore, the Court concluded that the contact tape was properly classified as parts of relays. *Id.* at 1334 (rejecting as "irrelevant" the government's arguments that the contact tape is not identifiable as parts of relays until the tape undergoes significant post-importation processing).

Another case addressing the proper classification of articles as "materials" or "parts" is *E.M. Chemicals*.[5] 728 F. Supp. at 724-730. In *E.M. Chemicals*, this Court considered whether certain imported liquid crystals should be classified as chemical mixtures or as parts of liquid crystal displays (LCDs). *Id.* After importation, the liquid crystals were used to produce finished LCDs that were "comprised of a specific amount of liquid crystal sandwiched between two plates" and "electronic connections necessary to activate the liquid crystals." *Id.* at 725. The Court found the liquid crystals to be properly classified as parts because they were a discrete, identifiable product and their only commercial use was for making LCDs. *Id.* at 729-730 (rejecting the government's arguments that the use of the liquid crystals was not fixed with certainty because they were subjected to further processing after importation).

---

[4]     *Heraeus* was favorably cited by this Court in *Ludvig Svensson* for "further instruction" on the classification of articles as "materials" or "parts." 62 F.Supp.2d at 1180.

[5]     *E.M. Chemicals* was also favorably cited by this Court in *Ludvig Svensson*, 62 F.Supp.2d at 1179-80.

In this case, Defendant relies almost exclusively on post-importation processing in an attempt to support its argument that the Brake Segments are fabric "materials." Def.'s Cross-Mot. at 4-8; Def.'s Statement of Undisputed Material Facts (hereinafter "Def.'s SMF") at ¶¶ 6-36. However, there is no need to consider the post-importation assembly process for making brake discs from the imported Brake Segments in this tariff classification analysis, as it is a well-established rule that goods are classified in their condition as imported. *See* Section II(a) above. Further, such arguments have been consistently rejected by this Court when the imported goods are identifiable "parts." *See, e.g.*, *E.M. Chem.*, 728 F. Supp. at 726; *Ludvig Svennson*, 62 F. Supp.2d at 1180; *Heraeus*, 640 F. Supp. at 1333.

As it has done here, Defendant took a similar position in the *Ludvig Svennson, E.M. Chem.,* and *Heraeus* cases, where it highlighted "significant" post-importation processing to support its arguments that the subject goods should be classified as "materials" and not as "parts." *Id.* However, in all three of these cases, this Court ultimately classified the imported goods at issue as "parts" because they were (1) an integral part of another article; (2) sufficiently advanced in manufacture to be identifiable as parts; and (3) solely of commercial use as a part. *See E.M. Chem.*, 728 F. Supp. at 726; *Ludvig Svennson*, 62 F.Supp.2d at 1180; *Heraeus*, 640 F. Supp. at 1333 ("Whether the imported contact tapes are materials or unfinished parts depends on whether they were sufficiently advanced toward and dedicated to use as contacts for relays at the time of importation, and were capable of no other substantial commercial use."). Ultimately, the Court found the post-importation processing to be irrelevant in the "parts" versus "materials" analysis where these requirements were met. *Id.*; *see also Ludvig Svennson*, 62 F. Supp. 2d at 1180 ("Cutting the screens to size, sewing two screens together or adding tape and hooks are incidental processes which do not affect the classification of the screens, just as the undetermined quantity of liquid

crystals to be used in the LCDs and the addition of a twist agent was immaterial to the classification

of that merchandise in *E.M. Chemicals*. Therefore, so long as the article is an identifiable 'part' at

the time of importation, post-import processing has no bearing on the classification analysis.").[6]

C. **The Brake Segments Are Properly Classified as a "Part" and Not as a "Material"**

Like the products in the cases cited above, the Brake Segments are also properly classified

as "parts" and not as "materials." First, it cannot be disputed that brake discs are made from

multiple Brake Segments layered and needled together. Pl.'s Ex. B, Pl.'s Answer to Def.'s First

Interr. Nos. 5-6; Pl.'s Ex. A, Brown Dep. at 34:2-9. In fact, there are no other additional parts used

to produce the brake discs. Pl.'s Ex. B, Pl.'s Answer to Def.'s First Interr. No. 6; Def.'s Ex. 8. at

BAM000283 and BAM000285; Def's Ex. 13 at BAM000045. Thus, it is fair to conclude that the

Brake Segments are the integral parts of brake discs, and the brake discs could not function without

them. *E.M. Chem.*, 728 F. Supp. 729 (finding liquid crystals were properly classified as parts

because they "were dedicated exclusively for use in LCD's, which could not function without the

presence of liquid crystals"); *see also Lee Enter., Inc. v. United States*, 84 Cust. Ct. 208, 215 (1980)

(finding photopolymer plates were properly classified as parts because the printing machinery on

which they were used could not "function for the purposes for which they were designed and

intended without the use of printing plates"). While Defendant claims that "[n]o piece or part of a

finished carbon-carbon aircraft brake disc can be discerned from the imported segments

themselves," this unsupported assertion is betrayed by the samples themselves. Def.'s Cross-Mot.

at 20. Indeed, the samples of the imported Brake Segments are a "potent witness" in this case.

*Allstar Mktg. Grp., LLC v. United States*, 211 F. Supp. 3d 1319, 1334 (Ct. Int'l Trade 2017).

---

[6]     In *Heraeus,* the Court classified the contact tape as parts of telephone relays even though the tape
required cutting and welding after importation. 640 F. Supp. at 1334.

Next, the Brake Segments are sufficiently advanced in manufacture to be identifiable as "parts." As Defendant admits, the Brake Segments are "cut to specific size and shape" and the "correct number of radial, chordal and web segments required for processing" is critical to manufacture the brake discs. Def.'s Cross-Mot. at 2, 5. Defendant's attempt to undercut the fixed identify of the Brake Segments by claiming that the number of Brake Segments in a brake disc may vary by weight is unavailing. *Id.* at 27. First, we note that this would be the exception rather than the rule, as each brake disc requires a specific number of Brake Segments of a particular type (*e.g.*, radial, chordal, web) and a specific size and/or shape. Pl's Ex. B, Pl.'s Answer to Def.'s First Interr. No. 6; Pl.'s Ex. A, Brown Dep. at 34:2-9 ("For example, one disc might have 100 radial segments and 110 chordal segments."). Further, the fact that the quantity of Brake Segments used in a particular brake disc could vary does not mean the character of the Brake Segments are not fixed with certainty at the time of importation. *See E.M. Chem.*, 728 F. Supp. at 729 (stating that "because the quantity of nematic liquid crystals used to make LCDs varies according to the size of the display does not mean the character of the liquid crystal is not fixed with certainty at the time of importation.").

Finally, the Brake Segments are dedicated for use in the manufacture of brake discs and have no other commercial use.[7] *See, e.g.*, Pl.'s Ex. A, Brown Dep. 88:5-11. The individual Brake

---

[7]       Notably, in its Cross-Motion, Defendant references the use of brake segments for automotive applications, although it is not disputed that the subject Brake Segments are only used on aircraft. Def.'s Cross-Mot. at 7, 9; Def.'s Resp. to Pl.'s SMF at ¶¶ 19-20, 24. If used solely for automotive applications, brakes segments would be classified in HTSUS heading 8708, which provides for "*Parts and Accessories of the motor vehicles of headings 8701 to 8705*." In support of this classification, Plaintiff notes that the heading 8708 ENs specifically identify brakes and parts thereof, including brake segments, as being included in this heading, as follows: "*Parts and accessories of this heading include: ... (H) Brakes (shoe, segment, disc, etc.) and parts thereof (plates, drums, cylinders, mounted linings, oil reservoirs for hydraulic brakes, etc.); servo-brakes and parts thereof.*" Heading 8803 (parts of aircraft) is similar in scope to heading 8708 and should be similarly interpreted to include brakes and parts thereof, including brake segments.

Segments are identifiable "parts" with a specific use that is fixed at the time of import. *Id.* First, the Brake Segments have been cut to a specific size and shape for exclusive use in producing a brake disc for a specific aircraft.[8] Pl's Ex. B, Pl.'s Answer to Def.'s First Interr. No. 6; Pl.'s Ex. A, Brown Dep. at 29:23-30:7, 34:10-19, and 88:5-11. Next, the Brake Segments are made from a specific material with specific properties for use in the manufacture of brake discs. Pl.'s Ex. B, Pl.'s Answer to Def.'s First Interr. No. 6; Pl.'s Ex. A, Brown Dep. at 29:23-30:7; 88:5-11. Based on these properties, the Brake Segments do not have any other use other than for making brake discs and cannot be made into other parts. *Id.* Additionally, the Brake Segments do not require any further post-importation processing to be used as a part in the assembly of a brake disc. Pl's Ex. B, Pl.'s Answer to Def.'s First Interr. No. 6; Pl.'s Ex. A, Brown Dep. at 14-17. The Brake Segments are in a finished condition and ready to use for production of a brake disc. *Id.* Therefore, the Brake Segments are a properly classified as "part" of the brake discs and not as a fabric "material." *See* Pl.'s Mot. at 28-35 (further discussion of the proper classification of "parts" under the HTSUS).

Defendant also tries, unsuccessfully, to distinguish the "parts" classification cases cited in Plaintiff's Motion by claiming that "the goods at issue in *RKW Klerks, Bauerhin Tech. Ltd., Pompeo* and *Willoughby*, were all finished, in the sense they were ready for direct use and fixed in form and composition, even when joined to the good of which they were claimed to be a part" and the Brake Segments are not. Def.'s Cross-Mot. at 16-17 (citations omitted). Therefore, Defendant claims, "these cases provide limited precedential value when considering classification of the unfinished semi-manufactured goods involved here." *Id.* However, Defendant is focusing on the wrong characteristics in an attempt to show that the Brake Segments are not "parts." The proper

---

[8]    The facts in this case are distinguishable from the decisions in *Baxter Healthcare*, 998 F. Supp. 1133 and *Harding Co. v. United States,* 23 C.C.P.A. 250 (1936), wherein certain imported goods were found to be properly classified as "materials" rather than "parts" because they were cut to size <u>after</u> importation.

focus is on the Brake Segments' use as parts of brake discs. Contrary to Defendant's unsupported assertion, the Brake Segments are in their final form for <u>direct use</u> in manufacturing brake discs for aircraft.

### D.    The Brake Segments Are "Parts" of Brake Discs that Are "Parts" of Aircraft

The concept of a part "requires, at a basic level, that there exists a whole to which the parts pertain"—*i.e.*, a part is a "portion, division, piece, or segment of a whole." *ABB, Inc. v. United States*, 346 F. Supp. 2d 1357, 1364 (Ct. Int'l Trade 2004), *aff'd* 421 F.3d 1274 (Fed. Cir. 2005) (citation omitted). In this case, the "whole" to which the Brake Segments pertain is the brake disc. Thus, the "parts" analysis for these goods must be analyzed in the context of their use in brake discs. In turn, the "whole" to which the brakes disc pertain is the aircraft, thus directing the tariff classification of the Brake Segments to heading 8803 as parts of aircraft since there is no tariff provision that covers the brake discs (and parts thereof) more specifically. *See* Section XVII, General Explanatory Note 3.

Defendant recognizes that the Brake Segments are used in the manufacture of aircraft brake discs (*i.e.,* the brake discs are made from brake segments). *See, e.g.*, Def.'s Cross-Mot. at 4-7. Defendant also states that the segments are a "precursor" of the brake discs. *Id.* at 16. Ultimately, Defendant's description of the Brake Segments and their use is an acknowledgement that the brake discs could not exist or function without the Brake Segments; thus, an implicit admission that the segments are a "part" of the brake discs. *Id.*

However, rather than focusing on the Brake Segments' use as a part in brake discs and then the article of which the brake discs are a part (an aircraft), Defendant focuses on whether the Brake Segments are a part that can be "directly used" on an aircraft. Defendant argues that the Brake Segments are not "parts" of aircraft because in their imported condition, the Brake Segments are not ready to be used and cannot be taken to an aircraft on the flight line and put on an aircraft brake

system (*i.e.,* they cannot be "used directly" in an aircraft brake system). Def.'s Cross-Mot. at 16.[9] This is an incorrect approach, as consideration must be given first to the Brake Segments' use in brake discs, followed by the brake discs' use in aircraft. *See, e.g., Ludvig Svenson*, 62 F.Supp.2d at 1178 (finding that the screens at issue were an integral part of shade and heat retention systems and an integral part of the greenhouses on which the shade and heat retention systems were used). While the Brake Segments cannot be used on an aircraft absent further processing into a brake disc, each imported Brake Segment is specifically designed for sole and exclusive use in an aircraft brake disc that is designed for use on a specific aircraft. *See* Pl.'s Ex. A, Brown Dep. 88:5-11 ("So, no, I can't just take a segment and put it on an aircraft brake. However, that is the specific designed part that we used in order to get the end product that we were looking for, and there's really nothing else that we would use that for besides creating carbon brake discs.").

It is well-established that a heading that names a specific article covers all forms of the named article. *See Allstar Mktg.*, 211 F.Supp.3d at 1336 (citation omitted). In this case, heading 8803 covers all forms of aircraft parts, including parts of aircraft braking system components, whether ready for assembly on an aircraft at the time of importation or requiring further processing (so long as they meet the test for classification as "parts" and the related requirements for classification as parts of aircraft). *See* Pl.'s Mot. at 36-37 (citing Section XVII, General Explanatory Note 3). The subject Brake Segments are parts of the aircraft parts covered by heading 8803 (*i.e.*, parts of undercarriage components). There is no restriction that would preclude parts of aircraft parts from classification in heading 8803, so long as the subparts are themselves "parts"

---

[9]    Defendant does not address the application of the "parts of parts" rule that Customs raised in HRL H243798 (Def.'s Ex. 10) (citing *Mitsubishi Elec. Am., Inc. v. United States*, 882 F. Supp. 171 (Ct. Int'l Trade 1995)). *See* Pl.'s Mot. at 37-43 (further discussion regarding the same). Therefore, it appears that Defendant has (properly) abandoned this line of argument, thereby acknowledging that parts of aircraft parts (*i.e.*, subparts) are classifiable under HTSUS heading 8803.

under the applicable rules. Further, there is no "flight line" or "direct use" requirement for classification as a part under HTSUS heading 8803, as this tariff provision specifically covers all parts of aircraft and parts of those aircraft parts. This includes aircraft brakes and parts of aircraft brakes, without such limitation, given that parts of parts are considered parts of the whole. *See* Pl.'s Mot. at 24 n.9.

"The HTSUS governs the classification of imported merchandise and is 'considered to be statutory provisions of law for all purposes.'" *Chemtall, Inc. v. United States*, 878 F.3d 1012, 1018 (Fed. Cir. 2017) (citation omitted). Defendant is improperly reading a restriction into HTSUS heading 8803 to preclude the classification of subparts, such as the Brake Segments, in this statute. *Deacero S.A. de C.V. v. United States*, 942 F.Supp.2d 1321, 1327 (Ct. Int'l Trade 2013) ("It is a canon of statutory interpretation that the court generally cannot read restrictions into a statute that the legislature has not clearly expressed."). There is no such restriction in the HTSUS language and this interpretation is inconsistent with Customs' prior treatment of this tariff provision. *See* Pl.'s Mot. at 44 (citing New York Ruling Letter (NYRL) N258524 (Oct. 24, 2014) (available at https://rulings.cbp.gov/search?term=N258524&collection=ALL&sortBy=RELEVANCE&pageSize=30&page=1) (last visited Aug. 30,  2024), which addressed the classification of wheel halves and brake piston housing forgings in heading 8803 even though they were further processed after importation—by boring, milling, shot peening, anodizing, painting and assembly—before they could be used on an aircraft). The fact that the Brake Segments are manufactured into aircraft brake discs before being used on an aircraft does not prevent their classification as "parts" of aircraft in heading 8803.

E.      **TSUS Precedent Provides Instruction on the Classification of "Parts" Under the HTSUS**

Plaintiff has cited to several cases above and in its Motion that were decided prior to enactment of the HTSUS. Defendant claims that TSUS precedent does not apply in this case because "relevant statutory language has changed." Def.'s Cross-Mot. at 24. Further, Defendant argues that "TSUS cases do not provide the correct or any relevant analysis for the fabric segments at issue here." *Id.* at 25. These arguments are confounding, given that the tariff term "part" was used in both the TSUS and the HTSUS. Further, the primary cases for the classification of "parts" are TSUS cases and are cited by Defendant as authority in their Cross-Motion. *See id.* at 16 (citing *United States v. Willoughby Camera Stores, Inc.*, 21 C.C.P.A. 322, 324 (1933) and *United States v. Pompeo*, 43 C.C.P.A. 9, 14 (1955), both pre-HTSUS cases). Additionally, it cannot be ignored that TSUS cases have been cited as instructive for distinguishing between "materials" and "parts" under the HTSUS. *See* discussion above in Section II(B-D).

While court decisions interpreting the nomenclature under the TSUS are not to be deemed dispositive in interpreting the HTSUS, they may be instructive in interpreting the HTSUS (on a case-by-case basis). *See JVC Co. of Am., Div. of US JVC Corp. v. United States*, 234 F.3d 1348, 1355 (Fed. Cir. 2000) (citing H.R. Conf. Rep. No. 100-576, at 549-50 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1582-83). Here, too, the TSUS cases cited by Plaintiff are instructive for interpreting the proper classification of "parts" and "materials" under the HTSUS and have been recognized by the courts as instructive on this issue.

III.     **Heading 6307 Does Not Cover the Brake Segments Because They Are Properly Classified as "Parts" of Aircraft**

In its Cross-Motion, Defendant starts with a review of heading 6307. Def.'s Cross-Mot. at 12-15. This approach is not the proper tariff classification analysis in this case since heading 6307 is a "basket" provision. *Allstar Mktg.*, 211 F.Supp.3d at 1337 n.26; Def.'s Cross-Mot. at 15, 28;

Def.'s Ex. 10, HRL H243798 at 6. Further, while the Brake Segments may be "classifiable" in heading 6307 if they meet the definition of "made up" articles, they cannot be classified in heading 6307 if they are more specifically provided for in another tariff heading, as the heading 6307 Explanatory Notes ("ENs") specifically exclude goods "included more specifically" elsewhere in the tariff. *See* Def.'s Cross-Mot. at 13 n.6 (noting that the ENs may be persuasive authority when they specifically include or exclude an item from a tariff heading).

Defendant agrees that the more specific tariff provision will prevail in this case. Def.'s Cross-Mot. at 29. However, Defendant seems to argue that being "made up" by being cut to a shape other than a square or rectangle is more specific (*i.e.*, a condition more difficult to satisfy) than being an identifiable part or subpart of an aircraft. *Id.* This argument is undercut by the fact that while a cut piece of fabric may satisfy the terms of heading 6307, not all cut fabric can be used to make aircraft brake discs. By all reasonable measures, heading 8803 is the more specific tariff provision here.

Defendant also acknowledges that the Brake Segments can only be classified in heading 6307 if they are not more specifically included elsewhere. *Id.* at 13. Further, Defendant's own arguments confirm that if the Brake Segments are "parts" they are properly classified in heading 8803 and would not fall in heading 6307. *Id.* at 28-30. Therefore, the tariff classification analysis in this case must start with a review of heading 8803. *See* Pl.'s Mot. at 20-21 (citing *Allstar Mktg.*, 211 F.Supp.3d at 1337 n.26 and HRL H255855 (May 27, 2015)) (available at https://rulings.cbp.gov/search?term=H255855&collection=ALL&sortBy=RELEVANCE&pageSize=30&page=1) (last visited Aug. 30, 2024). Only if the Brake Segments are not included in heading 8803, would the Court need to resort to an analysis under heading 6307. *See Allstar Mktg.*, 211 F.Supp.3d at 1337 n.26. Plaintiff notes that any argument to the contrary is unavailing and

contradictory to prior decisions of this Court and Customs' own prior interpretations that a "parts" provision prevails over a "basket" provision. *E.M. Chem.*, 728 F. Supp. at 727 ("Liquid crystals are more specifically provided for outside the chemical schedule, under the tariff provision most accurately describing their *use.* Item 685.70 TSUS is a "use" provision, and describes the imported items with more relative specificity than the basket provisions relied upon by the government.").[10] "Classification of imported merchandise in a residual, or 'basket, provision is only appropriate when there is no tariff category that covers the merchandise more specifically." *Russell Stadelman & Co. v. United States*, 83 F.Supp.2d 1356, 1359 (Ct. Int'l Trade 1999) (finding that, before determining whether Customs correctly classified goods under a basket provision, the Court "must first address whether they are more specifically classifiable" elsewhere) (citations omitted).

Defendant also makes the baseless claim that heading 6307 still applies even if the Brake Segments are "parts" because, while heading 6307 is a "basket" provision, Defendant claims that heading 8803 has "basket elements" in its wording and is therefore less specific. Def.'s Cross-Mot. at 28-30 (claiming "logic dictates that a parts provision encompassing a basket provision cannot be considered any more specific than a provision covering the part itself even if that provision contains basket elements.").

There is no principle of tariff classification that requires the consideration of "basket elements" in a non-basket tariff provision and Defendant does not cite any support for this

---

[10]     Other Customs rulings confirm that classification as a "part" of a vehicle prevails over classification in a "basket" provision. *See, e.g.*, HRL 965189 (ruling that heading 8708 prevailed over heading 6304) (available at https://rulings.cbp.gov/search?term=965189&collection=ALL&sortBy=RELEVANCE&pageSize=30&page=1) (last visited Aug. 30, 2024) and HRL 961386 (ruling that heading 8708 prevailed over heading 6307) (available at https://rulings.cbp.gov/search?term=961386&collection=ALL&sortBy=RELEVANCE&pageSize=30&page=1) (last visited Aug. 30, 2024). *See* Pl.'s Mot. at 42-43. Defendant has made no attempt to distinguish the reasoning in these Customs rulings.

assertion. *Id.* at 30. Further, the claimed "basket elements" are not in heading 8803, but in headings 8801 and 8802, which are referenced in 8803 only by heading number—not by their specific language (*i.e.*, the alleged "basket" language does not even appear in heading 8803, which specifically provides for "[*p*]*arts of* ..."). Finally, neither heading 8801 or 8802 are "basket" provisions, as each covers a specific type of aircraft (*eo nomine*), specifically non-powered versus powered.

Finally, while Defendant correctly states that "[H]eading 8803 does not describe the imported article by its material or shape," this is not the relevant inquiry. Def.'s Cross-Mot. at 30. Instead, and more importantly, heading 8803 is more specific than heading 6307 because it describes the brake segments by name, as "parts," and by their use for aircraft. The Brake Segments are more properly provided for in the tariff provision describing their use as "parts" of brake discs for aircraft because this provision describes the good with more relative specificity than the "basket" provision covering the product based on its material.[11] Since the Brake Segments are "parts" classified under heading 8803, this is dispositive for the tariff classification issue in this case and there is no need to consider whether they are "made up articles" under heading 6307.

---

[11] Use may be considered when classifying an article pursuant to an *eo nomine* provision and is relevant to the Brake Segments classification pursuant to the guidance of the HTSUS Section Notes, the ENs, and this Court's precedent on the classification of "parts." *See Allstar Mktg.*, 211 F.Supp.3d at 1333 (citing *GRK Canada, Ltd. v. United States*, 761 F.3d 1354, 1361 (Fed. Cir. 2014) and stating that "when considering use to determine whether an article fits within the scope of an *eo nomine* provision, the court is guided by the more limited use factors referenced in *GRK Canada*, which dealt with use in the context of an *eo nomine* provision, not *Carborundum*, which dealt with a use provision."); *see also E.M. Chem.*, 728 F. Supp. at 727 ("It has been the consistent view of the court that a provision which describes an importation by its use is more specific than one which provides for an importation by a general description.") (citations omitted).

**IV.**     <u>**Classification of the Brake Segments Is Resolved by Application of GRI 1**</u>

Defendant argues the Brake Segments must be reviewed under GRI 2 because they are not finished parts; and cannot be considered incomplete or unfinished aircraft parts because they do not have the essential character of aircraft brake discs. *See* Def.'s Cross-Mot. at 19. However, Defendant cites no facts to support its conclusion that the brake segments are unfinished "materials" and not ready for their intended use at the time of importation. Instead, the facts in this case confirm that the Brake Segments have all the characteristics of finished "parts" and are ready for assembly into brake discs at the time of importation. *See., e.g.*, Pl.'s Ex. A, Brown Dep. at 14-17; Pl.'s Ex. B, Pl.'s Answer to Def.'s First Interr. No. 6.

In this case, the Brake Segments are properly classified under heading 8803 by application of GRI 1. Pl.'s Mot. at 20-44. When a good may be classified based on GRI 1, the other GRIs are inapplicable. *Kalle USA v. United States*, 273 F.Supp.3d 1319 (Fed. Cir. 2017) ("Because this case can be resolved under GRI 1, resort to the subsequent sequenced GRI provisions, to which the parties refer in their alternative arguments, is unnecessary"); *see also Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1163 (Fed. Cir. 2017) ("The GRI apply in numerical order, meaning that subsequent rules are inapplicable if a preceding rule provides proper classification.") (citation omitted). Therefore, GRI 2 is not applicable in this case and the Court need not consider Defendant's arguments seeking to apply this GRI.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Cross-Motion for Summary Judgment be denied, that Plaintiff's Motion for Summary Judgment be granted, and that the Court grant Plaintiff such other relief as may be appropriate.

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Honeywell International, Inc.
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

By:    /s/ Wm. Randolph Rucker
Dated: August 30, 2024          Wm. Randolph Rucker

21

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. MARK A. BARNETT, *CHIEF JUDGE***

| | |
|---|---|
| HONEYWELL INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | Court No. 17-00256 |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

## <u>PLAINTIFF'S CERTIFICATION OF COMPLIANCE</u>

I, Wm. Randolph Rucker, counsel for Plaintiff, Honeywell International, Inc., certify that the foregoing brief complies with the type-volume limitation set forth in the *Standard Chambers Procedures* and USCIT Rules 56 and 81. Specifically, this brief contains 6,671 words (excluding the parts of the brief exempted by *Standard Chambers Procedures* 2(C)) as determined by the word count feature of the word processing program used to create this brief.

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Honeywell International, Inc.
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone (312) 569-1000

By:    <u>/s/ Wm. Randolph Rucker</u>

Dated: August 30, 2024           Wm. Randolph Rucker

**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, *CHIEF JUDGE***

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 17-00256 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSES TO DEFENDANT'S
STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Rule 56(e) of the Rules of the United States Court of International Trade, Plaintiff Honeywell International, Inc. ("Plaintiff"), hereby responds to the asserted statements of fact by Defendant United States ("Defendant"). Each of Defendant's statements of fact are included below, followed by Plaintiff's response:

1. The merchandise at issue is radial, chordal, and web nonwoven polyacrylonitrile (PAN) fabric segments that are cut to a specific shape and size. Pl. Ex. A, Brown Dep. at 20.[12]

**RESPONSE: Plaintiff objects to Defendant referencing the imported products as "fabric segments." Each of the imported products at issue is more appropriately described as a "brake segment," or, as applicable, a "radial segment," "chordal segment," or "web segment." *See, e.g.*, Pl.'s Ex. A, Brown Dep. 14-17 (noting that "[r]adial and chordal brake segments are parts of the brake discs that [Plaintiff] manufacture[s] for aircraft wheel and brake assemblies."); *id.* at 15:8-16 (noting that**

---

[12] Mark D. Brown is a lead production engineer for Honeywell's wheel and brake development engineering department and testified in this case as a US CIT Rule 30(b)(6) representative of Honeywell. Pl. Ex. A, Brown Dep at 8, 9 and 11.

certain samples of the imported products "are representative of radial and chordal brake segments."); *id.* at 62:15-21 (acknowledging that "radial, chordal, and web segments" is an accurate description of the imported products, collectively). Notwithstanding, Plaintiff does not dispute the remainder of the stated facts in Paragraph No. 1.

2.  The PAN synthetic fibers are composed of a synthetic polymer of acrylonitrile. Pl. Ex. A Brown Dep at 20, 21 and 81.

**RESPONSE: Undisputed.**

3.  Each type of imported PAN fabric segment is arc shaped, approximately 10 $^1/_2$ inches across at its widest portion, approximately 5 inches along its radius and approximately 2/16 of an inch thick. Gov. Exs. 2-4 (radial, chordal and web segment physical samples).

**RESPONSE: Disputed. First, Plaintiff objects to Defendant referencing the imported products as "fabric segments." Each of the imported products at issue is more appropriately described as a "brake segment," or, as applicable, a "radial segment," "chordal segment," or "web segment." Next, Plaintiff disputes the stated specifications of the imported products, along with Defendant's use of the term "approximately." Plaintiff avers that each of the subject brake segments are manufactured to specific dimensions for use with specific aircraft. *See* Pl.'s Ex. B, Pl.'s Answer to Def.'s Interr. No. 3 ("[T]he specific radius, angle, fiber composition, fiber orientation, and layering for each imported segment is specifically engineered to provide the strength, friction, wear, heat absorption, and heat transfer properties to meet the brake design requirements for a specific aircraft, which includes the sizes**

and tolerances for specific brake discs for specific aircraft."); Pl.'s Ex. A, Brown Dep. 29:23-30:7 ("So each segment has . . . an inner radius, outer radius that's a specific dimension. Those specific dimensions are related to the final brake disc configuration and so -- and each brake disc is different sized whether that's outer diameter, inner diameter, thickness, et cetera for a specific aircraft brake, and basically every aircraft brake that we manufacture is specific to a one airplane."); Pl.'s Mot. For Summ J., Ex. E (engineer drawings); *see also* Pl.'s Ex. A, Brown Dep. at 104:9-11 (noting that "the segments themselves have an ID and an OD with a specific tolerance band that they're allowed to be within."). Notwithstanding, Plaintiff avers that any dispute between the parties in relation to the numerical specifications of the imported products at issue is not material and does not support or compel the legal conclusion asserted by Defendant.

4.   The segments as imported look and feel like fabric material, able to be hand manipulated by folding or crumpling. Gov. Exs. 2-4 (radial, chordal and web segment physical samples).

**RESPONSE: Disputed. Plaintiff disputes Defendant's characterization of the imported brake segments as "look[ing] and feel[ing] like fabric material" and avers that the samples speak for themselves. Plaintiff further refers to the relevant portion of Mark Brown's deposition testimony, which reads as follows:**

> **[DEFENDANT'S COUNSEL]: [W]ould you agree [the imported product is] a textile?**
>
> **[BROWN]: I would suggest that it is a fabric material that has a specific design and use related to . . . our specific product.**
>
> **[DEFENDANT'S COUNSEL]: Okay. And as we see it here today as a fabric material, it's bend-able, fold-able just like any fabric?**

> **[BROWN]: Yes. And that's intentional.**
>
> **[DEFENDANT'S COUNSEL]: Okay. What do you mean by that?**
>
> **[BROWN]: In order to continue with the appropriate manufacture to have this become a brake disc for an aircraft, it needs to have flexibility like this.**

**Pl.'s Ex. A, Brown Dep. 16:13-17:1. Notwithstanding, Plaintiff avers that any dispute between the parties in relation to the look and feel of the imported products at issue is not material and does not support or compel the legal conclusion asserted by Defendant.**

5. The fabric segments as imported, are not finished aircraft parts as they are not in a form or condition to be installed on an aircraft brake system. Pl. Ex. A, Brown Dep. p 88 lines 5, 6; Gov. Exs. 2-4 (radial, chordal and web segment physical samples).

**RESPONSE: Disputed. First, Plaintiff notes that Defendant's statement mischaracterizes Mark Brown's testimony for purposes of compelling a legal conclusion. By contrast, and consistent with Plaintiff's response to Paragraph No. 4 above, Mr. Brown testified that, while the subject brake segments, as imported, cannot be used in an aircraft absent further processing, each imported brake segment is specifically designed for sole and exclusive use in an aircraft brake disc. *See* Pl.'s Ex. A, Brown Dep. 88:5-11 ("So, no, I can't just take a segment and put it on an aircraft brake. However, that is the specific designed part that we used in order to get the end product that we were looking for, and there's really nothing else that we would use that for besides creating carbon brake discs."). Notwithstanding, Plaintiff avers that this fact is not material and does not support or compel the legal conclusion**

asserted by Defendant. Finally, Plaintiff objects to Defendant referencing the imported products as "fabric segments." Each of the imported products at issue is more appropriately described as a "brake segment," or, as applicable, a "radial segment," "chordal segment," or "web segment."

6. The PAN fabric segments upon importation are delivered directly to Honeywell's contractor, BAM, Inc. in Knoxville, Tennessee. Pl. Ex. A, Jones Dep. 10-13.[13]

**RESPONSE: Undisputed. However, Plaintiff avers that this fact is not material to this case and does not support or compel the legal conclusion asserted by Defendant. Plaintiff also objects to Defendant referencing the imported products as "fabric segments." Each of the imported products at issue is more appropriately described as a "brake segment," or, as applicable, a "radial segment," "chordal segment," or "web segment."**

7. BAM, Inc. is an advanced materials company that specializes in the processing and manufacturing of carbonized products through its use of high-temperature furnace systems. Gov. Ex. 14, BAM, Inc. Website (https://www.bamknoxville.com/).

**RESPONSE: Undisputed. However, Plaintiff avers that this fact is not material and does not support or compel the legal conclusion asserted by Defendant.**

8. The Honeywell/BAM, Inc. contract has characterized the PAN fabric segments as raw material for use by BAM, Inc. in the creation of needled preforms for Honeywell. Gov. Ex. 13, Third Addendum to Amended and Restated Toll

---

[13] Ester Jones is a Vice President of Quality at BAM, Inc and testified in this case as a US CIT Rule 30(b)(6) representative of BAM, Inc. Gov. Ex. 6, Jones Dep at 5,10, and 11.

Manufacturing Agreement for Carbonization Services at ¶4A(7) and 4B(6). See

BAM000046, BAM000050, BAM000076 and BAM000080.

**RESPONSE: Disputed. Plaintiff objects to Defendant referencing the imported products as "fabric segments", as well as any suggestion that the imported products are properly described as "raw material[s]." Each of the imported products at issue is more appropriately described as a "brake segment," or, as applicable, a "radial segment," "chordal segment," or "web segment." Plaintiff notes that the documents produced by BAM Inc.—including the documents cited by Defendant—also refer to the imported products as a "part" and/or a "segment." *See, e.g.,* Def.'s Ex. 13, BAM000050 and BAM000080 ("(10) Honeywell will, with the segment supplier and with support from BAM, assure that the segment mass mean values are centered on the desired nominal values, and that the part to part mass variation of the segments are sufficiently low to enable BAM to manufacture preforms that meet Honeywell specifications in regard to mass."); *see also* Def.'s Ex. 8. BAM000283 and BAM000297 (referencing segment part drawings). Notwithstanding, Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant.**

9. BAM, Inc. utilizes a processing specification which sets forth its manufacturing steps in creating a needled preform. Gov. Ex. 8, PS-1526 Bates No. BAM000280.

**RESPONSE: Undisputed. However, Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant.**

10. The segments are one of the "materials" necessary for the fabrication of the needled preform. Pl. Ex. B: Pltf.'s Supp. Rog. Resp. 6, Gov. Ex. 8, PS-1526 at ¶3.1.2, Bates No. BAM000283.

**RESPONSE: Disputed. First, Plaintiff disputes Defendant's description of the imported products as "materials." Each of the imported products at issue is more appropriately described as a "brake segment," or, as applicable, a "radial segment," "chordal segment," or "web segment." Plaintiff also notes that the documents produced by BAM—including the document cited by Defendant (*i.e.*, Def.'s Ex. 8, BAM000283) also refers to each imported product as a "part" and/or a "segment." Def.'s Ex. 8, BAM000283 (referring to the imported products as "parts"); *see also, e.g., id.* at BAM000285 (referring to the imported products as "Web Segments" and "Chordal and Radial Segments") and BAM000287 (stating that the segments are cut from fabric and have O.D. and I.D. dimensions specific by the "segment part drawing"); Def.'s Ex. 6, Jones Dep. 67:18-23 (noting that the term "Material" refers to "part numbers that are used to make a preform."). Notwithstanding, Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant.**

11. Specifically, the BAM, Inc. process begins with BAM's personnel reviewing the relevant Honeywell purchase order to understand what specific "preform" Honeywell wants manufactured, so BAM's personnel can gather and prepare the appropriate segments and machines. Gov. Ex. 6, Jones Dep. 10-13, 23.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding,**

**Plaintiff does not dispute the stated facts in Paragraph 11 to the extent they are consistent with Esther Jones' deposition testimony.**

12. BAM, Inc. personnel then prepare the needling machine in accordance with the requirements of the relevant purchase order. Gov. Ex. 6, Jones Dep. 13-14.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 12 to the extent they are consistent with Esther Jones' deposition testimony.**

13. As part of the preparation, the BAM, Inc. machine operator loads the needling machine's magazines (chambers for holding the segment supply) with the appropriate number of radial, chordal and web segments. Gov. Ex. 6, Jones Dep. 13-15.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant.  Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 13 to the extent they are consistent with Esther Jones' deposition testimony.**

14. The operation of the BAM, Inc. needling machine commences the needling process with the machine automatically picking and laying down a group of six segments of the same type, e.g., all chordal, to create a layer inside the machine's doughnut shaped form. Gov. Ex. 6, Jones Dep. 15-17.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding,**

**Plaintiff does not dispute the stated facts in Paragraph 14 to the extent they are consistent with Esther Jones' deposition testimony.**

15. Thereafter, the needling machine automatically creates an additional layer of six segments of a different type than the first, and possibly another layer of six segments of a third type, depending on the requirements correlating with the preform requested by the purchase order. Gov. Ex. 6, Jones Dep. 15-17.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 15 to the extent they are consistent with Esther Jones' deposition testimony.**

16. While the machine is picking and laying the segments in the doughnut shaped form, the machine's needling apparatus is jabbing the needles into and out of the segments to physically insert portions of one segment into another segment, interconnecting the layers of segments with each other. Gov. Ex. 6, Jones Dep. 18-20.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 16 to the extent they are consistent with Esther Jones' deposition testimony.**

17. Once the needled preform is completed by the needling machine, it is removed from the form and given a serial number. The operator records the relevant data including the number of segments utilized in creating the needled preform, its

weight, and thickness. Gov. Ex. 6, Jones Dep. 18; Gov. Ex. 18, physical sample of needled preform.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff further avers the sample speaks for itself and does not dispute the stated facts in Paragraph 17 to the extent they are consistent with Esther Jones' deposition testimony.**

18. The needled preforms are then gathered in lots as specified by the relevant purchase orders. These lots are placed in a furnace staging area until a furnace load of between four and seven lots is accumulated. Gov. Ex. 6, Jones Dep. 22.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 18 to the extent they are consistent with Esther Jones' deposition testimony.**

19. Once a furnace lot of needled preforms are gathered, the preforms are stacked into the furnace with spacers between each needled preform and a weighted load positioned on the top of the stack to apply the predetermined pressure. Gov. Ex. 6, Jones Dep. 22-25.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 19 to the extent they are consistent with Esther Jones' deposition testimony.**

20. BAM Inc. follows engineering specifications which delineate the details of the furnace cycles necessary to create a carbonized preform. Gov. Ex. 9, EMS-184-R Bates No. BAM000237.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 20 to the extent they are supported by the cited document.**

21. The stacks of needled preforms are heated for three and a half to four days in the furnace as part of the carbonization cycle. Gov. Ex. 6, Jones Dep. 26, 27.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 21 to the extent they are consistent with Esther Jones' deposition testimony.**

22. During the days-long carbonization process, gases are given off from the preforms and upon completion what is remaining is a carbonized preform. Gov. Ex. 6, Jones Dep. 27, 28.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 22 to the extent they are consistent with Esther Jones' deposition testimony.**

23. The carbonized preform is no longer considered a polyacrylonitrile material but has undergone a molecular change and is considered a carbon material. Pl. Ex. A, Brown Dep. at 64.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 23 to the extent they are consistent with Mark Brown's deposition testimony.**

24. Upon completion of the carbonization cycle at BAM, Inc. the carbonized preform has lost 50 percent of its needled preform weight, and its size has also shrunk. Pl. Ex. A, Brown Dep. at 64.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 24 to the extent they are consistent with Mark Brown's deposition testimony.**

25. Once the BAM, Inc. carbonization process is completed, the preforms no longer exhibit the fabric quality of the imported segments but instead are much more rigid, solid, and inflexible. Pl. Ex. A, Brown Dep. 64,

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 25 to the extent they are consistent with Mark Brown's deposition testimony.**

26. The carbonized preforms are inspected by BAM, Inc. and shipped to Honeywell in South Bend, Indiana for further processing. Gov. Ex. 6, Jones Dep. 33, 34.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding,**

**Plaintiff does not dispute the stated facts in Paragraph 26 to the extent they are consistent with Esther Jones' deposition testimony.**

27. Specifically, Honeywell's South Bend facility further processes the carbonized preform through a densification process involving chemical vapor infiltration (CVI) and chemical vapor deposition (CVD) process which deposits additional carbon on and around the carbonized preform. Pl. Ex. A, Brown Dep. at 21, 64-67, 92, 93, 104109, Pl. Ex. B, Pltf's Supp. Rog. Resp. 6.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 27 to the extent they are consistent with Mark Brown's deposition testimony and Plaintiff's Answers to Defendant's Interrogatories.**

28. The CVI/CVD densification process described above occurs while the carbonized preforms undergo cycles of heat treatment in Honeywell's furnaces which are under vacuum pressure. Pl. Ex. A, Brown Dep. at 21, 64-67, 92, 93, 104-109, Pl. Ex. B, Pltf's Supp. Rog. Resp. 6.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 28 to the extent they are consistent with Mark Brown's deposition testimony and Plaintiff's Answers to Defendant's Interrogatories.**

29. More specifically, while under heat and pressurization, a mixture of gases is added to the furnace which promotes a carbon matrix surrounding and building on

the heated carbon substrate material of the carbonized preform. Pl. Ex. A, Brown

Dep at 66, Pl. Ex. B, Pltf's Supp. Rog. Resp. 6.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 29 to the extent they are consistent with Mark Brown's deposition testimony and Plaintiff's Answers to Defendant's Interrogatories.**

30. The densification process is a time-consuming evolution involving months of

cyclical heating in the furnace totaling hundreds of hours. Pl. Ex. A, Brown Dep.

at 67, 68, Pl. Ex. B, Pltf's Supp. Rog. Resp. 6.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 30 to the extent they are consistent with Mark Brown's deposition testimony and Plaintiff's Answers to Defendant's Interrogatories.**

31. The CVI/CVD densification process, wherein the carbon matrix surrounds and

builds more carbon onto the carbon substrate of the preform, results in the

preforms increased weight. Pl. Ex. A, Brown Dep. at 107, 108, Pl. Ex. B, Pltf's

Supp. Rog. Resp. 6.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 31 to the extent they are**

**consistent with Mark Brown's deposition testimony and Plaintiff's Answers to Defendant's Interrogatories.**

32. Overall, the manufacturing process for a densified carbon-carbon preform can take up to six months, with the CVD/CVI densification process being the longest portion of the manufacturing process. Pl. Ex. A, Brown Dep. at 67, 68, Pl. Ex. B, Pltf's Supp. Rog. Resp. 6.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 32 to the extent they are consistent with Mark Brown's deposition testimony and Plaintiff's Answers to Defendant's Interrogatories.**

33. Once the carbon preforms have gone through the densification steps, the preforms undergo a final machining operation in which the friction surfaces are ground to specific dimensions, the inner and outer dimensions are machined and the other parts such as lugs, grooves and holes are machined and antioxidant applied, creating an aircraft brake disc. Pl. Ex. A, Brown Dep. at 69, 70, Pl. Ex. B, Pltf's Supp. Rog. Resp. 6; Gov. Exhs. 19-20 physical samples of densified carbon-carbon aircraft brake discs.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 33 to the extent they are consistent with Mark Brown's deposition testimony and Plaintiff's Answers to Defendant's Interrogatories.**

34. The result of the process wherein the preform is densified and carbonized is that it takes on the desired characteristics of brake discs including high strength, added thermal characteristics, ability to absorb and transfer heat, and generate friction. Pl, Ex. A, Brown Dep. at 27, 90, 91, 106.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 34 to the extent they are consistent with Mark Brown's deposition testimony and Plaintiff's Answers to Defendant's Interrogatories.**

35. Carbon-carbon rotors and stators (brake discs) are desirable in the market because they weigh considerably less than steel brake discs, and the carbon-carbon products have a longer service life, as well as offer superior strength, energy absorption capability, and advantageous thermal properties. Pl. Ex. A, Brown Dep. at 27.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 35 to the extent they are consistent with Mark Brown's deposition testimony.**

36. The total cost of the post-importation manufacturing ($1,786.34) which transformed the quantity of imported fabric segments, first, into needled preforms, second, into carbonized preforms, third, into a densified carbon-carbon preform and finally, machined into an aircraft brake disc is approximately eleven times of

the cost of the number of segments themselves ($164.82). Pl. Ex. B, Pltf's Supp.

Rog. Resp. 6.

**RESPONSE: Plaintiff avers that the stated facts are not material to this case and do not support or compel the legal conclusion asserted by Defendant. Plaintiff also objects to Defendant referencing the imported products as "fabric segments." Each of the imported products at issue is more appropriately described as a "brake segment," or, as applicable, a "radial segment," "chordal segment," or "web segment." Notwithstanding, Plaintiff does not dispute the stated facts in Paragraph 36 to the extent they are consistent with Plaintiff's Answers to Defendant's Interrogatories.**

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Honeywell International Inc.
320 S. Canal Street
Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

Dated:  August 30, 2024                    By: /s/ Wm. Randolph Rucker
                                                        Wm. Randolph Rucker

## CERTIFICATE OF SERVICE

Wm. Randolph Rucker certifies that he is an attorney with the law firm of Faegre Drinker Biddle & Reath LLP, with offices located at 320 S. Canal Street, Suite 3300, Chicago, IL 60606, and that on August 30, 2024 on behalf of the Plaintiff herein, he served the attached Response in Opposition to Government's Cross-Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment on:

Edward F. Kenney
U.S. Department of Justice
Commercial Litigation Branch – Civil Division
26 Federal Plaza
Room 346
New York, NY 10278

the attorney for the Defendant herein, by electronic service in the CM/ECF System of the Court of International Trade.

/s/ Wm. Randolph Rucker