UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

_____
                                              :
HONEYWELL INTERNATIONAL INC.,                 :
                                              :
                         Plaintiff,           :       Court No. 17-00256
                                              :
                                              :
                                              :
UNITED STATES,                                :
                                              :
                         Defendant.           :
_____:

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER
SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

AIMEE LEE
Assistant Director

EDWARD F. KENNY
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0480 or 9230
Attorneys for Defendant

Of Counsel:
Yelena Slepak, Esq.
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ............................................................................................................ 5

I.  IN ITS CONDITION AS IMPORTED THE PAN FABRIC SEGMENTS ARE
    NOT PARTS NOR ARE THEY UNFINISHED PARTS OF AN AIRCRAFT ................ 5

  A.  The Segments Themselves Are Not Finished Parts But Rather They Are
      The Material Which Is Fabricated Into Brake Discs. ...................................... 7

    1)  In Its Imported State The Segments Are Not Integral To A Brake Disc. ................ 10

    2)  The PAN Fabric Segments Are Not Sufficiently Advanced In Manufacture
        To Be Identified As Parts Of A Brake Disc ............................................ 13

    3)  Honeywell's PAN Fabric Segments Have Other Commercial Uses. ....................... 17

  B.  The Imported Non-Woven PAN Fabric Segments Also Do Not Have
      The Essential Character Of Densified Carbon-Carbon Brake Discs And
      Therefore Cannot Be An Unfinished Brake Disc Or Brake Disc Part ............................ 17

II.  THE IMPORTED FABRIC SEGMENTS ARE MADE UP TEXTILE
     ARTICLES CLASSIFIED IN SUBHEADING 6307.90.98, HTSUS ............................ 19

CONCLUSION .......................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases**

*Allstar Mktg. Grp., LLC v. United States*,
  211 F.Supp.3d 1319 (Ct. Int'l Trade 2017) ............................................................7

*Bauerhin Technologies Ltd. v. U.S.*,
  110 F.3d 774 (Fed. Cir. 1997)..................................................................11, 12

*Baxter Healthcare Corp. of P.R. v. United States*,
  182 F.3d 1333 (Fed. Cir. 1999)..................................................................6, 9

*Benteler Indus., Inc. v. United States*
  840 F. Supp. 912 (Ct. Int'l Trade 1993) ........................................................6

*E.M. Chemicals v. United States*,
  728 F. Supp. 723 (Ct. Int'l Trade 1989)
  *aff'd,* 920 F.2d 910 (Fed. Cir. 1990) ........................................................6, 15, 16

*Harding Co. v. United States*,
  23 C.C.P.A. 250 (1936) ..............................................................................14

*Ludvig Svensson (U.S.), Inc. v. United States*,
  62 F.Supp.2d 1171 (Ct. Int'l Trade 1999) ........................................................6, 16

*Millenium Lumber Distribution Ltd. v. United States*,
  31 C.I.T. 575 (2007) ....................................................................................8, 9

*Millenium Lumber Distribution Ltd. v. United States*,
  558 F.3d 1326 (Fed. Cir. 2009)..................................................................14, 15

*RKW Klerks v. United States*,
  592 F.Supp.3d 1349, (Ct. Int'l Trade 2022)
  *aff'd,* 94 F.4th 1374 (Fed. Cir. 2004) ........................................................11, 12

*United States v. Citroen*,
  223 U.S. 407 (1912)......................................................................................7

*United States v. Pompeo*,
  43 C.C.P.A. 9 (1955) ..................................................................................11

*United States v. Willoughby Camera Stores, Inc.*,
  21 C.C.P.A. 322 (1933) ..............................................................................11, 12

*Zwicker Knitting Mills v. United States*,
  469 F.Supp. 727 (Cust. Ct. 1979) ..............................................................14

**Harmonized Tariff Schedule of The United States**

General Rules of Interpretation 1 ........................................................................... 17, 19

General Rules of Interpretation 2(a) ............................................... 6, 7, 17, 18, 19

Chapter 44

    Heading 4407 ........................................................................................................ 8

    Heading 4418 ..................................................................................................... 8, 9

    Heading 4421 ........................................................................................................ 8

Chapter 63

    Heading 6307 ................................................................................................... 2, 19

    Subheading 6307.90.98 ............................................................................ 1, 19, 20

Chapter 88

    Heading 8803 ...................................................................................................... 20

    Subheading 8803.20.00 ........................................................................................ 1

Section XI

    Note 7(a) .............................................................................................................. 19

**Tariff Schedule of The United States**

Headnote 10(h)......................................................................................................... 7

**Other Authorities**

RAW MATERIAL, *Merriam-Webster Dictionary*
available at https://www.merriam-webster.com/dictionary/raw%20material) ............................ 10

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. MARK A. BARNETT, CHIEF JUDGE

_____
HONEYWELL INTERNATIONAL INC.,            :
                                         :
                                         :
                        Plaintiff,       :        Court No.  17-00256
                                         :
          v.                             :
                                         :
UNITED STATES,                           :
                                         :
                        Defendant.       :
_____  :

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER
SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States (the Government), submits this reply memorandum in opposition to plaintiff's, Honeywell International Inc.'s (Honeywell), motion for summary judgment and in further support of our cross-motion for summary judgment.

**INTRODUCTION**

The correct classification of Honeywell's polyacrylonitrile (PAN) fabric segments is under subheading 6307.90.98 of the Harmonized Tariff Schedule of the United States (HTSUS), which provides for "Other made up articles, including dress patterns," and not within subheading 8803.20.00, HTSUS, as parts for use in aircraft undercarriages. Honeywell's goods are textile fabric pieces which, after importation, are put together in various combinations, and undergo a six month long series of manufacturing steps to transform the fabric into a solid densified carbon-carbon brake disc that is used in aircraft and has been used in automotive applications.  However, the imported fabric segments are not, as Honeywell contends, finished aircraft parts "ready for assembly into brake discs at the time of importation."  Honeywell Resp. Br. at 20.  The fabric segments are

not a complete or finished part, do not have the essential character of a finished part, cannot be "assembled" into an aircraft brake disc as imported, and are not discernable as a part of an aircraft and, therefore, cannot be classified as such. Accordingly, the correct classification of Honeywell's merchandise falls within heading 6307 as other made up textile articles.

## **BACKGROUND**

In addition to those facts discussed in our opening brief concerning PAN fabric segments at issue which we do not repeat here, we emphasize that Honeywell in its response papers does not dispute the following statements in accord with our cited evidence, with the exception that it disagrees with calling the merchandise at issue "PAN fabric segments,"[1] and contests that these facts are material:

The polyacrylonitrile (PAN) fabric segments upon importation are delivered directly to Honeywell's contractor, BAM, Inc. in Knoxville, Tennessee. Honeywell Resp. to Gov't SOMF 6. BAM, Inc. is an advanced materials company that specializes in the processing and manufacturing of carbonized products through its use of high-temperature furnace systems. *Id.* at Resp. 7. BAM, Inc. utilizes a processing specification for the methodology of creating a needled preform. *Id.* at Resp. 9. The BAM, Inc. machine operator loads the needling machine's magazines (chambers for holding the segment supply) with the appropriate number of radial, chordal and web segments. *Id.* at Resp. 13. The operation of the BAM, Inc. needling machine commences the needling process with the machine automatically picking and laying

---

[1] Plaintiff would rather we refer to the imported goods as "Brake Segments." *See* Honeywell Resp. Br. at FN 1.

down a group of six segments of the same type, *e.g.*, all chordal, to create a layer inside the machine's doughnut shaped form. *Id*. at Resp. 14. Thereafter, the needling machine automatically creates an additional layer of six segments of a different type than the first, and possibly another layer of six segments of a third type, depending on the requirements correlating with the preform requested by the purchase order. *Id*. at Resp. 5.

While the machine is picking and laying the segments in the doughnut shaped form, the machine's needling apparatus is jabbing the needles into and out of the segments to physically insert portions of one segment into another segment, interconnecting the layers of segments with each other. *Id*. at Resp. 16. The needled preforms are then gathered in lots and placed in a furnace staging area until a furnace load of between four and seven lots is accumulated. *Id*. at Resp. 18. Once a furnace lot of needled preforms are gathered, the preforms are stacked into the furnace with spacers between each needled preform and a weighted load positioned on the top of the stack to apply the predetermined pressure. *Id*. at Resp. 19. BAM Inc. follows engineering specifications which delineate the details of the furnace cycles necessary to create a carbonized preform. *Id*. at Resp. 20. The stacks of needled preforms are heated for three and a half to four days in the furnace as part of the carbonization cycle. *Id*. at Resp. 21. During the days-long carbonization process, gases are given off from the preforms and upon completion what is remaining is a carbonized preform. *Id.* at Resp. 22. The carbonized preform is no longer considered a polyacrylonitrile material but has undergone a molecular change and is considered a carbon material. *Id*. at Resp. 23.

Upon completion of the carbonization cycle at BAM, Inc., the carbonized preform has lost 50 percent of its needled preform weight, and its size has also shrunk. *Id*. at

Resp. 24.  Once the BAM, Inc. carbonization process is completed, the preforms no longer exhibit the fabric quality of the imported segments but instead are much more rigid, solid, and inflexible.  *Id*. at Resp. 25.   The carbonized preforms are inspected by BAM, Inc. and shipped to Honeywell in South Bend, Indiana for further processing.  *Id*. at Resp. 26.

Honeywell's South Bend facility further processes the carbonized preforms through a densification process involving chemical vapor infiltration (CVI) and chemical vapor deposition (CVD) process which deposits additional carbon on and around the carbonized preforms.  *Id*. at Resp. 27.  The CVI/CVD densification process occurs while the carbonized preforms undergo cycles of heat treatment in Honeywell's furnaces which are under vacuum pressure.  *Id*. at Resp. 28.  More specifically, while under heat and pressurization, a mixture of gases is added to the furnace which promotes a carbon matrix surrounding and building on the heated carbon substrate material of the carbonized preform.  *Id*. at Resp. 29.   The densification process is a time-consuming evolution involving months of cyclical heating in the furnace totaling hundreds of hours.  *Id.* at Resp. 30.   The CVI/CVD densification process, wherein the carbon matrix surrounds and builds more carbon onto the carbon substrate of the preform, results in the preform's increased weight.  *Id*. at Resp. 31.  Overall, the manufacturing process for a densified carbon-carbon preform can take up to six months, with the CVD/CVI densification process being the longest portion of the manufacturing process.  *Id*. at Resp. 32.

Once the carbon preforms have gone through the densification steps, the preforms undergo a final machining operation in which the friction surfaces are ground to specific dimensions, the inner and outer dimensions are machined and the other parts such as lugs,

grooves and holes are machined and antioxidant applied, creating an aircraft brake disc. *Id*. at Resp. 33. The result of the process wherein the preform is densified and carbonized is that it takes on the desired characteristics of brake discs including high strength, added thermal characteristics, ability to absorb and transfer heat, and generate friction. *Id*. at Resp. 34.

The resultant carbon-carbon rotors and stators (brake discs) are desirable in the market because they weigh considerably less than steel brake discs, and the carbon-carbon products have a longer service life, as well as offer superior strength, energy absorption capability, and advantageous thermal properties. *Id*. at Resp. 35. The total cost of the post-importation manufacturing ($1,786.34), which transformed the quantity of imported fabric segments, first, into needled preforms, second, into carbonized preforms, third, into a densified carbon-carbon preform, and finally, machined into an aircraft brake disc, is approximately eleven times of the cost of the number of segments themselves ($164.82). *Id*. at Resp. 36.

For the reasons set forth in our opening brief and below, summary judgment is appropriate here. The physical attributes and function of the PAN fabric segments at issue cannot be disputed, and classification is a legal question for the Court to determine.

## **ARGUMENT**

## I.   **IN ITS CONDITION AS IMPORTED THE PAN FABRIC SEGMENTS ARE NOT PARTS NOR ARE THEY UNFINISHED PARTS OF AN AIRCRAFT**

Honeywell asserts that its PAN fabric segments as imported are parts of an aircraft brake system and not a made up textile fabric which is a material processed and fabricated into brake discs. At the outset, it is important to recognize that it is only

through extensive post-importation processing that the pliable fabric segments become durable, dense, and hard with an altered chemical composition which enables the segments to become a brake disc for an aircraft. Plaintiff prefers to ignore these facts and argues that its PAN fabric segments are already aircraft parts, by claiming that the fabric segments: ". . . have only one use—assembly into brake discs" (Honeywell Resp. Br. at 6), that no other additional parts are used to produce the brake discs (*id*. at 10), and that ". . . the [PAN fabric s]egments have all the characteristics of finished "parts" and are ready for assembly into brake discs at the time of importation." Honeywell Resp. Br. at 20.

Honeywell identifies three factors in an attempt to show that its fabric segments are parts, namely whether the merchandise is "(1) an integral part of another article; (2) sufficiently advanced in manufacture to be identified as parts; and (3) solely of commercial use as a part." Honeywell Resp. Br. at 9 (citing *Ludvig Svensson (U.S.), Inc. v. United States*, 62 F.Supp.2d 1171 (Ct. Int'l Trade 1999), *Benteler Indus., Inc. v. United States*, 840 F.Supp. 912 (Ct. Int'l Trade 1993), *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333 (Fed. Cir. 1999), and *E.M. Chemicals v. United States*, 728 F. Supp. 724 (Ct. Int'l Trade 1989). *Id*. at 4-5. However, as discussed below, the fabric segments are not advanced enough in manufacture to be recognized as a part, *i.e.* brake discs. The major processing and operations that need to be completed post-importation underscore the fact that the as-imported fabric segments are more appropriately a material for brake discs and are far from becoming finished brake discs.

Moreover, the fabric segments are also not processed enough to be an unfinished part. Classification of an "unfinished article" under the HTSUS is governed by General Rule of Interpretation "GRI" 2(a), which provides that a reference in a heading to an

article includes a reference to that article incomplete or unfinished, so long as the incomplete or unfinished article has the essential character of the complete or finished article.  *See* GRI 2(a) HTSUS.  The essential character test for an unfinished article pursuant to GRI 2(a) is a change from the comparable rule under the predecessor of the HTSUS, the Tariff Schedules of the United States (TSUS), *i.e.,* General Headnote 10(h) of the TSUS, which plaintiff seems to embrace.  Again, as we discuss in Point B below, the imported PAN fabric segments do not possess the essential character of a part of a brake disc.  The pliable fabric cannot compare to the hard, dense, carbon-carbon brake disc that eventually emerges only after a number of segments are melded together as a result of the extensive processing performed post-importation.  As discussed below, Honeywell's merchandise is not advanced enough to be recognizable as a part or unfinished part and is appropriately classified as a made up textile article.

**A**.    **The Segments Themselves Are Not Finished Parts But Rather They Are The Material Which Is Fabricated Into Brake Discs.**

To determine the correct classification of the imported PAN fabric segments, we agree with Honeywell that it is "well-established" that goods are classified in their condition at the time of importation.  Honeywell Resp. Br. at 3 (citing *United States v. Citroen*, 223 U.S. 407, 414-15 (1912)).  We also agree that the samples of the imported merchandise are a potent witness in this case.  Honeywell Resp. Br. at 10 (citing *Allstar Mktg. Grp., LLC v. United States*, 211 F.Supp.3d 1319, 1334 (Ct. Int'l Trade 2017)).  Applying these principles is especially helpful in this case because a review of the fabric segments in their as-imported condition compared with the finished brake disc resulting from post-importation processing, physically and visually demonstrates that the fabric segments are not sufficiently advanced to be considered a brake disc, which is part of a

brake system for a civil aircraft.  *See* Samples, Gov. Exhs. 2-4 compared with Gov. Exhs. 19-20.  Instead, the imported fabric segments are more accurately described as material that is used in the lengthy multi-stage manufacturing process which results in the creation of a finished brake disc.

    *Millenium Lumber Distribution Ltd. v. United States*, 31 C.I.T. 575 (2007), aff'd, 558 F.3d 1326 (Fed. Cir. 2009), is instructive here.  That case considered the classification of angle-cut lumber claimed to be parts of roof trusses but was found to be correctly classified as lumber which required further processing and was not recognizable as a part of a roof truss.  The imported product consisted of dimensional lumber pre-cut at one end with a 90˚ angle and on the other end with either a 67.4˚ or 80.5˚ angle. *Millenium*, 31 CIT at 576.  Millenium asserted that the angle-cut lumber consisted of unassembled pieces of roof trusses, and therefore the goods were classifiable under heading 4418 as "[b]uilders' joinery and carpentry of wood" or alternatively under heading 4421 covering "[o]ther articles of wood."  *Id at 576-578*.  The Government maintained that the merchandise was standard dimensional lumber, classifiable under heading 4407 as "[w]ood sawn or chipped lengthwise ... of a thickness exceeding 6 mm." *Id*.  The trial court considered whether the imported merchandise was "sufficiently advanced and recognizable at the time of importation."  *Id*. at 580.  To this end, the trial court examined "whether the merchandise is: 1) identifiable and 'fix[ed] with certainty' as part of the final product at the time of importation, 2) so far advanced as to be 'dedicated solely or principally for use' in the final product, and 3) discernable as pieces of specific product structures, not just 'the making of [the products] in the abstract.'"  *Id*. (citations omitted).  The trial court held that the merchandise was not so developed or so

close to the final product as to be considered a part and instead was a material.

The Court of Appeals for the Federal Circuit affirmed the *Millenium* trial court decision and citing *Baxter Healthcare*, 182 F.3d at 1339, found that the pre-cut angles and use of the wood as unassembled roof trusses did not mean that the subject merchandise was "dedicated solely or principally for use in" a finished truss for the purposes of classifying it in heading 4418. *Millenium,* 558 F.3d at 1329.  The Federal Circuit, in affirming the Government's classification position under heading 4407, stated that the angle-cut lumber was "more raw material for trusses," *id*. at 1330, and that the "unassembled pieces must be more than just basic material generally suitable for use in the finished article." *Id*. at 1329.

Like the angle-cut lumber in *Millenium*, the PAN fabric segments are "more raw material" for brake discs rather than a part that has been advanced and recognizable as brake discs.  As Honeywell itself recognizes, "brake discs are made from multiple Brake Segments layered and needled together," Honeywell Resp. Br. at 10, and "each brake disc requires a specific number of Brake Segments of a particular type (e.g., radial, chordal, web)" in order to make a brake disc.  *Id*. at 11.  The layering and needling together of a particular number and type of fabric segments (radial, chord or web) occurs after importation according to the specifications for a particular brake disc.  In this way, the imported PAN fabric segments are the raw material to make a fabric preform which is then carbonized and densified during a six-month manufacturing process to ultimately become a densified carbon-carbon brake disc.  Honeywell Resp. to Gov't SOMF 13-20, 22-36.

It is telling that Honeywell in its contract with its carbon preform manufacturer

BAM, Inc. describes the fabric segments as the "raw material" used for the manufacture of carbon preforms, *See* Gov. Ex. 13: BAM/Honeywell contract at ¶4A(7) and 4B(6) (BAM000046, BAM000050, BAM000076 and BAM000080).  According to Merriam-Webster.com Dictionary, "Raw material" is defined as "crude or processed material that can be converted by manufacture, processing, or combination into a new and useful product."  *See* Merriam-Webster https://www.merriam-webster.com/ dictionary/ raw%20material (Accessed 26 Sep. 2024).  Honeywell's use of the term "raw material" to describe the segments in its contract with BAM, Inc. is apt as the contract delineates how BAM Inc. has agreed to convert the segments into carbonized preforms through a manufacturing process.  *See* Gov. Ex. 13.

Honeywell argues that the term "raw material" as used in its contract with BAM has no relevance to the analysis in this case. Honeywell Resp. Br. at 4.  To the contrary, how two sophisticated manufacturing entities, Honeywell and BAM, Inc., describe the role the segments play in the brake disc manufacturing process is very relevant.  The segments, as imported, are molecularly composed of polyacrylonitrile material and do not take on the molecular composition of a densified carbon-carbon brake disc until extensive six-month long fabrication by both BAM, Inc. and Honeywell.  It is evident from the manufacturing process involved in creating a brake disc that the segments as imported are not sufficiently advanced, and instead need extensive transformative processing to become a brake disc.

## 1) In Its Imported State the Segments Are Not Integral To A Brake Disc.

Honeywell contends that the fabric segments are parts because they are integral to a brake disc.  However, as imported, the fabric segments are not advanced to a point

where they are in a condition to be identifiable as a brake disc.  As PAN fabric segments, they do not have the essential character of a brake disc, they are not fixed in form or composition, and are not ready for direct use in a brake disc system.  Instead, the fabric segments require extensive manufacturing, including combining the segments in certain configurations and months of heating in a specialized gaseous environment, which molecularly transforms the composition of the good to create a brake disc.  *See* Honeywell Resp. to Gov't SOMF 13-20, 22-36.

To the extent that Honeywell seeks to assert that the PAN fabric segments are integral to the brake disc as a material, that is not what cases discussing parts as integral to another article mean.  Cases discussing the concept of a part being integral to another article consider a finished part and how that part works when fitted or used with another finished article.  For example, *RKW Klerks v. United States*, 592 F.Supp.3d 1349, (Ct. Int'l Trade 2022), *aff'd,* 94 F.4th 1374 (Fed. Cir. 2024) involved the classification of two particular types of synthetic fabric net wrap, used on a harvesting machine to wrap around bales of harvested crops.  While the *RKW Klerks* court ultimately determined the fabric net wrap was not integral to the function of the harvesting machine and therefore not a part of a harvesting machine, the net wrap itself was a finished article and the parts inquiry did not involve an unfinished goods analysis.   This is equally true for *Bauerhin Technologies Ltd. v. U.S.*, 110 F.3d 774, 775 (Fed. Cir. 1997), which involved the classification of finished articles of cushioned inserts and canopies for existing child car seats.  *United States v. Willoughby Camera Stores, Inc.*, 21 C.C.P.A. 322, 324 (1933), also considered the classification of finished tripods, composed of wood, claimed to be used with existing cameras.  Likewise *United States v. Pompeo*, 43 C.C.P.A. 9, 14

(1955), involved the classification of certain finished superchargers, designed for use on existing automobile engines.

In each case, *RKW Klerks, Willoughby Camera, Bauerhin* and *Pompeo*, there existed an article to which the alleged "part" was to be attached, *i.e.* in *RKW Klerks* the net wrap was to be used with an existing harvesting machine, in *Willoughby Camera*, the tripod was to be used with an existing camera, in *Bauerhin* the cushioned inserts and canopies were to be used for an existing child car seat, and in *Pompeo* the supercharger was to be used with an existing engine. In this case, the segments that are imported are not destined to be attached to an existing item, instead through an extensive post-importation manufacturing process, a group of PAN fabric segments are processed to create a wholly new article, *i.e.,* the brake disc. *See* Honeywell Resp. to Gov't SOMF 13-20, 22-36.

In every one of the above cases, *i.e. RKW Klerks, Bauerhin, Willoughby Camera* and *Pompeo*, the alleged part was truly a finished article, fixed in form and composition, and other than assembly, did not involve any post-importation manufacturing. In each of these cases, one could make an analysis of whether that alleged finished part in its imported condition was integral to another existing article with which the alleged part was to be used. This analysis is not suitable here because in the case at bar, when the segments are imported, there is nothing existing for the segments to become a part of - because it is the segments, acting as a raw material, that are processed and transformed into a new article with a different molecular make up than that of the segments, *i.e.* the densified carbon-carbon brake disc. *See* Honeywell Resp. to Gov't SOMF 13-20, 22-36. In other words, even if this Court were to consider the analysis relevant, the PAN fabric

segments in their condition as imported (fabric) cannot be considered an integral part, as they are not capable of being fit or joined together into a densified carbon-carbon brake disc but rather must undergo an extensive manufacturing process which results in the creation of a densified carbon-carbon brake disc.

**2) The PAN Fabric Segments Are Not Sufficiently Advanced In Manufacture To Be Identified As Parts Of A Brake Disc**

Despite the fact that the PAN fabric segments are far from being in a final manufactured state, Honeywell contends that the imported segments are finished parts requiring mere assembly into a brake disc. Honeywell Resp. Br. at 20. Honeywell asserts that the segments are cut to specific size and shape and are otherwise ready to be assembled.[2] Honeywell Resp. Br. at 11. But being cut and having a shape does not help in considering whether the PAN fabric segments are finished brake discs, because they are not. Honeywell's argument is belied by the physical nature of the samples of the imported good as compared with the brake discs for which they are alleged to be the sole part. At importation, it is apparent that the PAN fabric segment is in fabric form. *See* Gov. Exhibits 2, 3 and 4 (Physical Samples of PAN fabric segment.) It is also apparent that the samples of the brake discs, alleged to be comprised solely of PAN fabric segments, are not in fabric form which necessarily means that the fabric segments (which must be layered in a particular configuration according to specification after importation)

---

[2] While the imported segments are initially cut to a specific size and shape, it is significant to note that the final cutting or machining of the densified carbon-carbon brake discs occurs post-importation, during the last step in manufacturing the disc. Once the carbon preforms have gone through the densification steps, the preforms undergo a final machining operation in which the friction surfaces are ground to specific dimensions, the inner and outer dimensions are machined and the other parts such as lugs, grooves and holes are machined. *See* Honeywell Resp. to Gov't SOMF 33.

have been transformed into a densified carbon-carbon material.  *See* Exhibits 19 and 20 (Physical Sample of densified carbon-carbon aircraft brake discs.)

Contrary to Honeywell's assertions, the fabric segments are not simply "assembled" into a brake disc.  *See also Zwicker Knitting Mills v. United States*, 469 F.Supp. 727 (Cust. Ct. 1979) (It is common knowledge that to assemble means to fit or join components or parts together.  Assembly, in the present context, signifies the fitting or joining together of "finished" manufactured or fabricated parts or components.)  The creation of the brake disc does not involve the mere joining of PAN fabric segments together through an assembly process, but instead involves the months-long manufacturing of the segments by molecularly transforming them from a polyacrylonitrile fabric into a carbon material and further heating that carbonized substrate material in a specialized gaseous mixture so as to build a matrix of additional carbon molecules to form a densified carbon-carbon disc.  *See* Honeywell Resp. to Gov't SOMF 13-2, 21-36.

Further, the question of whether merchandise is classified as a material or is sufficiently advanced as to be a part is determined on a case-by-case basis.  *See The Harding Co. v. United States*, 23 C.C.P.A. 250 (1936).  The one case Honeywell cites in its opposition brief which dealt with a product that was not sufficiently advanced to be a "part" was *Millenium Lumber Distribution Ltd. v. United States*, 558 F.3d 1326 (Fed. Cir. 2009), discussed above.  Honeywell Resp. Br. at 5, 6.  Here, the PAN fabric segments, like the imported wood in *Millenium*, cannot be said, in its condition as imported, to be dedicated solely or principally for use in aircraft brake discs.  First, evidencing a more

"material like" condition than that at issue in *Millenium*,[3] the segments here are not even comprised of the same material as that of the asserted finished article.  In other words, the material making up the segments must be molecularly transformed through a manufacturing process into densified carbon-carbon before they can be considered a part or an aircraft, *i.e.* a brake disc.

Additionally, as we have noted, certain of the PAN fabric segments at issue were designed for both aircraft and automotive use.  Honeywell in its answers to interrogatories at Response 3 (Pl. SJ Ex. B) included a chart which has a column entitled "Program Use" which shows that at least six different segments are designated for both aircraft and automotive use (*i.e.*, Brembo).  *See also* Matheis Dep. at 10-13.5 (automotive use of the imported goods).  The fact that certain of the same aircraft segments are usable in automotive brake programs, shows that the material is capable of being used not only in aviation but also in automotive applications.  Thus, like the wood in the *Millenium* case, the fabric segments at issue in their condition as imported cannot be recognized as being dedicated solely or principally for use in densified carbon-carbon aircraft brake discs.

Honeywell also argues that *E.M. Chemicals v. United States*, 728 F. Supp. 724 (Ct. Int'l Trade 1989), supports its position that the fabric segments are sufficiently advanced.  The *E.M. Chemicals* case involved the issue of whether certain LCD crystals used in flat screen televisions are parts of the flat screen TV.  The Court held that the

---

[3] In *Millenium*, even though the Court concluded that the imported wood "truss" segments were material rather than parts, the composition of the wood and the asserted finished trusses were always the same material, *i.e.* "wood."  Here in the case at bar, the imported good is PAN fabric and the asserted end product produced is a densified carbon-carbon article, *i.e.,* completely different materials.

LCD crystals were in fact fixed with certainty and therefore a part, because the crystals themselves did not change during any post-importation processing (post-importation mixing of LCD crystals with a twist agent). *Id.* at 729, 730. In other words, even after post-importation mixing, the imported LCD crystals themselves were unchanged and retained their as-imported character. *Id*. The facts of *E.M.Chemicals* are distinguishable from the present case because the PAN fabric segments here are in fact molecularly changed (transformed) into a new material (densified carbon-carbon) through post-importation processing to create a brake disc.

Similarly, Honeywell's reliance on *Ludvig Svensson (U.S.), Inc. v. United States*, 62 F.Supp.2d 1171 (Ct. Int'l Trade 1999), does not support its position. Honeywell Resp. Br. at 14. In *Ludvig Svensson*, the article under consideration was a type of specialized environmental heat and shade retention greenhouse screen manufactured with certain strips of aluminum foil. Ludvig Svensson claimed that the screen was a part of agricultural equipment, *i.e.* a greenhouse, even though the post-importation processing included cutting the screen, sewing two screen sections together and adding plastic hooks. Customs asserted that the imported rolls of screening material were not sufficiently processed to be identified as an individual part of another product. The Court found the specialized screening to be a part of a greenhouse, and that any post-importation processing conducted by Svensson was minor processing attributable to the installation of the screens and did not alter the function or composition of the screen. Unlike the facts of the *Ludvig Svensson* case where the post-importation processing was minor and did not change the composition of the screens, here the facts are clearly distinguishable, because the PAN fabric segments at issue undergo a months-long

manufacturing process where the segments are molecularly transformed from one material to another (densified carbon-carbon) through post-importation processing.

Unlike the LCD crystals in the *E.M. Chemicals* case and the screens in the *Ludvig Svensson* case, the composition and character of the PAN fabric segments are not fixed at importation, are not sufficiently advanced to be identifiable as a part of a densified carbon-carbon brake disc, and do not have the essential character of a densified carbon-carbon brake disc.

### 3) Honeywell's PAN Fabric Segments Have Other Commercial Uses.

Finally, Honeywell claims that the PAN fabric segments have no other commercial use than as parts of aircraft undercarriage. Honeywell Resp. Br. at 11. In fact, Honeywell claims that each imported fabric segment is specifically designed for, sold, and exclusively used in an aircraft brake disc for a specific aircraft. Honeywell Resp. Br. at 14. Honeywell's argument is undercut by the fact that certain PAN fabric segments were developed for both aircraft and automotive use. As stated above, Honeywell in its answers to interrogatories at Response 3 (Pl. SJ Ex. B) included a chart which has a column entitled "Program Use" which shows that at least six different segments are designated for both aircraft and automotive use (*i.e.*, Brembo). *See also* Matheis Dep. at 10-13.5 (automotive use of the imported goods). The fact that the fabric segments can be used in commercial applications other than in the manufacture of an aircraft part, further demonstrates that Honeywell's goods are not a dedicated part.

**B.    The Imported Non-Woven PAN Fabric Segments Also Do Not Have The Essential Character Of Densified Carbon-Carbon Brake Discs And Therefore Cannot Be An Unfinished Brake Disc Or Brake Disc Part**

The imported PAN fabric segments are not finished parts under GRI 1, and they

are also not incomplete or unfinished parts of an aircraft brake system under GRI 2(a). Honeywell essentially ignores our argument that the PAN fabric segments do not have the essential character of a finished brake disc and therefore cannot be considered an unfinished brake disc.[4]  Honeywell Resp. Br. at 20.  Pursuant to GRI 2(a), a reference in a heading to an article includes that article incomplete or unfinished, so long as the incomplete or unfinished article has the essential character of the complete or finished article.  *See* GRI 2(a) HTSUS.  However, the PAN fabric segments do not approach possessing the essential character of a finished carbon-carbon aircraft brake disc.

The differences between the fabric segments and the brake disc are readily discernable.  As noted, the PAN fabric segments as imported are molecularly different from the densified carbon-carbon aircraft brake discs into which they are processed.  Pl. Ex. A: Brown Dep. at 64.  Physical characteristics of the fabric segments in terms of pliability, texture, and feel as compared with the hard, solid, dense feel of the densified carbon-carbon aircraft brake disc is also apparent.  Gov. Exhs. 19-20: Physical Samples of densified carbon-carbon aircraft brake discs (stator and rotor).  The fabric segments do not have the strength to withstand hundreds of thousands of pounds of pressure, the extensive friction capabilities and the thermal absorption characteristics needed for the landing of large jets.  Nor is the fabric as imported capable of being drilled and shaped

---

[4]  In its response brief, Honeywell mentions GRI 2(a) once on page 20 as being an unsupported argument and instead declares that the textile fabric segments have all the characteristics of finished "parts" ready for assembly into brake discs at the time of importation.  *See* Honeywell Response Br. at 20.  Honeywell's contention ignores its admissions as to the extensive post-importation manufacturing process which transforms the fabric segments into densified carbon-carbon aircraft brake discs, when it asserts that the segments "have all the characteristics of finished "parts" ready for assembly into brake discs at the time of importation."  *See* Honeywell Resp. to Gov't SOMF 13-20, 22-36.

into a form capable of being assembled into the finished aircraft brake system.  In other words, the essential character of the final product, *i.e.*, the densified carbon-carbon aircraft brake disc, its strength, and its ability to absorb the heat created by the friction inherent in stopping a jet aircraft, is nothing like the character of the pliable, soft, delicate, feltlike fabric segments.  *See* Gov. Exhs. 2-4 (Segment Samples) and Gov. Ex. 19-20 Densified Carbon-Carbon Aircraft Brake Disc Samples (stator and rotor); Pl. Ex. A: Brown Dep. at 90, 91.

Accordingly, and without conceding, even if considered an unfinished part, the fabric segments do not have the essential character of the finished densified carbon-carbon aircraft brake disc that is a part of an aircraft brake system.  Those essential characteristics necessary for a brake disc only appear after substantial processing.  *See* Pl. Ex. A: Brown Dep. at 90-91.

GRI 2(a) dictates that because the PAN fabric segments do not possess the essential character of an aircraft brake disc at importation, they cannot be classified as an unfinished part of an aircraft brake disc.  Our argument on this point remains undisputed by Honeywell.  *See generally* Honeywell Response Br.

**II**.   **THE IMPORTED FABRIC SEGMENTS ARE MADE UP TEXTILE ARTICLES CLASSIFIED IN SUBHEADING 6307.90.98, HTSUS**

The imported fabric material is correctly classified under heading 6307 pursuant to GRI 1, as a made up textile fabric.  Heading 6307 covers made up textiles, and "made up" is defined by Note 7(a) to Section XI as "Cut otherwise than into squares or rectangles."  *See* HTSUS Section XI note 7(a).

As imported, the segments are textiles, *i.e.*, nonwoven fabric material, (Pl. Ex. A: Brown Dep. at 15, 19), and the segments are cut in other than a square or rectangle shape,

*i.e.*, an arc shape. *See* Pl. Ex. B: Response to Interrogatories at Response 5; Gov. Exhs. 2-4 (radial, chordal, and web segment samples). Accordingly, the arc shaped textile segments easily meet the terms of subheading 6307.90.98, HTSUS.

Accordingly, the fabric segments are properly classifiable under subheading 6307.90.98, HTSUS. Honeywell does not argue against our classification except to posit for various reasons that its heading 8803 classification position is more specific. *See* Honeywell Response Br. at 16-19. However, as we have shown, because plaintiff's classification is inapplicable, classification under subheading 6307.90.98, HTSUS, is appropriate.

## **CONCLUSION**

For the reasons provided in our cross-motion for summary judgment and for all the above reasons, we respectfully request that this Court deny plaintiff's motion for summary judgment, grant defendant's cross-motion for summary judgment, dismiss this action in its entirety, and grant defendant such other and further relief as may be just and appropriate.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

By:    /s/ Aimee Lee
AIMEE LEE
Assistant Director

*Of Counsel*: Yelena Slepak, Esq.          /s/ Edward F. Kenny
Office of Assistant Chief Counsel          EDWARD F. KENNY
International Trade Litigation              Senior Trial Counsel
U.S. Customs and Border Protection         Civil Division, Dept. of Justice
                                           Commercial Litigation Branch
DATED:  New York, New York                 26 Federal Plaza – Suite 346
        October 4, 2024                     New York, NY 10278
                                           Attorneys for Defendant
                                           Tel. (212) 264-0480

## **CERTIFICATE OF COMPLIANCE**

I, Edward F. Kenny, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's reply memorandum of law in opposition to plaintiff's motion for summary judgment and in further support of defendant's cross-motion for summary judgment, dated October 4, 2024, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 5,538 words.

/s/ Edward F. Kenny