UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

|  |  |  |
|---|---|---|
| HONEYWELL INTERNATIONAL INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 17-00256 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR REHEARING**

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

EDWARD F. KENNY
Senior Trial Counsel
Civil Division, Dept. of Justice
Commercial Litigation Branch

Of Counsel:                       International Trade Field Office
Yelena Slepak, Esq.               26 Federal Plaza, Room 346
Office of Assistant Chief Counsel New York, New York 10278
International Trade Litigation    *Attorneys for Defendant*
U.S. Customs and Border Protection Tel. No. 212-264-9240 or 9230

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................1

ARGUMENT ...................................................................................................................................3

I.  IT WAS CLEAR ERROR TO CLASSIFY THE SEGMENTS AS A PART OF AN AIRCRAFT PURSUANT TO HEADING 8803, HTSUS, WITHOUT PERFORMING A GRI 2(a) ANALYSIS ...........................................................................................................3

II. IT WAS CLEAR ERROR FOR THE COURT TO ENGAGE IN A GRI 3(a) ANALYSIS WITHOUT PERFORMING A GRI 2(a) ANALYSIS OR EXPLAINING WHY A GRI (2)(a) ANALYSIS WOULD NOT ASSIST IN THE PROPER CLASSIFICATION OF THE GOODS ....................................................................................................................7

III. A REHEARING MOTION IS APPROPRIATE TO ADDRESS CLEAR ERROR BY THE COURT IN INTERPRETING SECTION XVII, NOTE 3, HTSUS ...................................10

CONCLUSION ..............................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Carl Zeiss, Inc. v. United States*,
  195 F.3d 1375 (Fed. Cir. 1999) ............................................................................................. 7

*Faus Group, Inc. v. United States*,
  581 F.3d 1369 (Fed. Cir. 2009) ............................................................................................. 7

*Honeywell International, Inc. v. United States*,
  No. 17-00256, 2025 WL 342865 (Ct. Int'l Trade Jan. 30, 2025) ..................................... *passim*

*Mita Copystar Am. v. United States*,
  160 F.3d 710 (Fed. Cir. 1998) ............................................................................................... 7

*Orlando Food Corp. v. United States,*
  140 F.3d 1437 (Fed. Cir. 1998) ......................................................................................... 7, 8

*Otter Prods., LLC v. United States*,
  834 F.3d 1369 (Fed. Cir. 2016) ............................................................................................. 5

*Rollerblade, Inc. v. United States,*
  116 F. Supp. 2d 1247, (Ct. Int'l Trade 2000) ........................................................................ 8

*Target Stores v. United States*,
  471 F. Supp. 2d 1344, (Ct. Int'l Trade 2007) ........................................................................ 1

**Rules**

USCIT Rule 59 ............................................................................................................................ 1

**Harmonized Tariff Schedule of the United States (HTSUS)**

GRI 1 ................................................................................................................................... 2, 4, 7

GRI 2(a) ................................................................................................................................. *passim*

GRI 3(a) ............................................................................................................................ 2, 4, 6, 7

Section XVII, Note 3 ....................................................................................................... 3, 8, 9, 10

Heading 6307 ............................................................................................................................... 2

Heading 8803 ......................................................................................................................... *passim*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., : | |
| : | |
| Plaintiff, : | Court No. 17-00256 |
| : | |
| v. : | |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant. : | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR REHEARING**

Defendant, United States ("the Government"), submits this reply memorandum in support of our motion seeking a rehearing and/or reconsideration of the Court's January 30, 2025 Opinion and Order, *Honeywell International, Inc. v. United States*, No. 17-00256, 2025 WL 342865 (Ct. Int'l Trade Jan. 30, 2025) (hereinafter "*Honeywell*") and Final Judgment (Jan. 30, 2025).

**INTRODUCTION**

The Government seeks a rehearing pursuant to Rule 59 of the United States Court of International Trade Rules "to direct the Court's attention to . . . material matter[s] of law" in the *Honeywell* Opinion "which it has overlooked in deciding [this] case, and which, had it been given consideration, would probably have brought about a different result." *Target Stores v. United States*, 471 F. Supp. 2d 1344, 1349 (Ct. Int'l Trade 2007) (quoting *Agro Dutch Industries Limited v. United States*, Court No. 02–00499, 2005 WL 459647, at *3 (Ct. Int'l Trade February 28, 2005), *rev'd on other grounds*, 167 Fed. Appx. 202, (Fed. Cir. 2006)).

In the underlying dispute, the Court decided whether Honeywell's PAN fabric segments, in their condition as imported, are classifiable as a part of an aircraft under Heading 8803,

1

Harmonized Tariff Schedule of the United States (HTSUS), or as "other made up textiles" pursuant to Heading 6307. Although the Court noted that "[a]t first glance, the segments do not look like parts of aircraft," (*Honeywell* at * 7), and they "are not installed directly on an aircraft," (*Id.* at * 6), the Court, applying Rule 1 of the General Rules of Interpretation (GRI) of the tariff code, found the segments to be *prima facie*, a part of an aircraft under Heading 8803. (*Id.* at *11). Again, applying GRI 1, the Court also held that the imported segments were *prima facie* classifiable under Heading 6307. *Honeywell* at *11. Thereafter, pursuant to GRI 3(a), the Court determined that the phrase "other made up articles" in Heading 6307 is more general than the wording of Heading 8803 that effectively provides for parts of "other aircraft." *Id*. at *12. Because the Court found that the requirements of Heading 8803 were more difficult to satisfy, the Court ultimately held that the segments were classified in Heading 8803. *Id.*

      We respectfully submit that the Court erred, in classification, by focusing on the post-importation "downstream use" of the segments in the manufacturing of needled preforms, which are then manufactured into carbonized preforms, then into carbon-carbon preforms and, ultimately into carbon-carbon aircraft brake discs. Although the carbon-carbon brake disc and the densified carbon-carbon preform, which has the essential characteristics of the carbon-carbon brake disk, could both be classified as a finished aircraft part, neither the segments nor the needled preform could be viewed as a finished part, as they must undergo extensive further manufacturing before becoming a carbon-carbon preform or carbon-carbon brake disc. The Court in its decision, did not address whether the segments or the needled preform, constituted a finished or unfinished "part" of an aircraft pursuant to GRI 2(a). Conducting an analysis under GRI 2(a) is necessary because it shows that only finished parts or unfinished parts with the essential character of the finished part, can be classified as the finished article, *i.e.*, a part of an aircraft under Heading 8803. Thus, because the imported segments are not finished parts of an aircraft, it was error for the Court to

2

skip a GRI 2(a) analysis and proceed directly from a GRI 1 analysis to a GRI 3(a) analysis once the Court determined the segments were *prima facie* classifiable in multiple headings, contrary to the GRI's hierarchical scheme.

The Court also misinterpreted an applicable note, *i.e.*, Note 3 to Section XVII, HTSUS, by interpreting the Note's language of "suitable for use solely or principally with the articles of those chapters" to include goods which are suitable for use *in the manufacture* of articles of those chapters. By allowing the classification in Heading 8803, HTSUS, of goods that are suitable for use in the manufacture of parts of aircraft, the Court went against the plain meaning of the note as written and how that phrase is used in the HTSUS.

These clear errors, if corrected, would likely change the outcome of the Court's decision on the competing tariff provisions.

## ARGUMENT

### I. IT WAS CLEAR ERROR TO CLASSIFY THE SEGMENTS AS A PART OF AN AIRCRAFT PURSUANT TO HEADING 8803, HTSUS, WITHOUT PERFORMING A GRI 2(a) ANALYSIS

The Government maintains that the question of whether the unfinished segments were *prima facie* classifiable under Heading 8803, HTSUS cannot be determined pursuant to GRI 1 and necessitates a GRI 2(a) analysis.

Honeywell argues that no significant flaw exists in the Court's decision and that we are merely attempting to relitigate our loss. Response Brief at 3. However, Honeywell's argument is based on the mistaken belief that ". . . the Court determined the Brake Segments are a finished part . . ." Response Brief at 4. Nowhere in the opinion does the Court explicitly state that the imported segments are a finished part of an aircraft. Instead, the Court classified the segments as parts of aircraft because they are "identifiable to the downstream article and are

3

used for no other purpose." *Honeywell* at *10.  In other words, the Court reasoned that if the segments are ready to be used for the next manufacturing step in the long process of creating a carbon-carbon brake disc, they are the equivalent of a finished brake disc.  But neither the segments nor the needled preform (made from segments) can be used by any of Honeywell's brake disc customers as a "part" capable of being assembled into their aircraft's brakes or aircraft brake systems.  The segments are merely ready for the next stage of manufacturing, *i.e.*, processing into a needled preform, but are nowhere close to becoming a finished part of an aircraft.

Because Heading 8803 provides for classification of a part of an aircraft, and because the imported segments are not finished parts of an aircraft, as the Court and Honeywell acknowledge, the goods cannot be classified pursuant to GRI 1 alone and the next step would be to perform a GRI 2(a) analysis.  When faced with the question of whether an unfinished good can be classified as a finished good, GRI 2(a) informs and assists in arriving at the correct tariff classification.

This Court noted, that GRI 2(a) is implicated "[w]hen necessary to resolve classification" and provides that:

> "[a]ny reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article."

*Honeywell* at * 5.

Here, a GRI 2(a) analysis is appropriate, because, in their condition as imported, the segments "are not installed directly on an aircraft," (*Id*. at * 6), "[a]t first glance, the segments do not look like parts of aircraft," (*Honeywell* at * 7), and require "substantial post-importation processing in the manufacturing of needled preforms, carbonized preforms, carbon-carbon

4

preforms" (*Honeywell* at *5) before becoming carbon-carbon aircraft brake discs. It is error not to undergo this GRI 2(a) analysis, given the clear unfinished condition of the goods at issue in the state as imported. As discussed below, the Court should not have gone from a GRI 1 analysis to a GRI 3(a) analysis skipping the GRI 2(a) analysis.

The Court in its decision classified the segments not based on their condition as imported but rather based on the results of the post-importation downstream manufacturing process which incorporates the segments, creating preforms which are then used in the manufacturing of brake discs. For example, Honeywell in its Response Brief at 11, reiterates this Court's erroneous determination that the segments are classifiable as parts of aircraft because "[t]he imported segments are used in their condition as imported to produce the needled preforms that are, thereafter, used in the manufacturing of aircraft brake discs." In other words, Honeywell claims that the Court properly concluded the segments are classified as parts of aircraft because "[r]egardless of post-importation processing, the Brake Segments are identifiable to the aircraft (the downstream article) and have no other use." Response Brief at 11. But this observation does not lead to the segments being a finished part of an aircraft at importation.

Further, this reasoning presumes that the next downstream article, *i.e.*, the needled preform, having been manufactured from a combination of segments, is also classifiable pursuant to Heading 8803, HTSUS, as a finished part of an aircraft. This part of the analysis is absent from the opinion. In other words, the Court's "part of a part" explanation fails to show how the needled preform, itself an unfinished good, could be considered a part of an aircraft.

As we have noted, the ENs for GRI 2(a) at "II" discuss "blanks" "having the approximate shape of the finished article or part" as coming under the provisions of GRI 2(a) and give an example of a "bottle preform" as being a "blank." Therefore, "preforms," like the

needled preform which is the linchpin of the Court's parts analysis, are exactly the type of articles that merit a GRI 2(a) analysis to determine whether it has the essential character of the finished article. The Court recognizes that the ENs, while ". . . not legally binding [] "are 'persuasive' and are 'generally indicative' of the proper interpretation."" *Honeywell* at *5 (citing *Otter Prods., LLC v. United States*, 834 F.3d 1369, 1375 (Fed. Cir. 2016)). In fact, the Court relies upon other sections of the ENs in its decision, specifically in its discussion of what relevant goods are encompassed by Heading 8803, *i.e.*, "Undercarriages (including brakes and brake assemblies) and their retracting equipment; wheels (with or without tyres); landing skis." *Honeywell* at *6. Thus, it is clear error for the Court to classify the segments as parts of an aircraft of Heading 8803, HTSUS, because they are manufactured into a "needled preform" without determining whether such "preform" is an unfinished good having the essential character of a finished aircraft part pursuant to GRI 2(a)

The Court never performed this GRI 2(a) analysis on either the segments or the needled preforms, nor did the Court explain why such an otherwise applicable EN was not persuasive. As noted in our moving brief at 15-17, had the Court performed a GRI 2(a) analysis on either the segments or the needled preforms, the Court would have understood that neither has the essential character of a carbon-carbon brake disc and therefore could not be the basis of concluding that the segments themselves are a finished "part of an aircraft" pursuant to Heading 8803. It was error for the Court to avoid a GRI 2(a) analysis either regarding the segments themselves or what was described as the downstream article – the needled preform – as both items are incapable of being a finished aircraft part, *i.e.*, a part suitable for use as a brake disc.

## II. IT WAS CLEAR ERROR FOR THE COURT TO ENGAGE IN A GRI 3(a) ANALYSIS WITHOUT PERFORMING A GRI 2(a) ANALYSIS OR EXPLAINING WHY A GRI (2)(a) ANALYSIS WOULD NOT ASSIST IN THE PROPER CLASSIFICATION OF THE GOODS

Even if *prima facie* classifying the unfinished segments under Heading 8803 pursuant to GRI 1 was correct (and not, as we assert, clear error), moving from a GRI 1 analysis to a GRI 3 analysis without engaging in GRI 2(a) was itself clear error.

The classification of merchandise under the HTSUS is governed by the principles set forth in the GRIs. *See Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). The GRIs are applied in numerical order and the Court may only turn to subsequent GRIs if the proper classification of the imported goods cannot be accomplished by reference to a preceding GRI. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999); *Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998).

GRI 3(a) is known as the "rule of relative specificity." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1441 (Fed. Cir. 1998). It provides in relevant part, that "[w]hen . . . goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows: The heading which provides the most specific description shall be preferred to headings providing a more general description." GRI 3(a), HTSUS. Under GRI 3(a) the classification "turns on which of these two provisions is the more specific." *Orlando Food*, 140 F.3d at 1441. Courts undertaking the GRI 3(a) comparison "look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." *Faus Group, Inc. v. United States*, 581 F.3d 1369, 1373 (Fed. Cir. 2009) (quoting *Orlando Food*, 140 F.3d at 1441).

Moreover, in its response, Honeywell argues that "[w]hile the Brake Segments may be *prima facia* classifiable in HTSUS heading 6307, this is a completely separate issue from

7

whether the Brake Segments are properly classified in this tariff provision." Response Brief at 5 n.2. The basis for Honeywell's argument is unclear as these issues are directly addressed in the design and hierarchal structure of the GRIs. GRI 3(a) ("When . . . goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows . . .")[1]; *Orlando Food*, 140 F.3d at 1441. Choosing between two potentially applicable tariff provisions is a decision made under GRI 3 only if a determination *cannot* be made under either GRI 1 (which could occur due to multiple *prima facie* classifications) or under GRI 2(a) (after determining the part is finished or unfinished). Perhaps, when the finished state of the article is clear, an extensive consideration of GRI 2(a) may not be necessary. But for the facts of this case, the physical state of the segments (which are unfinished) is central to arriving at the proper classification, and the framework of GRI 2(a) must be applied if classification cannot be resolved through GRI 1.

      The Court held that the imported merchandise is *prima facie* classifiable in two headings, therefore classification could not be resolved pursuant to GRI 1. The Court cannot, as Honeywell requests, simply apply GRI 3 principles to GRI 1. Rather, if classification cannot be resolved pursuant to GRI 1 because the article is unfinished, then the Court must move to GRI 2. Then, if classification is still unresolved after GRI 2, the Court may move to a relative specificity analysis under GRI 3(a) and consider the specific or basket nature of each heading.

---

[1] Contrary to Honeywell's claim, the Court applied a GRI 3(a) analysis here, and a relative specificity analysis between two applicable headings cannot be resolved only through GRI 1. Plaintiff cites *Rollerblade, Inc. v. United States*, 116 F. Supp. 2d 1247, 1251 (Ct. Int'l Trade 2000), *aff'd*, 282 F.3d 1349 (Fed. Cir. 2002), which discusses the rule of relative specificity as it relates to broad "basket" provisions as compared to more specific provisions. Response Brief at 5. However, that statement from *Rollerblade* cites GRI 3(a), not GRI 1. *Rollerblade*, 116 F. Supp. 2d at 1251.

8

Here, the Court leaped from an analysis under GRI 1 to an analysis under GRI 3(a) without performing the required GRI 2(a) analysis as to whether the segments are unfinished articles having the essential character of the complete or finished article. Honeywell argues that the Court only cited GRI 3(a) once and that the analysis could be considered dicta. *See* Response at 7, 8. But these arguments are inapt. The Court found the segments were *prima facie* classifiable in two headings. Therefore, the Court could not have relied solely on GRI 1 when rendering its holding, as Honeywell suggests.

Notwithstanding, the Court failed to apply the GRIs in the required hierarchical manner. The Court reflected a recognition that the Government was requesting a GRI 2(a) analysis, and understood the segments were arguably unfinished when it stated "[a]t first glance, the segments do not look like parts of aircraft," (*Honeywell* at * 7), they "are not installed directly on an aircraft," (*Id*. at * 6) and the segments "are used in their condition as imported to produce the needled preforms that are, thereafter, used in the manufacturing of aircraft brake discs." *Id*. at *10.

An analysis under GRI 2(a) will show that the preform only acquires the essential characteristics of the carbon-carbon brake disc analysis when the manufacturing process reaches the end of the carbon-carbon preform stage.² In other words, application of GRI 2(a) demonstrates that both the PAN fabric segments and the needled preforms are precursor articles that appear early in the brake disc manufacturing process, and lack the essential

---

² We know from the testimony and the accepted material facts that it is only when the preform article reaches the densified carbon-carbon preform stage that the characteristics of a carbon-carbon aircraft brake disc appear, *i.e*., the characteristics of high strength, thermal capabilities, heat transfer and absorption, and friction generation. *See Honeywell* *3, citing Def.'s SOF ¶ 34 supported by Pl. Ex. A, Brown Dep. at 27, 90, 91, 106.

9

characteristics of the article of Heading 8803, HTSUS, *i.e.*, the carbon-carbon brake disc part of the aircraft.

### III. A REHEARING MOTION IS APPROPRIATE TO ADDRESS CLEAR ERROR BY THE COURT IN INTERPRETING SECTION XVII, NOTE 3, HTSUS

The Court's reliance on Section XVII, Note 3 to determine that the segments are parts of aircraft is clear error. Section XVII, Note 3 provides: "References in chapters 86 to 88 to 'parts' or 'accessories' do not apply to parts or accessories which are not suitable for use solely or principally with the articles of those chapters."

The Government discussed Section 17, Note 3's "suitable for use" language extensively during the parties' cross-motion hearing. *See* Response Brief at 10 and the audio file of the December 11, 2024, summary judgment hearing available on the Court's website entitled "20241211_17-256_MAB.mp3," starting at minute 45. We explained during the hearing that whether one considers the applicable analysis to be a "parts" analysis or a "parts of a part" analysis the proposed part needs to be both capable of being a part and must meet the applicable HTSUS notes, including Section XVII, Note 3's "suitable for use" as a part of an aircraft requirement. Government counsel discussed this topic, with the aid of the physical exhibits, explaining that the fabric segments were not "suitable for use" as a part of an aircraft, *i.e.*, capable of being used directly on an aircraft.

In its opinion, the Court found that the segments were "parts of parts," and met all appliable tariff notes, including Section XVII, Note 3, because they were used in the manufacturing of an intermediate product that is then used in the manufacturing of aircraft brake discs. The Court stated the following:

> The imported segments are used in their condition as imported to produce the needled preforms that are, thereafter, used in the manufacturing of aircraft brake discs. Def.'s SOF ¶¶ 11–33;

10

> Pl.'s Resp. Def.'s SOF ¶¶ 11–33. In other words, notwithstanding the post-importation processing that is required as part of the production process, the imported segments are identifiable to the downstream article and are used for no other purpose. Thus, taking account of the considerations deemed relevant in the foregoing cases, the court finds that the imported segments are classifiable as parts of aircraft.
>
> Whether considered in light of the language of HTSUS Section XVII Note 3 or the judicially recognized tests for parts, the segments are recognizable parts of the needled preforms.

*Honeywell* at *10.

Respectfully, the Court erred in interpreting the language ("suitable for use solely or principally with the articles of those chapters") in Note 3 to include articles suitable for use in the manufacture of articles of those chapters as this interpretation contravenes the plain meaning of the note. The drafters of the tariff used the words "suitable for manufacturing" when they meant to include in a particular classification, articles used to manufacture other articles. *See* Government Moving Brief at 18. Honeywell complains that this plain meaning argument raises issues not properly brought up prior to judgment. Response Brief at 11. Not so. The Government's interpretation of Section XVII, Note 3, was extensively discussed at the December 11, 2024 hearing, *i.e.*, that the proposed parts needed to be capable of being used on an aircraft, to fit the "suitable for use" wording of the note. Our rehearing argument that the Court's interpretation of the language of Section XVII, Note 3, is contrary to the plain meaning, merely expands on our prior argument. By our motion we respectfully ask the Court to correct an error of law in the Court's interpretation of Section XVII, Note 3.

## CONCLUSION

For these reasons, we respectfully request that the Court grant the motion for rehearing.

                                              Respectfully submitted,

                                              YAAKOV M. ROTH
                                              Acting Assistant Attorney General

                                              PATRICIA M. McCARTHY
                                              Director

                                              JUSTIN R. MILLER
                                              Attorney-In-Charge
                                              International Trade Field Office

By:    <u>/s/ Aimee Lee</u>
          AIMEE LEE
          Assistant Director

          <u>/s/ Edward F. Kenny</u>
          EDWARD F. KENNY
          Senior Trial Counsel

Of Counsel:                              Civil Division, Dept. of Justice
Yelena Slepak, Esq.                  Commercial Litigation Branch
Office of Chief Counsel              International Trade Field Office
U.S. Customs and Border Protection    26 Federal Plaza, Room 346
                                              New York, New York 10278
                                              *Attorneys for Defendant*
Dated: April 25, 2025                 Tel. No. 212-264-0480

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

|  |  |  |
|---|---|---|
| HONEYWELL INTERNATIONAL INC., | : | |
| Plaintiff, | : | Court No. 17-00256 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant. | : | |

CERTIFICATE OF COMPLIANCE PURSUANT TO USCIT
STANDARD CHAMBER PROCEDURE 2(B)

I, Edward F. Kenny, senior trial counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing reply brief, relying upon the Microsoft Word word count feature of the word processing program used to prepare the reply brief, certify that this brief complies with the type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 3,359 words.

April 25, 2025                                              /s/ Edward F. Kenny